UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| EASTSIDE HOLDING INC., *Individually and On Behalf of all others similarly situated*, <br><br> Plaintiff, <br><br> vs. <br><br> THE BEAR STEARNS CO., INC., JAMES E. CAYNE, ALAN D. SCHWARTZ, WARREN J. SPECTOR, SAMUEL L. MOLINARO, JR., and ALAN C. GREENBERG, <br><br> Defendants. | **CASE #: 1:08-cv-02793-RWS** |
| RAZILL C. BECHER, *Individually and on Behalf of all others similarly situated*, <br><br> Plaintiff, <br><br> vs. <br><br> THE BEAR STEARNS CO., INC., JAMES E. CAYNE, ALAN D. SCHWARTZ, WARREN J. SPECTOR, SAMUEL L. MOLINARO, JR., and ALAN C. GREENBERG, <br><br> Defendants. | **CASE #: 1:08-cv-02866-RWS** |

**MEMORANDUM OF LAW IN
SUPPORT OF THE MOTION OF COMMONWEALTH
OF MASSACHUSETTS PENSION RESERVES INVESTMENT TRUST
FUND FOR CONSOLIDATION OF THE RELATED ACTIONS, APPOINTMENT
AS LEAD PLAINTIFF AND APPROVAL OF ITS SELECTION OF LEAD COUNSEL**

16228v1

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................... ii

PRELIMINARY STATEMENT ...............................................................................................1

STATEMENT OF FACTS .........................................................................................................2

ARGUMENT................................................................................................................................3

I. THE RELATED ACTIONS SHOULD BE CONSOLIDATED .........................................3

    A. The Court Should Resolve The Consolidation Issue As a
       Prerequisite to The Determination of Lead Plaintiff ...................................3

II. THE COURT SHOULD APPOINT MASSACHUSETTS AS LEAD PLAINTIFF ..........4

    A. The Procedure Required By The PSLRA .......................................................4

       1. Massachusetts Is Willing To Serve As Class Representative ..........5

       2. Massachusetts Is The Most Adequate Lead Plaintiff.......................6

          (a) Massachusetts Is An Institutional Investor With The
              Largest Financial Interest In The Relief Sought By
              The Class...............................................................................6

          (b) Massachusetts Meets The Requirements Of
              F.R.C.P. Rule 23 ...................................................................8

III. THE COURT SHOULD APPROVE MASSACHUSETTS' CHOICE OF
COUNSEL......................................................................................................................10

CONCLUSION...........................................................................................................................11

# TABLE OF AUTHORITIES

## CASES

*Bowman v. Legato Sys.*,
  195 F.R.D. 655 (N.D. Cal. 2000)..................................................................................7

*Drexel Burnham Lambert Group, Inc.*,
  960 F.2d 285 (2d Cir. 1992)........................................................................................10

*General Tel. Co. v. Falcon*,
  457 U.S. 147 (1982)......................................................................................................9

*Gluck v. CellStar Corp.*,
  976 F. Supp. 542 (N.D. Tex. 1997) ..........................................................................7, 8

*Greebel v. FTP Software, Inc.*,
  939 F. Supp. 57 (D. Mass. 1996) .................................................................................7

*In re Baan Co. Sec. Litig.*,
  186 F.R.D. 214 (D.D.C. 1999) ....................................................................................7

*In re Cendant Corp. Litig.*,
  264 F.3d 201 (3d Cir. 2001).........................................................................................7

*In re Donnkenny Inc. Sec. Litig.*,
  171 F.R.D. 156 (S.D.N.Y. 1997) ...............................................................................10

*In re NASDAQ Market-Makers Antitrust Litig.*,
  172 F.R.D. 119 (S.D.N.Y. 1997) ...........................................................................9, 10

*In re Network Associates Inc., Sec. Litig.*,
  76 F. Supp. 2d 1017 (N.D. Cal. 1999) .........................................................................7

*In re Oxford Health Plans, Inc., Sec. Litig.*,
  182 F.R.D. 42 (S.D.N.Y. 1998) ...................................................................................9

*In re Razorfish, Inc. Sec. Litig.*,
  143 F. Supp. 2d 304 (S.D.N.Y. 2001).......................................................................2, 7

*Johnson v. Celotex Corp.*,
  899 F.2d 1281 (2d Cir. 1990).......................................................................................3

*Mitchell v. Complete Mgmt., Inc.*,
   No. 99-CV-1454 (DAB), 1999 WL 728678
   (S.D.N.Y. Sept. 17, 1999)...................................................................................................3

*Primavera Familienstiftung v. Askin*,
   173 F.R.D. 115 (S.D.N.Y. 1997) ........................................................................................3

*Ravens v. Iftikar*,
   174 F.R.D. 651 (N.D. Cal. 1997).......................................................................................7

*Robidoux v. Celani*,
   987 F.2d 931 (2d Cir. 1993)...............................................................................................9

*Schulman v. Lumenis, Ltd.*,
   No. 02 Civ. 1989 (DAB), 2003 WL 21415287
   (S.D.N.Y. June 18, 2003)..............................................................................................6, 9

*Smith v. Suprema Specialties, Inc.*,
   206 F. Supp. 2d 627 (D.N.J. 2002) ....................................................................................2

*Weinberg v. Atlas Air Worldwide Holdings, Inc.*,
   216 F.R.D. 248 (S.D.N.Y. 2003) .......................................................................................9

*Weltz v. Lee*,
   199 F.R.D. 129 (S.D.N.Y. 2001) .......................................................................................9

## STATUTES & OTHER AUTHORITIES

Fed. R. Civ. P. 42(a) ......................................................................................................................3

15 U.S.C. §§ 78u-4(a)(1) ...............................................................................................................4

15 U.S.C. §§ 78u-4(a)(3)(A)(i)(II)..............................................................................................4, 6

15 U.S.C. § 78u-4(a)(3)(B) ............................................................................................................1

15 U.S.C. § 78u-4(a)(3)(B)(i) ........................................................................................................6

15 U.S.C. § 78u-4(a)(3)(B)(ii) ...................................................................................................3, 4

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)...................................................................................................5

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(aa) ........................................................................... 5

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) ................................................................................ 5

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa) ........................................................................ 10

H.R. Conf. Rep. No. 104-369 (1995), reprinted in 1995 U.S.C.C.A.N. 730 ................ 6

S. Rep. No. 104-98, at 11 (1995), reprinted in 1995 U.S.C.C.A.N. 679, 690 .............. 8

*Elliot J. Weiss & John S. Beckerman, Let The Money Do The Monitoring: How
    Institutional Investors Can Reduce Agency Costs In Securities Class Actions,*
    104 Yale L.J. 2053 (1995) ..................................................................................... 8

## **PRELIMINARY STATEMENT**

Presently pending before the Court are two securities class action lawsuits (the "Actions") brought on behalf of all persons or entities (the "Class") who purchased or otherwise acquired the common stock of The Bear Stearns Companies Inc. ("Bear" or the "Company") between December 14, 2006 and March 14, 2008 (the "Class Period"), inclusive. Plaintiffs in the Actions allege violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), and Rule 10b-5 promulgated under Section 10(b), against Defendants Bear, James E. Cayne, Alan D. Schwartz, Warren J. Spector, Samuel L. Molinaro, Jr., and Alan C. Greenberg.

Commonwealth of Massachusetts Pension Reserves Investment Trust Fund ("Massachusetts") lost over $21 million as a result of Defendants' alleged fraud in connection with its purchases of Bear common stock during the Class Period. Massachusetts respectfully submits this memorandum of law in support of its motion: (a) to consolidate the above-captioned actions; (b) for its appointment as lead plaintiff, pursuant to the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), 15 U.S.C. § 78u-4(a)(3)(B); and (c) for approval of its selection of Bernstein Liebhard & Lifshitz, LLP ("Bernstein Liebhard") as lead counsel.

Massachusetts believes that it has the largest financial interest in the outcome of the case. As such, Massachusetts meets the requirements of the PSLRA for appointment as lead plaintiff. Moreover, Massachusetts satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure in that its claims are typical of the claims of the Class, and it will fairly and adequately represent the interests of the Class.

Massachusetts is precisely the type of institutional investor envisioned by Congress to serve as lead plaintiff when it enacted the PSLRA. The PSLRA provides for the Court to appoint as lead plaintiff the movant that has both the largest financial interest in the litigation and has

made a *prima facie* showing that they are adequate class representatives under Rule 23 of the Federal Rules of Civil Procedure. *See In re Razorfish, Inc. Sec. Litig.*, 143 F. Supp. 2d 304, 307 (S.D.N.Y. 2001); *Smith v. Suprema Specialties, Inc.*, 206 F. Supp. 2d 627, 632 (D.N.J. 2002) (holding that the movant has the burden to show that it has a significant financial interest and that it is adequate). Massachusetts is an institutional investor that satisfies both of these requirements.

## STATEMENT OF FACTS

Bear, through its broker-dealer and international bank subsidiaries, provides investment banking, securities and derivatives trading, clearance, and brokerage services worldwide. Plaintiffs allege that during the Class Period, defendants issued materially false and misleading statements regarding the Company's business and financial results. As a result of defendants' false statements, Bear stock traded at artificially inflated prices during the Class Period, reaching a high of $159.36 per share in April 2007.

In late June 2007, news about Bear's risky hedge funds began to enter the market and its stock price began to fall. On March 10, 2008, information leaked into the market about Bear's liquidity problems, causing the stock to drop to as low as $60.26 per share before closing at $62.30 per share. On March 13, 2008, news that Bear was forced to seek emergency financing from the Federal Reserve and J.P. Morgan Chase hit the market and Bear Stearns stock fell to $30 per share. Then, on Sunday, March 16, 2008, it was announced that J.P. Morgan Chase was purchasing Bear for a mere $2 per share. By midday on Monday, March 17, 2008, Bear stock had collapsed another 85% to $4.30 per share on volume of 75 million shares.

## **ARGUMENT**

### I. **THE RELATED ACTIONS SHOULD BE CONSOLIDATED**

The PSLRA provides that "[i]f more than one action on behalf of a class asserting substantially the same claim or claims arising under this [sub-]chapter has been filed," the Court shall not make the determination of the most adequate plaintiff until "after the decision on the motion to consolidate is rendered." 15 U.S.C. § 78u-4(a)(3)(B)(ii). Thereafter, the Court "shall appoint the most adequate plaintiff as lead plaintiff for the consolidated actions." *Id.*

#### A. The Court Should Resolve The Consolidation Issue As a Prerequisite to The Determination of Lead Plaintiff

Under Rule 42(a) of the Federal Rules of Civil Procedure, consolidation is appropriate when the actions involve common questions of law or fact. *See* Fed. R. Civ. P. 42(a). Consolidation is particularly appropriate in securities class action litigation. *See Mitchell v. Complete Mgmt., Inc.*, No. 99-CV-1454 (DAB), 1999 WL 728678, at *1 (S.D.N.Y. Sept. 17, 1999) ("In securities actions where the complaints are based on the same 'public statements and reports,' consolidation is appropriate if there are common questions of law and fact . . . .") (citation omitted); *see also Primavera Familienstiftung v. Askin*, 173 F.R.D. 115, 129 (S.D.N.Y. 1997).

The complaints filed in the Actions are substantially similar and arise from the same set of facts and conduct. As a result, the Court should consolidate the aforementioned cases, and any others filed subsequent to this motion. *See Johnson v. Celotex Corp.*, 899 F.2d 1281, 1285 (2d Cir. 1990).

Once the Court decides the consolidation motion, the PSLRA mandates that the Court decide the lead plaintiff issue "[a]s soon as practicable." Section 21D(a)(3)(B)(ii), 15 U.S.C. § 78u-4(a)(3)(B)(ii). As Massachusetts has an interest in moving the Actions forward, it

3

respectfully urges the Court to resolve the consolidation motion as soon as practicable. A prompt determination is reasonable and warranted under Rule 42(a), especially given the common questions of law and fact presented by the related actions now pending in this District.

## II.  THE COURT SHOULD APPOINT MASSACHUSETTS AS LEAD PLAINTIFF

### A.  The Procedure Required By The PSLRA

The PSLRA establishes the procedure for appointment of the lead plaintiff in "each private action arising under [the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." Sections 21D(a)(1) and (a)(3)(B), 15 U.S.C. §§ 78u-4(a)(1) and (a)(3)(B).

First, the plaintiff who files the initial action must publish notice to the class within 20 days after filing the action, informing class members of their right to file a motion for appointment of lead plaintiff. Section 21D(a)(3)(B)(ii), 15 U.S.C. § 78u-4(a)(3)(B)(ii). The PSLRA requires the court to consider within 90 days all motions that were filed within 60 days after publication of that notice made by any person or group of persons who are members of the proposed class to be appointed lead plaintiff. Sections 21D(a)(3)(A)(i)(II) and (a)(3)(B)(i), 15 U.S.C. §§ 78u-4(a)(3)(A)(i)(II) and (a)(3)(B)(i).

The PSLRA provides a presumption that the most "adequate plaintiff" to serve as lead plaintiff is the "person or group of persons" that:

> i) has either filed the complaint or made a motion in response to a notice under subparagraph (A)(i);
>
> ii) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> iii) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

4

Section 21D(a)(3)(B)(iii)(I), 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). The presumption may be rebutted only upon proof by a class member that the presumptively most adequate plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." Section 21D(a)(3)(B)(iii)(II), 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

As set forth below, Massachusetts satisfies the foregoing criteria and it is not aware of any unique defenses that Defendants could raise against it. Therefore, Massachusetts is entitled to the presumption that it is the most adequate plaintiff to represent the Class and, as a result, should be appointed lead plaintiff in the Actions.

### 1. Massachusetts Is Willing To Serve As Class Representative

On March 17, 2008, counsel caused a notice (the "Notice") to be published pursuant to Section 21D(a)(3)(A)(i), which announced that a securities class action had been filed against, among others, Bear, and which advised putative class members that they had until May 16, 2008 to file a motion to seek appointment as a lead plaintiff in the action. *See* Seidman Decl. at Ex. 1. Massachusetts has reviewed one of the complaints filed in the Actions and has timely filed its motion pursuant to the Notice. In doing so, Massachusetts has attached its certification attesting to its willingness to serve as representative of the Class and provide testimony at deposition and trial, if necessary. *See* Seidman Decl. at Ex. 2. Accordingly, Massachusetts satisfies the first requirement to serve as lead plaintiff for the Class. Section 21D(a)(3)(B)(iii)(I)(aa), 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(aa).

### 2. **Massachusetts Is The Most Adequate Lead Plaintiff**

#### (a) **Massachusetts Is An Institutional Investor With The Largest Financial Interest In The Relief Sought By The Class**

Under the PSLRA, any member of the purported class may move for appointment as lead plaintiff within 60 days of the publication of notice that the action has been filed. *See* 15 U.S.C. § 78u-4(a)(3)(A)(i)(II). Subsequently, the court "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members . . . ." 15 U.S.C. § 78u-4(a)(3)(B)(i).

The legislative history of the PSLRA demonstrates that it was intended to encourage institutional investors, such as Massachusetts, to serve as lead plaintiff. The explanatory report accompanying the PSLRA's enactment specifically states that:

> The Conference Committee seeks to increase the likelihood that institutional investors will serve as lead plaintiffs by requiring courts to presume that the member of the purported class with the largest financial stake in the relief sought is the "most adequate plaintiff."
>
> * * *
>
> The Conference Committee believes that . . . in many cases the beneficiaries of pension funds -- small investors -- ultimately have the greatest stake in the outcome of the lawsuit. Cumulatively, these small investors represent a single large investor interest. Institutional investors and other class members with large amounts at stake will represent the interests of the plaintiff class more effectively than class members with small amounts at stake.

H.R. CONF. REP. NO. 104-369, at 34 (1995), reprinted in, 1995 U.S.C.C.A.N. 730, 733.

This Court has noted a Congressional preference to appoint institutional investors. *See Schulman v. Lumenis, Ltd.*, No. 02 Civ. 1989 (DAB), 2003 WL 21415287, at *2 (S.D.N.Y. June 18, 2003) (one purpose behind the PSLRA is to ensure that "parties with significant holdings in issuers, whose interests are more strongly aligned with the class of shareholders, will participate in the litigation and exercise control over the selection and actions of plaintiff's counsel")

6

(internal quotations and citations omitted). "Congress believed that this could best be achieved by encouraging institutional investors to serve as lead plaintiffs." *Id.* *See also In re Cendant Corp. Litig.*, 264 F.3d 201, 244 (3d Cir. 2001) (Congress "anticipated and intended that [institutional investors] would serve as lead plaintiffs.").[1]

Indeed, Congress deemed institutional investors "presumptively most adequate to serve as lead plaintiffs in securities class actions." *Greebel v. FTP Software, Inc.*, 939 F. Supp. 57, 63 (D. Mass. 1996). Furthermore, Congress believed that "increasing the role of institutional investors in class actions [would] ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions." *In re Baan Co. Sec. Litig.*, 186 F.R.D. 214, 221 (D.D.C. 1999) (citations omitted); *Ravens v. Iftikar*, 174 F.R.D. 651, 661 (N.D. Cal. 1997) (stating that Congress wanted to encourage large, sophisticated institutional investors to direct securities class actions, thereby supplanting the prior regime of "figurehead plaintiffs who exercise no meaningful supervision of litigation"). Congress reasoned that the empowerment of institutional investors would result in the appointment of lead plaintiffs that can best prosecute the claims and are best able to negotiate with and oversee counsel. *See Razorfish*, 143 F. Supp. 2d at 309 (stating that Congress intended that "institutional plaintiffs with expertise in the securities market and real financial interest in the integrity of the market would control the litigation . . . ."); *Gluck*, 976 F. Supp. at 548 ("The legislative history of the Reform Act is

---

[1] *See also Bowman v. Legato Sys.*, 195 F.R.D. 655, 657 (N.D. Cal. 2000) (institutional investors are "exactly the type of lead plaintiff envisioned by Congress when it instituted the [PSLRA] lead plaintiff requirements. . ."); *In re Network Assocs. Inc., Sec. Litig.*, 76 F. Supp. 2d 1017, 1020 (N.D. Cal. 1999) ("Congress expected that the lead plaintiff would normally be an institutional investor"); *Gluck v. CellStar Corp.*, 976 F. Supp. 542, 548 (N.D. Tex. 1997) ("through the PSLRA, Congress has unequivocally expressed its preference for securities fraud litigation to be directed by large institutional investors").

replete with statements of Congress' desire to put control of such litigation in the hands of large, institutional investors").

This presumption is rooted in Congress' belief that "increasing the role of institutional investors in class actions will ultimately benefit the class and assist the courts." S. REP. NO. 104-98, at 11 (1995), reprinted in, 1995 U.S.C.C.A.N. 679, 690. In reaching this conclusion, Congress reasoned that:

> Institutions' large stakes give them an incentive to monitor, and institutions have or readily could develop the expertise necessary to assess whether plaintiffs' attorneys are acting as faithful champions for the plaintiff class.

Elliot J. Weiss & John S. Beckerman, *Let The Money Do The Monitoring: How Institutional Investors Can Reduce Agency Costs In Securities Class Actions*, 104 Yale L.J. 2053, 2095 (1995) ("Weiss & Beckerman"). *See also* S. REP. NO. 104-98, at 11 n.32 (noting that Weiss & Beckerman provided "the basis for the most adequate plaintiff provision").

Massachusetts is ideally suited for the role as lead plaintiff. Massachusetts lost over $21 million during the Class Period. *See* Seidman Decl. Ex. 3. As a large institutional investor with significant resources dedicated to overseeing and supervising the prosecution of the litigation, Massachusetts will be able to actively represent the class and "drive the litigation" to ensure that the Class obtains the best recovery possible and implement corporate governance changes to correct the environment which allowed this fraud to take place and to prevent a recurrence ever again. *See Gluck*, 976 F. Supp. at 549.

### (b) Massachusetts Meets The Requirements Of F.R.C.P. Rule 23

Equally important, Massachusetts has affirmatively shown that it satisfies the adequacy and typicality requirements of Rule 23 of the Federal Rules of Civil Procedure, which are the provisions of Rule 23 relevant to the appointment of lead plaintiff under the PSLRA. *See*

*Weinberg v. Atlas Air Worldwide Holdings, Inc.*, 216 F.R.D. 248, 252 (S.D.N.Y. 2003); *Schulman*, 2003 WL 21415287, at *19. *See also Weltz v. Lee*, 199 F.R.D. 129, 133 (S.D.N.Y. 2001) (considering only typicality and adequacy on a motion for consolidation and for designation of lead plaintiff and lead counsel).

Massachusetts' certification affirmatively establishes that it meets the typicality requirement of Rule 23 because it: (i) suffered the same injuries as the absent class members; (ii) suffered as a result of the same course of conduct by Defendants; and (iii) its claims are based on the same legal issues. *See Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993); *see also In re Oxford Health Plans, Inc., Sec. Litig.*, 182 F.R.D. 42, 50 (S.D.N.Y. 1998) (typicality inquiry analyzes whether plaintiffs' claims "arise from the same conduct from which other class members' claims and injuries arise"). Rule 23 does not require that the named plaintiffs be identically situated with all class members. It is enough if their situations share a common issue of law or fact. *See In re NASDAQ Market-Makers Antitrust Litig.*, 172 F.R.D. 119, 127 (S.D.N.Y. 1997). A finding of commonality frequently supports a finding of typicality. *See General Tel. Co. v. Falcon*, 457 U.S. 147, 158 n.13 (1982) (noting how the commonality and typicality requirements "merge"). Here, the questions of law and fact common to the members of the Class and which may affect individual Class members include the following:

- whether the federal securities laws were violated by Defendants' acts;
- whether statements made by Defendants to the investing public during the Class Period contained material misrepresentations concerning the facts about the business and operations of Bear;
- whether Defendants acted knowingly or recklessly in issuing false and misleading statements; and
- whether the members of the Class sustained damages and, if so, what is the proper measure of damages.

9

These questions apply equally to Massachusetts as to all members of the purported Class. Similar to all of the other members of the Class, Massachusetts purchased shares of Bear common stock at prices materially distorted as a result of Defendants' misrepresentations. Because Massachusetts' claims are based on the same legal theories and "arise from the same course of conduct that gives rise to the claims of other Class members," the typicality requirement is satisfied. *See NASDAQ Market-Makers*, 172 F.R.D. at 126; *Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 291 (2d Cir. 1992).

Further, Massachusetts is uniquely able to fulfill the duties and responsibilities required to serve as lead plaintiff. Specifically, Massachusetts will be diligent in leading the litigation, including supervising lead counsel and directing litigation strategy and any settlement discussions to obtain the largest recovery for the Class.

### III. THE COURT SHOULD APPROVE MASSACHUSETTS' CHOICE OF COUNSEL

Pursuant to the PSLRA, the proposed lead plaintiff shall, subject to court approval, select and retain counsel to represent the Class. *See In re Donnkenny Inc. Sec. Litig.*, 171 F.R.D. 156, 158 (S.D.N.Y. 1997). The Court should not disturb the lead plaintiffs' choice of counsel unless it is necessary to "protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa). In that regard, Massachusetts requests the appointment of the law firm of Bernstein Liebhard to serve as lead counsel in this case. Bernstein Liebhard has extensive experience in successfully prosecuting securities fraud actions, has frequently been appointed as lead counsel since the passage of the PSLRA, and has frequently appeared in major actions before this and other courts throughout the country. *See* Bernstein Liebhard's firm resume, attached as Ex. 4 to the Seidman Decl.

## CONCLUSION

For the foregoing reasons, Massachusetts respectfully requests that this Court: (1) consolidate the captioned, and all subsequently-filed, related actions; (2) appoint Massachusetts as lead plaintiff in the captioned, and all subsequently-filed, related actions; and (3) approve Massachusetts' selection of Bernstein Liebhard as lead counsel.

Dated: May 16, 2008

Respectfully submitted,

**BERNSTEIN LIEBHARD & LIFSHITZ, LLP**

/s/
_____
Sandy A. Liebhard (SL-0835)
Joseph R. Seidman, Jr. (JS-9260)
10 East 40th Street, 22nd Floor
New York, NY 10016
Telephone: (212) 779-1414
Facsimile: (212) 779-3218

***Lead Counsel for Massachusetts and Proposed
Lead Counsel for the Class***

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing was served upon the following counsel of record in the consolidated actions filed in this Court, First Class Mail prepaid this 16th day of May, 2008:

*Attorneys for Plaintiffs*:

**David Avi Rosenfeld**
Coughlin Stoia Geller Rudman & Robbins LLP
58 South Service Road
Suite 200
Melville, NY  11747

**Debbie R. Gross**
The Law Office of Bernard M. Gross, P.C.
1515 Locust Street
2nd Floor
Philadelphia, PA  19102

**Jack Gerald Fruchter**
Abraham Fruchter & Twersky LLP
One Penn Plaza
Suite 2805
New York, NY  10119

**Darren J. Robbins**
**David C. Walton**
Coughlin Stoia Geller Rudman & Robbins LLP
655 West Broadway, Suite 1900
San Diego, CA 92101

*Attorneys for Defendants*:

**David Stanley Frankel**
Kramer Levin Naftalis & Frankel, LLP
1177 Avenue of the Americas
New York, NY 10036

/s/
_____
LYDIA APONTE

16203v1