# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| EASTSIDE HOLDINGS INC., Individually and on Behalf of All Others Similarly Situated, | : : : | Electronically Filed |
| Plaintiff, | : : | |
| v. | : : | Civil Action No.: 1:08-cv-02793 (RWS) (ECF Case) |
| THE BEAR STEARNS COMPANIES INC., JAMES E. CAYNE, ALAN D. SCHWARTZ, WARREN J. SPECTOR, SAMUEL L. MOLINARO, JR. and ALAN C. GREENBERG, | : : : : : | Hon. Robert W. Sweet |
| Defendants. | : | |

*(Additional Captions on the Following Page)*

## MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE MOTION OF THE STATE OF MICHIGAN RETIREMENT SYSTEMS FOR CONSOLIDATION OF ALL RELATED ACTIONS, APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF LEAD COUNSEL AND IN OPPOSITION TO ALL COMPETING MOTIONS

——————————————————————————— x

RAZILL C. BECHER, Individually and on Behalf :
of All Others Similarly Situated,                    :      Electronically Filed
                                                     :
                                                     :
                        Plaintiff,                   :
                                                     :
              v.                                     :      Civil Action No.: 1:08-CV-02866 (RWS)
                                                     :      (ECF Case)
THE BEAR STEARNS COMPANIES INC.,     :
JAMES E. CAYNE, ALAN D. SCHWARTZ,    :      Hon. Robert W. Sweet
WARREN J. SPECTOR, SAMUEL L.          :
MOLINARO, JR. and ALAN C. GREENBERG, :
                                                     :
                        Defendants.                  :
——————————————————————————— x
GREEK ORTHODOX ARCHDIOCESE            :
FOUNDATION, by and through GEORGE     :
KERITSIS, TRUSTEE, Individually and On :      Electronically Filed
Behalf of All Others Similarly Situated,             :
                                                     :
                        Plaintiff,                   :      Civil Action No. 1:08-CV-03013 (RWS)
              v.                                     :      (ECF Case)
                                                     :
THE BEAR STEARNS COMPANIES INC.,     :      Hon. Robert W. Sweet
JAMES E. CAYNE, ALAN D. SCHWARTZ,    :
WARREN J. SPECTOR, and SAMUEL L.      :
MOLINARO, JR.,                                       :
                                                     :
                        Defendants.                  :
——————————————————————————— x

# TABLE OF CONTENTS

I.  THE RELATED ACTIONS SHOULD BE CONSOLIDATED...........................................4

II.  SMRS IS THE MOST ADEQUATE PLAINTIFF ................................................6

   A.  SMRS Has The Largest Financial Interest ......................................................7

   B.  SMRS Satisfies the Requirements of Rule 23 ................................................8

     1.  There Is No Conflict Between Class Members  In The Overlapping Class Periods.......8

III.  GREEK ORTHODOX'S MOTION SHOULD BE DENIED.........................................10

   A.  The Court Should Utilize The Longest  Class Period In The Lead Plaintiff Analysis......10

   B.  The Court Should Not Appoint A "Niche" Lead Plaintiff ...............................10

   C.  Carving Out A Three Day Class Period Invites Chaos ...................................13

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Albert Fadem Trust v. WorldCom, Inc.*,
   2002 U.S. Dist. LEXIS 15005 (S.D.N.Y. Aug. 15, 2002)............................................11

*Aronson v. McKesson HBOC, Inc.*,
   79 F. Supp. 2d at 1150-51 ...................................................................................11, 12

*Bhojwani v. Pistiolis*,
   No. 06 Civ. 13761, 2007 WL 2197836 (S.D.N.Y. June 26, 2007) ........................5, 10

*In re Cavanaugh*,
   306 F.3d 726 (9th Cir. 2002) .........................................................................................2

*In re Cendant Corp. Sec. Litig.*,
   264 F.3d 201 (3d Cir. 2001) ..........................................................................................2

*Constance Sczesny Trust v. KPMG LLP*,
   223 F.R.D. 319 (S.D.N.Y. 2004)..............................................................................9, 12

*In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*,
   458 F. Supp. 2d 455 (E.D. Mich. 2006) ......................................................................12

*In re Doral Fin. Corp. Sec. Litig.*,
   414 F. Supp. 2d 398 (S.D.N.Y. 2006) ........................................................................10

*In re eSpeed, Inc. Sec. Litig.*,
   232 F.R.D. 95 (S.D.N.Y. 2005)......................................................................................7

*In re Enron Corp. Sec. Litig.*,
   206 F.R.D. 427 (S.D. Tex. 2002) ..........................................................................11, 13

*In re Fannie Mae Sec. Litig.*,
   355 F. Supp. 2d 261 (D.D.C. 2005)................................................................................9

*In re Fuwei Films Sec. Litig.*,
   247 F.R.D. 432 (S.D.N.Y. 2008)....................................................................................4

*Greenberg v. Bear Stearns & Co., Inc.*,
   80 F. Supp. 2d 65 (E.D.N.Y. 2000)..........................................................................6, 13

*Hevesi v. Citigroup, Inc.*,
   366 F.3d 70 (2d Cir. 2004) ...........................................................................................11

*Kaplan v. Gelfond,*
  240 F.R.D. 88 (S.D.N.Y. 2007) ................................................................................5, 6

*Lax v. First Merchs. Acceptance Corp.,*
  97-C-2715, 1997 WL 461036 (N.D. Ill. Aug. 11, 1997)............................................7

*In re MicroStrategy Inc. Sec. Litig.,*
  110 F. Supp. 2d 427 (E.D.Va. 2000) .......................................................................12

*In re Olsten Corp. Sec. Litig.,*
  3 F. Supp. 2d 286 (E.D.N.Y. 1998) ............................................................................5

*In re Party City Sec. Litig.,*
  189 F.R.D. 91 (D.N.J. 1999) ....................................................................................10

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. LaBranche & Co., Inc.,*
  229 F.R.D. 395 (S.D.N.Y. 2004) .....................................................................1, 5, 6, 7

*Reimer v. Ambac Fin. Group, Inc.,*
  No. 08 Civ. 411(NRB), 2008 WL 2073931 (S.D.N.Y. May 9, 2008) ........................6

*Rozenboom v. Van Der Moolen Holding, N.V.,*
  2004 WL 816440 (S.D.N.Y. 2004) ............................................................................8

*Skwortz v. Crayfish Co. Ltd.,*
  00 Civ. 6766, 2001 WL 1160745 (S.D.N.Y. Sept. 28, 2001) ....................................5

*Sofran v. LaBranche & Co., Inc.,*
  220 F.R.D. 398 (S.D.N.Y. 2004) ................................................................................9

*In re Star Gas Sec. Litig.,*
  2005 U.S. Dist. LEXIS 5827 (D. Conn. Apr. 8, 2005)..............................................12

*In re Tyco Int'l, Ltd.,*
  Nos. 00-MD-1335-B, 2000 DNH 182,
  2000 WL 1513772 (D.N.H. Aug. 17, 2000)...............................................................12

*Vladimir v. Bioenvision, Inc.,*
  No. 07 Civ. 6416(SHS)(AJP), 2007 WL 4526532 (S.D.N.Y. Dec. 21, 2007).............7

*Weinberg v. Atlas Air Worldwide Holdings, Inc.,*
  216 F.R.D. 248 (S.D.N.Y. 2003) ..............................................................................12

**STATUTES**

15 U.S.C. § 78u-4(a)(3)(B)(i) ........................................................................................6

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb) ...........................................................................6

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) .............................................................................3, 4

**MISCELLANEOUS**

H.R. Rep. No. 104-369 (1995),
    *as reprinted in* 1995 U.S.C.C.A.N. 730 ......................................................................3

The State Treasurer of the State of Michigan, Custodian of the Michigan Public School Employees Retirement System, State Employees' Retirement System, Michigan State Police Retirement System, and Michigan Judges Retirement System (the "State of Michigan Retirement Systems" or "SMRS") respectfully submits this memorandum in further support of its motion to: (1) consolidate all related actions; (2) appoint SMRS as Lead Plaintiff pursuant to § 21D(a)(3)(B) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA"); and (3) approve its selection of Labaton Sucharow LLP ("Labaton Sucharow") and Berman DeValerio Pease Tabacco Burt & Pucillo ("Berman DeValerio") as Lead Counsel for the Class.

## PRELIMINARY STATEMENT

The following four lead plaintiff motions are before the Court:  (1) SMRS; (2) the Commonwealth of Massachusetts Pension Reserves Investment Trust Fund ("PRIM"); (3) SICAV Inversiones Campos del Montiel ("Campos del Montiel") and the San Antonio Fire & Police Pension Fund ("San Antonio"); and (4) the Greek Orthodox Archdiocese Foundation ("Greek Orthodox").

SMRS is the presumptive lead plaintiff and its motion should be granted.  Under the PSLRA this Court should appoint the movant who has the largest financial interest in the relief sought by the class and who satisfies the typicality and adequacy requirements of Fed. R. Civ. P. 23.  *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. LaBranche & Co., Inc.*, 229 F.R.D. 395, 404 (S.D.N.Y. 2004) (Sweet, J.) *citing* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). Under any objective measure, SMRS has the largest financial interest by a wide margin. The chart below compares the investment losses of the movants under the most commonly utilized

measures of financial interest, the last-in-first-out (LIFO) and first-in-first-out (FIFO)

methodologies:

| Movant | FIFO Losses | LIFO Losses |
|---|---|---|
| SMRS | $62,970,356 | $62,011,274 |
| PRIM | $21,021,525 | $20,615,152 |
| San Antonio & Campos del Montiel | $10,210,917 | $10,210,917 |
| Greek Orthodox | $2,729,000 | $2,729,000 |

Next, SMRS makes the requisite "preliminary showing" that it is both adequate and

typical. *See Pirelli Armstrong*, 229 F.R.D. at 412 ("in deciding a motion to serve as lead

plaintiff, the moving plaintiff must make only a preliminary showing that the adequacy and

typicality requirements under Rule 23 have been met") (internal quotation omitted). *See also In

re Cavanaugh,* 306 F.3d 726, 732 (9th Cir. 2002) (observing that the district court's belief that

"another plaintiff may be 'more typical' or 'more adequate' is of no consequence. So long as

the plaintiff with the largest losses satisfies the typicality and adequacy requirements, he is

entitled to lead plaintiff status, even if the district court is convinced that some other plaintiff

would do a better job."); *In re Cendant Corp. Sec. Litig.*, 264 F.3d 201, 262 (3d Cir.

2001)("Once the court has identified the movant with 'the largest financial interest in the relief

sought by the class,' it should then turn to the question of whether that movant 'otherwise

satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure' . . . .")

SMRS' claims are "typical" of the class as they arise out of the same course of events

and are predicated on the same legal theories as other members of the putative class. Likewise,

SMRS satisfies the adequacy requirement because its interests are perfectly aligned with the

interests of the other members of the Class. Moreover, SMRS has retained counsel, Labaton

Sucharow and Berman DeValerio, that have decades of experience in effectively prosecuting securities class actions.  Plus, SMRS has a history of closely monitoring counsel and negotiating competitive attorneys' fees, which serves to further increase recoveries to class members.

In addition, SMRS – a sophisticated institutional investor – is precisely the type of plaintiff Congress envisioned would lead securities class actions following the passage of the PSLRA.  *See* H.R. Rep. No. 104-369, at 34 (1995), *as reprinted in* 1995 U.S.C.C.A.N. 730, 733 (stating that the PSLRA was enacted "to increase the likelihood that institutional investors will serve as lead plaintiff").  Moreover, the Office of the Attorney General of the State of Michigan will have a direct role in overseeing this litigation ensuring that the client, and not counsel, will be in the driver's seat of this case.  SMRS is the paradigmatic lead plaintiff.

The presumption that SMRS is the most adequate plaintiff may be rebutted only upon "proof" that the movant "(aa) will not fairly and adequately protect the interest of the class; or (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).  Because no other class member has presented - or will be able to present - any proof that the SMRS will not fairly and adequately protect the interests of the class or is subject to unique defenses, SMRS should be appointed as Lead Plaintiff and its selection of Labaton Sucharow and Berman DeValerio as Lead Counsel should be granted.

Anticipating that it would not have the largest financial interest, plaintiff Greek Orthodox filed a motion seeking appointment as lead plaintiff for the "niche" class period of March 12, 2008 to March 14, 2008, asserted in its complaint.  It also argues that its action should not be consolidated with the other pending actions.  Significantly, the Greek Orthodox's proposed class period is already within the longer class period alleged in the other two (earlier

filed) actions, December 14, 2006 to March 12, 2008.  Thus, the proposed three-day class period is part and parcel of the larger class period for this litigation.

Greek Orthodox's "niche" tactic should be rejected. First, all of the actions involve "common question[s] of law or fact" and, therefore, the Fed. R. Civ. P. 42(a) standard for consolidation is readily met. Second, almost unanimously, courts have refused to carve out roles for "niche" plaintiffs because it undermines the purpose of the PSLRA lead plaintiff provisions, which are to install a lead plaintiff with the largest financial interest in the litigation, not numerous lead plaintiffs for artificial slivers of the whole.  Because Greek Orthodox does not, and cannot, present any proof that SMRS will not adequately protect the interests of purchasers in the last three days of the longer class period, its motion should be rejected.  Greek Orthodox cannot even articulate a ground for inadequacy, much less meet the PSLRA's requirement that it submit "proof" of inadequacy.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). Greek Orthodox's attempt to splinter this litigation on a statement-by-statement basis is unprecedented, contrary to the PSLRA, and ill-advised for practical reasons.

## ARGUMENT

### I.     THE RELATED ACTIONS SHOULD BE CONSOLIDATED

Pursuant to Fed. R. Civ. P. 42(a), all of the above-captioned cases should be consolidated because they share numerous factual and legal issues and name overlapping defendants.  *See In re Fuwei Films Sec. Litig.*, 247 F.R.D. 432, 435 (S.D.N.Y. 2008).  All parties, plaintiffs and defendants, agree that consolidation of all action is proper, except for Greek Orthodox.  While Greek Orthodox argues against consolidation due to the shorter class period alleged in its complaint, courts in this District have found that "[d]ifferences in causes of action, defendants, or the class period do not render consolidation inappropriate if the cases

present sufficiently common questions of fact and law, and the differences do not outweigh the interests of judicial economy served by consolidation."  *Kaplan v. Gelfond*, 240 F.R.D. 88, 91 (S.D.N.Y. 2007); *see also In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 292-94 (E.D.N.Y. 1998) (consolidating actions despite differing class periods); *Bhojwani v. Pistiolis*, No. 06 Civ. 13761, 2007 WL 2197836, at *3 (S.D.N.Y. June 26, 2007) ("The fact that the plaintiffs and movants assert two different dates on which the pertinent misrepresentations began does not . . . defeat consolidation."); *see also See Skwortz v. Crayfish Co. Ltd.*, 00 Civ. 6766, 2001 WL 1160745, at *2 n.3 (S.D.N.Y. Sept. 28, 2001) (citing *In re Olsten*, 3 F. Supp. 2d at 293).  *Pirelli Armstrong*, 229 F.R.D. at 402.

Here, all plaintiffs and movants rely on substantially the same facts and raise identical legal claims.  For instance, all plaintiffs and movants allege that defendants' statements misrepresented and/or omitted to state material facts about the true financial status of the Bear Stearns Companies, Inc. ("Bear Stearns" or the "Company"), which led, ultimately, to Bear Stearns' collapse. *Compare Greek Orthodox* Cpl. at ¶¶ 19-26 *with Eastside Holdings* Cpl. at ¶¶ 43-50.  The actions each allege violations of Sections 10(b) and 20(a) of the Exchange Act. *See Greek Orthodox* Cpl. at ¶¶ 36-40; *Eastside Holdings* Cpl. at ¶¶ 59-64.  As is evident from the captions, the *Eastside Holdings* and *Becher* actions name all of the defendants named in the *Greek Orthodox* action.  A table attached as Exhibit 1 to the accompanying Declaration of Andrei V. Rado demonstrates the overlapping allegations between the *Eastside Holdings* and *Greek Orthodox* complaints. As is evident, many allegations are identical.

While the actions are not entirely identical, this is almost always true in securities class actions where, as is common, multiple complaints are filed. This Court has ruled that

"differences among the class periods proposed [do not] preclude consolidation." *See Pirelli Armstrong,* 229 F.R.D. at 402, citing *Skwortz,* 2001 WL 1160745, at \*2 n.3.

Although Greek Orthodox argues that consolidation would be a waste of judicial resources, the opposite is true. "Given the overlapping questions of law and fact . . . , litigating a multitude of separate actions would only ensure the duplication of effort amongst parties and the needless expenditure of judicial resources." *Kaplan*, 240 F.R.D. at 92. Greek Orthodox's argument against consolidation is in direct contrast to Congress' intent that the PSLRA would "'minimize costs' and [] 'giv[e] control of the litigation to lead plaintiffs with substantial holdings [in] the securities of the issuer.'" *Greenberg v. Bear Stearns & Co., Inc*., 80 F. Supp. 2d 65, 70 (E.D.N.Y. 2000) (quoting H.R. Rep. No. 104-369, at 32, *as reprinted in* 1995 U.S.C.C.A.N. at 731).[1] Accordingly, consolidation under Rule 42(a) is appropriate.

## II.    SMRS IS THE MOST ADEQUATE PLAINTIFF

Pursuant to the PSLRA, this Court is to appoint the "most adequate plaintiff" to serve as Lead Plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(i). The PSLRA provides a rebuttable presumption that the "most adequate plaintiff" is the movant that has "the largest financial interest" in the relief sought by the Class and that otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb). Thus, the movant with "the greatest financial stake is the pivotal factor under the PSLRA" when determining who should be appointed lead plaintiff. *Reimer v. Ambac Fin. Group, Inc.*, No. 08 Civ. 411(NRB), 2008 WL 2073931, at \*2 (S.D.N.Y. May 9, 2008).

---

[1] In *Greenberg*, the court rejected the niche lead plaintiff argument, holding that appointing "lead plaintiffs in separate sub classes" would subvert the PSLRA's goals. *Id*.

A.     __SMRS Has The Largest Financial Interest__

Although the PSLRA does not define "largest financial interest," courts routinely use the following four factors in the analysis: (1) the total number of shares purchased; (2) the net number of shares purchased; (3) the net funds expended by the movant to acquire those securities; and (4) the approximate losses suffered by the movant. *See, e.g., id.* at \*3. Of these factors, most courts consider the fourth factor – approximate losses suffered – to be the most important in determining who should be appointed lead plaintiff. *Id.; see also Vladimir v. Bioenvision, Inc.*, No. 07 Civ. 6416(SHS)(AJP), 2007 WL 4526532, at \*5 (S.D.N.Y. Dec. 21, 2007). *See also, Pirelli Armstrong,* 229 F.R.D. at 404 (noting that many courts either follow all or some of the *Lax* factors (*See Lax v. First Merchs. Acceptance Corp.*, 97-C-2715, 1997 WL 461036 (N.D. Ill. Aug. 11, 1997)). Other courts in this District have determined that a LIFO calculation best measures a movants relative loss. *See, e.g., Vladimir*, 2007 WL 4526532, at \*5 (noting that "[m]any courts favor the LIFO method to calculate the financial stake of movants for lead plaintiff status in securities class actions."); *In re eSpeed, Inc. Sec. Litig.*, 232 F.R.D. 95, 101 (S.D.N.Y. 2005) (stating "courts have preferred LIFO and have 'generally rejected FIFO as an appropriate means of calculating losses in securities fraud cases.'") (citing to *In re Cable & Wireless, PLC Sec. Litig.*, 217 F.R.D. 372, 378-79 (E.D. Va. 2003)).

Applying the four factor test, SMRS demonstrably has the largest financial interest:

| Movants | Approximate Losses[2] | Gross Shares Purchased | Net Shares Purchased | Net Funds Expended |
|---|---|---|---|---|
| **SMRS** | **$62,970,356** | **494,600** | **483,000** | **$66,722,179** |
| PRIM[3] | $20,615,152 | 232,150 | 198,750 | $17,713,088 |
| Campos del Montiel and San Antonio | $10,210,917 | 86,700 | 86,700 | $10,836,422 |
| Greek Orthodox | $2,729,000 | 50,000 | 50,000 | $3,233,500 |

**B.   SMRS Satisfies the Requirements of Rule 23**

As this Court has held, once a court "identifies the plaintiff with the largest stake in the litigation, ***further inquiry must focus on that plaintiff alone*** and be limited to determining whether he satisfies the other statutory requirements." *Rozenboom v. Van Der Moolen Holding, N.V.*, No. 03 Civ. 8284, 2004 WL 816440, at *3 (S.D.N.Y. Apr. 14, 2004) (emphasis added) (quotation omitted). The other statutory requirements are that the movant with the largest financial interest satisfy the adequacy and typicality elements of Fed. R. Civ. P. 23. *See id.* at *5-6. As demonstrated in its moving papers, SMRS handily satisfies the adequacy and typicality requirements of Rule 23.  *See* Opening Brf. at 8-11.

**1.    There Is No Conflict Between Class Members In The Overlapping Class Periods**

Greek Orthodox argues that there is a conflict of interest between SMRS, who purchased shares during the longer class period and held the vast majority of those shares through the end of the class period, and those who purchased in the last three days of the class period.  This illusory and speculative argument must be rejected.

---

[2] These losses reflect each movants' losses using the LIFO methodology.

[3] Although PRIM did not list the amount of shares it purchased or its net expenditures, counsel for the SMRS was able to calculate this information based on the loss calculations provided by PRIM.  *See* Exh. 3 to the Declaration of Joseph R. Seidman, Jr., Dkt. No. 20, *Eastside Holdings Inc. v. The Bear Stearns Cos., Inc.*, Civ. No. 08-cv-02793 (S.D.N.Y. filed May 16, 2008).

First, Greek Orthodox does not articulate any conflict between SMRS and later purchasers. This is not surprising as there is simply no conflict. There is absolutely no showing that it is in SMRS' interests to undermine the claims of purchasers in the last three days of the class period. To the contrary, the longer class period completely encompasses the shorter one, so it is in the interest of the SMRS to establish that the statements identified in the Greek Orthodox action as actionably false and misleading are actionably false and misleading. The operative complaint in the action, which will be filed by the lead plaintiff, will render moot any distinctions among the existing complaints, and SMRS stands willing and able to represent all purchasers during the entire class period.

In addition, as this Court has held, the PSLRA requires "proof" of inadequacy, not mere speculation. *Sofran v. LaBranche & Co., Inc*., 220 F.R.D. 398, 403-04 (S.D.N.Y. 2004) (Sweet, J.) This is a high standard that is rarely met because courts interpret the statute to mean what it says. "[C]onclusory assertions of inadequacy are . . . insufficient to rebut the statutory presumption under the PSLRA without specific support in evidence . . . ." *Constance Sczesny Trust v. KPMG* LLP, 223 F.R.D. 319, 324-25 (S.D.N.Y. 2004) (Stein, J.) (appointing movant with largest loss in the securities purchased during the class period, and finding attempted rebuttal unsuccessful); s*ee e.g., In re Fannie Mae Sec. Litig*., 355 F. Supp. 2d 261, 263-64 (D.D.C. 2005) (same).

Greek Orthodox offers no evidence, or even articulates why SMRS is inadequate to represent purchasers of Bear Stearns common stock on the last three days of the class period. In fact, SMRS is the ideal lead plaintiff and will prosecute this action in the best interests of all class members.

### III.    GREEK ORTHODOX'S MOTION SHOULD BE DENIED

#### A.    The Court Should Utilize The Longest
####        Class Period In The Lead Plaintiff Analysis

The Court should reject Greek Orthodox's invitation to appoint lead plaintiff in its

action based on the financial interest in that short time period only.  *See* Greek Orthodox Br. at

3.[4]

When faced with multiple class periods at the lead plaintiff stage, courts have held that

the lead plaintiff analysis should utilize the most inclusive class period because "it encompasses

more potential class members . . . ." *In re Doral Fin. Corp. Sec. Litig.*, 414 F. Supp. 2d 398,

402-03 (S.D.N.Y. 2006) (noting that narrowing the Class Period, if appropriate at all, should be

done at a later stage in the litigation); *Bhojwani,* 2007 WL 2197836, at *3 (consolidating the

proposed class actions "based on the more inclusive class period alleged by the majority of the

movants");  *In re Party City Sec. Litig.*, 189 F.R.D. 91, 94 n.3 (D.N.J. 1999) ("The *Catanzarite*

[*v. Party City Corp.*, No. 99-1317 (D.N.J. filed Mar. 29, 1999)] Action is relied upon for

purposes of this motion because the class period alleged therein covers the longest class period

alleged in the actions filed against the Defendants.").  The same result should be reached here.

#### B.    The Court Should Not Appoint A "Niche" Lead Plaintiff

Greek Orthodox's argument that, in the event that the Court consolidates all the above

named actions, it should still be appointed Lead Plaintiff for a "subclass of purchasers during

the March 12-14, 2008 class period" should be rejected.  Greek Orthodox Br. at 3.

Greek Orthodox seeks to carve out a "niche" role for itself.  Almost uniformly, courts

reject attempts by "niche" plaintiffs to wrest control of the litigation from the movant with the

---

[4] "Greek Orthodox Br." refers to the Greek Orthodox Archdiocese Foundation's Memorandum of Law in Support of Motion for Appointment of Lead Plaintiff and Approval of Lead Plaintiff's Selection of Lead Counsel, filed on May 20, 2008 [Civ. No. 08-cv-3013, Dkt. No. 16].

largest financial interest in the action as a whole.  The tactic was common in the early days of

the PSLRA and is rarely seen now because it did not work.

 *Aronson v. McKesson HBOC, Inc.*, 79 F. Supp. 2d 1146 (N.D. Cal. 1999) is on point.  In

*McKesson*, a number of plaintiffs "move[d] to be appointed lead plaintiffs for their 'niche'

actions, claiming that their causes of action [were] so distinct as to justify appointment of

multiple lead plaintiffs."  *Id.* at 1150. Pointing to the plain language of the statute, the

*McKesson* court dismissed the "niche" movants' arguments:

> The "niche" plaintiffs' arguments do not fully take into account
> that the Reform Act establishes a procedure for the court's speedy
> consolidation of all pending claims.  Under the Act, a member of
> the purported plaintiff class who wishes to challenge the
> appointment of a presumptively most adequate plaintiff must
> present proof that the presumptively most adequate plaintiff either
> (i) will not fairly and adequately protect the interests of the class
> or (ii) is subject to unique defenses that render that plaintiff
> incapable of adequately representing the class.  The "niche"
> plaintiffs have not met their statutory burden. Their speculations
> about possible conflicts do not rebut the statutory presumption
> that one lead plaintiff can vigorously pursue *all* available causes
> of action against *all* possible defendants under *all* available legal
> theories.

*Id.* at 1151 (internal citations omitted).  *See also Albert Fadem Trust v. WorldCom, Inc.*, 01 Civ.

3299, 2002 WL 1880530, at *3 (S.D.N.Y. Aug. 15, 2002) (appointing sole Lead Plaintiff); *In re*

*Enron Corp. Sec. Litig.*, 206 F.R.D. 427, 451 (S.D. Tex. 2002) ("[R]equests for splintering the

action or appointing multiple Lead Plaintiffs to represent specialized interests, especially in

light of the common facts and legal issues here, would undermine the purpose of the PSLRA.

Therefore the Court denies the motions of the 'Niche Plaintiffs' and addresses the remaining

applications.").  *See also Hevesi v. Citigroup, Inc.*, 366 F.3d 70, 83 n.13 (2d Cir. 2004)

("[requiring] that a different lead plaintiff be appointed to bring every single available claim

would contravene the main purpose of having a lead plaintiff – namely, to empower one or

several investors with a major stake in the litigation to exercise control over the litigation as a whole.").

Indeed, Courts have rejected "niche" lead plaintiff arguments even where the movant with largest loss did not have standing to represent the "niche" plaintiffs. *McKesson*, 79 F. Supp. 2d at 1150-51 (consolidating Securities Act and Exchange Act claims and rejecting the movants arguments that their causes of action are so distinct as to justify appointment of multiple lead plaintiffs); *Constance Sczesny Trust*, 223 F.R.D. at 323-24 (stock purchasers could represent option purchasers as lead plaintiff); *Weinberg v. Atlas Air Worldwide Holdings, Inc.*, 216 F.R.D. 248, 253-54 (S.D.N.Y. 2003) (holding that "only one Lead Plaintiff is necessary" to represent Exchange Act and Securities Act claims, and that "it is well established that the Lead Plaintiff's claims do not have to be identical to the other class members' claims."); *In re Tyco Int'l, Ltd*., Nos. 00-MD-1335-B, 2000 DNH 182, 2000 WL 1513772, at *8 (D.N.H. Aug. 17, 2000) (one lead plaintiff can represent many claims); *In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*, 458 F. Supp. 2d 455, 462 (E.D. Mich. 2006) (lead plaintiff "need not have suffered a loss on each type of security at issue to serve as the Lead Plaintiff in this litigation."). Here, SMRS has standing to represent purchasers of Bear Stearns common stock in the last three days of the long class period.  In fact, Greek Orthodox's niche argument is particularly weak because not only did  Greek Orthodox, like SMRS, purchase Bear Stearns common stock, but it also asserts the same Exchange Act claims against the same Defendants as in the other complaints.[5]

---

[5]  To the extent that Greek Orthodox's papers can be read as a request to carve out a subclass, that issue is premature and should be raised, if at all, at the class certification stage.  *In re Star Gas Sec. Litig.*, 04-1766, 2005 WL 818617, at *7 (D. Conn. Apr. 8, 2005) ("The ruling on a motion for class certification will determine whether in fact the claims of Star Gas purchasers in the various class periods [] require subclasses, or whether each lead plaintiff is representative of the class based on the dates of stock purchases."); *In re MicroStrategy Inc. Sec. Litig*., 110 F. Supp. 2d 427, 440 (E.D. Va. 2000) ("To the extent a subclass or classes represented by separate counsel are

As the Court in *In re Enron*, 206 F.R.D. 451, recognized, "in light of the common facts and legal issues," movant's request for appointing multiple lead plaintiffs would "undermine the purpose of the PSLRA" since the litigation should proceed as a "unified class with a strong Lead Plaintiff."

    **C.**        **Carving Out A Three Day Class Period Invites Chaos**

Congress hoped that the PSLRA would "'minimize costs' and [] 'giv[e] control of the litigation to lead plaintiffs with substantial holdings [in] the securities of the issuer.'" *Greenberg*, 80 F. Supp. 2d at 70 (quoting H.R. Rep. No. 104-369, at 32, *as reprinted in* 1995 U.S.C.C.A.N. at 731). In *Greenberg*, the court rejected the niche lead plaintiff argument, holding that appointing "lead plaintiffs in separate sub classes" would subvert the PSLRA's goals. *Id.*

Permitting a sub-class of a three day class period will impede the efficient prosecution of this litigation. For example, will each class be precluded from pointing to facts which occurred in the other class period to support their complaints? If a sub-class is appointed, will the remaining class be precluded from asserting loss causation because the large stock drop did not occur in "their class period"? What happens if one class attempts to settle their case without the other? If the action proceeds to trial, who will represent the class? Will there be two juries? The confusion and resulting inefficiency will harm all Bear Stearns investors and militates against appointing a niche sub-class.

Lastly, granting Greek Orthodox's request in this high-profile litigation would invite similar "niches" in this litigation (at the class certification stage) and other litigations. It would not be difficult in most cases to "reverse engineer" niche class periods to maximize a movant's

---

required for the proper administration of this litigation and representation of the members of the class, that issue may be addressed at a later stage pursuant to Rule 23, Fed. R. Civ. P.").

financial interest.  Many securities class actions would then be splintered on a statement-by-statement basis, with as many lead plaintiffs as distinct statements.  Such a result would be at odds with the PSLRA and would create logistical nightmares for courts and litigants.

## CONCLUSION

For all the above reasons, SMRS respectfully requests that the Court consolidate all of the actions, appoint SMRS as lead plaintiff over the consolidated action and approve its selection of lead counsel.

Dated: June 5, 2008                          Respectfully submitted,

**BERMAN DeVALERIO TABACCO**          **LABATON SUCHAROW LLP**
**BURT & PUCILLO**

By:  */s/ Joseph J. Tabacco, Jr.*            By:   */s/ Thomas A. Dubbs*

Joseph J. Tabacco, Jr. (JJT-1994)            Thomas A. Dubbs (TD-9868)
Julie J. Bai                                 Christopher J. Keller (CK-2347)
425 California Street                        Andrei V. Rado (AR-3724)
Suite 2100                                   Alan I. Ellman (AE-7347)
San Francisco, California 94104              140 Broadway
Telephone:     (415) 433-3200                New York, New York 10005
Facsimile:     (415) 433-6382                Telephone:     (212) 907-0700
                                             Facsimile:     (212) 818-0477

Jeffrey C. Block (JCB-0387)
Patrick T. Egan
One Liberty Square
Boston, Massachusetts 02109
Telephone:     (617) 542-8300
Facsimile:     (617) 542-1194

*Attorneys for the State of Michigan Retirement Systems*
*and Proposed Lead Counsel for the Class*