UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------X

IN RE BEAR STEARNS COMPANIES, INC.
SECURITIES, DERIVATIVE, AND ERISA      08 MDL No. 1963
LITIGATION

                                              OPINION

This Document Relates To: 08 Civ. 2793

------------------------------------X

A P P E A R A N C E S:

    Attorneys for Co-Lead Counsel for Lead Plaintiff State
    of Michigan Retirement Systems and the Proposed Class

    BERMAN DeVALERIO
    One Liberty Square
    Boston, MA 02109
    By:  Patrick T. Egan, Esq.
         John H. Sutter, Esq.

    425 California Street, Suite 2100
    San Francisco, CA 94104
    By:  Joseph J. Tabacco, Jr., Esq.

    LABATON SUCHAROW LLP
    140 Broadway
    New York, NY 10005
    By:  Thomas A. Dubbs, Esq.
         James W. Johnson, Esq.
         Jeffrey R. Alexander, Esq.

    Attorney for Defendant The Bear Stearns Companies Inc.

    PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
    1285 Avenue of the Americas
    New York, NY 10019
    By:  Eric S. Goldstein, Esq.

**Sweet, D.J.**

On January 5, 2012, Defendant The Bear Stearns Companies Inc. ("Bear" or the "Defendant") notified the Court via letter of a discovery dispute that had arisen between Bear and Lead Plaintiff the State of Michigan Retirement System ("SMRS" or the "Lead Plaintiff"). The dispute concerned SMRS' claim of work product protection for the identification of seven "confidential witnesses" cited in SMRS' Consolidated Class Action Complaint (the "Complaint"). Although SMRS provided Bear with a list of 148 individuals whom SMRS had a reasonable basis for believing may have information relevant to this litigation, SMRS has refused to disclose the identity of the seven confidential witnesses on the basis that this information is protected by the work product privilege. The Defendant's letter was treated as a motion to compel. Upon the facts and conclusions set forth below, Bear's motion to compel is granted.

**Prior Proceedings**

The Lead Plaintiff filed the Complaint on February 27, 2009. In the Complaint, SMRS relies, in part, on allegations

1

from seven confidential witnesses. See Compl. ¶ 54, 58-60, 107, 132-33, 136, 143. For example, the Complaint includes allegations such as, "According to Confidential Witness Number 1 ('CW 1'), an Area Sales Manager who began work for ECC in January of 2006 and continued working at [a Bear entity] until February of 2008, CW 1's office was under great pressure to 'dig deeper' and originate riskier loans that 'cut corners' with respect to credit scores or loan to value ('LTV') ratios," Compl. ¶ 54, and "Confidential Witness Number 4 ('CW 4') . . . reported that the Bear Stearns traders responsible for buying the loans were fully aware of the weakness of the underlying loans. According to CW 4, the traders ignored CW 4's due diligence findings that borrowers would be unable to pay," Compl. ¶ 60. In an opinion dated January 19, 2011 denying the Defendant's motion to dismiss, the Court cited the confidential witnesses' allegations as evidence of Bear's scienter. See In re Bear Stearns Cos., Inc. Sec. Derivative & ERISA Litig., 763 F. Supp. 2d 423, 503-04 (S.D.N.Y. 2011) ("Here, the Securities Complaint, as set forth above, has provided detailed allegations, including the OIG Report and confidential witness statements, to allege that the Defendants were aware or should have been aware of the falsity of their statements. . .").

2

On May 20, 2011, Bear issued discovery requests to SMRS, requesting, among other things, the identification of the seven confidential witnesses cited in the Complaint and documents related to those witnesses. SMRS objected and refused to identify the confidential witnesses or produce any related documents.

Bear and SMRS met and conferred twice, on June 28, 2011 and July 14, 2011, but were unable to resolve the issue. While Bear contended that SMRS was required to identify the witnesses pursuant to applicable precedent, SMRS stated that it was researching the issue and would respond to Bear's position at a later date. Bear renewed its request for SMRS' position regarding the identification of the confidential witnesses on August 11, 2011. On August 25, the Lead Plaintiff responded that the identification of confidential witnesses was protected as attorney work product.

On September 23, 2011, SMRS supplied Bear with a list of 148 "individuals that counsel for Lead Plaintiff has a reasonable basis for believing may have information relevant to this litigation." SMRS did not identify the confidential witnesses or confirm that the confidential witnesses were

3

included on the list.  On October 11, 2011, Bear responded to SMRS' witness list, reiterating the reasons why Bear believed the identity of the confidential witnesses was not protected. Counsel for the parties conferred on November 10, 2011 and confirmed that SMRS would not identify the confidential witnesses.  SMRS has stated that it does not intend to call any of the confidential witnesses at trial.

On January 5, 2012, Bear contacted the Court outlining the nature of the parties' discovery dispute.  The Court treated Bear's letter as a motion.  Opposition and reply papers were submitted, and oral argument was heard on January 25.

**The Defendant's Motion To Compel Is Granted**

The Defendant contends that the identification of the confidential witnesses is not protected work product, and, even if the work product doctrine did apply, Bear is still entitled to these witnesses' identities because of the undue hardship that withholding this information would impose on Bear.  In defense of its decision to withhold the identities of the confidential witnesses, the Lead Plaintiff contends that this information is protected by the attorney work product privilege,

4

that the privilege is not waived since the Lead Plaintiff will not rely on the confidential witnesses at trial and that Bear's undue burden is minimal.

On November 14, 2011, the Honorable Paul Engelmayer decided a similar issue in <u>Plumbers and Pipefitters Local Union No. 630 Pension-Annuity Trust Fund v. Arbitron, Inc.</u>, No. 08 Civ. 4063(PAE), 2011 WL 5519840 (S.D.N.Y. Nov. 14, 2011). There, the defendant Arbitron moved for an order directing the lead plaintiff to disclose the names of 11 former Arbitron employees whom the complaint designated as "confidential informants" ("CIs"). Arbitron also sought an order directing the plaintiff to produce all documents that these 11 CIs provided to plaintiff's counsel. The facts and arguments presented to the Court in <u>Arbitron</u> resemble those of the present action, and Judge Engelmayer's well reasoned opinion will be followed in this case.

In <u>Arbitron</u>, the Court held that "the names of the persons identified in the [complaint] as confidential informants are not entitled to any work product protection; and if any work product protection does apply to these names, it is minimal." In reaching this conclusion, the Court noted that the plaintiff

5

had already disclosed the fact that these 11 CIs, along with 72 other witnesses, had been identified to the defense by name as possessing discoverable information, the plaintiff had already disclosed aspects of what these 11 CIs had stated in interviews about the case and identifying these 11 confidential witnesses would expedite the discovery process by allowing Arbitron to focus its depositions on these firsthand witnesses. Recognizing that the attorney work product protects the "mental impressions, conclusions, opinions or legal theories of an attorney or other representative," In re Grand Jury Subpoena Dated July 6, 2005, 510 F.3d 180, 183 (2d Cir. 2007), the Court found it "difficult to see how syncing up the 11 CIs with these already disclosed names would reveal Plaintiff's counsel's mental impressions, opinions, or trial strategy." Arbitron, 2011 WL 5519840, at *5. The Court also stated that the CIs' names "will almost certainly eventually become known during this litigation, if Arbitron pursues the deposition process long enough." Id. The same reasoning applies to Bear's motion to compel the Lead Plaintiff to identify its seven confidential witnesses.

In Arbitron, the Court addressed the work product privilege as follows: "[O]pposing counsel, upon learning the names of the 11 CIs, might surmise that Plaintiff's counsel had

6

judged the other 72 named witnesses to be less helpful witnesses for its cause. Perhaps so, but any such surmise would be just that, surmise – not a reliable indicator of counsel's actual thought processes. There are many other plausible reasons for a counsel not to list a witness in a complaint (as a CI or by name) apart from an assessment that the witness was peripheral." Arbitron, 2011 WL 5519840, at *5.

The Arbitron Court also noted that the plaintiff "has utilized the CIs offensively . . . presumably with the goal of protecting . . . against dismissal." Id. While the Court acknowledged that use of confidential witnesses to support a complaint was entirely proper, "once the discovery phrase begins, the balance of interests shifts [and] [t]he priority becomes reciprocal and robust fact-gathering as the parties seek to discover relevant evidence." Id. (citing In re Initial Pub. Offering Secs. Litig., 220 F.R.D. 30, 37 (S.D.N.Y. 2003)). Citing various cases, the Arbitron Court noted that where a party has attempted to satisfy the pleading requirements of the Private Securities Litigation Reform Act by showcasing statements from a limited number of confidential witnesses, the plaintiff may not thereafter refuse to disclose the identity of those witnesses on the grounds of work product. Arbitron, 2011

7

WL 5519840, at *6 (citing Ross v. Abercrombie & Fitch Co., No. 2:05CV0819, 2008 WL 821059, at *3 (S.D. Ohio Mar. 24, 2008); NXIVM Corp. v. O'Hara, 241 F.R.D. 109, 142 (N.D.N.Y. 2007); Computer Assoc. Int'l Inc. v. Simple.com, Inc., No. 02-CV-2748, 2006 WL 3050883, at *3 (E.D.N.Y. Oct. 23, 2006)).

The Lead Plaintiff has attempted to distinguish the Arbitron case in two ways. First, SMRS has described the opinion as an "outlier," but this characterization of the decision is inaccurate in view of the substantial caselaw cited in Arbitron. Second, SMRS states that the decision emphasized the small size of the defendant company. While the Lead Plaintiff is correct in noting that Judge Engelmayer's opinion noted Arbitron's small size, see Arbitron, 2011 WL 5519840, at *6, the Court's discussion of Arbitron's size was raised in evaluating whether Arbitron would suffer undue hardship in the event that the work product doctrine was found to apply. The Court, as described above, had already held that the work product doctrine did not apply and, as a supplemental basis for its ruling, delved into the undue hardship issue.

Both the Lead Plaintiff and the Arbitron Court acknowledge that the case law regarding the application of the

8

work product doctrine to motions to compel the names of a witness referenced but not named in a complaint is not uniform. However, based upon this District's most recent jurisprudence and the circumstances presented here, the work product doctrine cannot be employed to protect the identities of SMRS' confidential witnesses.

**Conclusion**

Based on the conclusions set forth above, the Defendant's motion to compel is granted.

It is so ordered.

**New York, NY**
**January 27, 2012**

_____
ROBERT W. SWEET
U.S.D.J.