UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------X

IN RE BEAR STEARNS COMPANIES, INC.
SECURITIES, DERIVATIVE, AND ERISA            08 MDL No. 1963
LITIGATION
                                                 OPINION
This Document Relates To: 08 Civ. 2793

----------------------------------------X

A P P E A R A N C E S:

     Co-Lead Counsel and Attorneys for Lead Plaintiff State
of Michigan Retirement Systems and the Proposed Class

     BERMAN DeVALERIO
One Liberty Square
Boston, MA  02109
By:  Patrick T. Egan, Esq.
     John H. Sutter, Esq.

     One California Street, Suite 900
San Francisco, CA  941111
By:  Joseph J. Tabacco, Jr., Esq.

     LABATON SUCHAROW LLP
140 Broadway
New York, NY  10005
By:  Thomas A. Dubbs, Esq.
     James W. Johnson, Esq.
     Craig A. Martin, Esq.

     Attorneys for Defendant The Bear Stearns Companies
Inc.

     PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY  10019
By:  Eric S. Goldstein, Esq.
     Brad S. Carp, Esq.
     Daniel J. Toal, Esq.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11/9/12

Attorneys for Defendant Deloitte & Touche LLP

CRAVATH, SWAINE & MOORE LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
By:  Thomas G. Rafferty, Esq.
     Antony L. Ryan, Esq.


Attorneys for Defendant James E. Cayne

KRAMER LEVIN NAFTALIS & FRANKEL LLP
1177 Avenue of the Americas
New York, NY 10036
By:  David S. Frankel, Esq.


Attorneys for Defendant Alan D. Schwartz

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
4 Times Square
New York, NY 10036-6522
By:  Jay B. Kasner, Esq.
     Susan Saltzstein, Esq.

PARKER, HUDSON, RAINER & DOBBS LLP
1500 Marquis Two Tower
285 Peachtree Center Ave., N.E.
Atlanta, GA 30303
By:  Constance M. Ewing, Esq.
     David G. Russel, Esq.

Attorneys for Defendant Samuel L. Molinaro, Jr.

ALLEN & OVERY LLP
1221 Avenue of the Americas
New York, NY 10020
By:  Pamela R. Chepiga, Esq.
     Allie Cheatham, Esq.


Attorneys for Defendant Alan C. Greenberg

SCHULTE ROTH & ZABEL LLP
919 Third Avenue

New York, NY 10022
By:   Alan R. Glickman, Esq.
      Christopher H. Giampapa, Esq.
      Gary Stein, Esq.

Attorneys for Defendant Warren J. Spector

WACHTELL, LIPTON, ROSEN & KATZ
51 West 52nd Street
New York, NY 10019
By:   David B. Anders, Esq.
      Meredith L. Turner, Esq.

Attorneys for Defendant Michael Alix

SCHULTE ROTH & ZABEL LLP
919 Third Avenue
New York, NY 10022
By:   Jeffrey P. Wade, Esq.

WIGGIN & DANA LLP
450 Lexington Avenue, Suite 3800
New York, NY 10017
By:   Scott D. Corrigan, Esq.

Attorneys for Defendant Jeffrey M. Farber

WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, NY 10019
By:   Michael R. Young, Esq.
      Antonio Yanez, Jr., Esq.

**Sweet, D.J.**

Lead plaintiff The State of Michigan Retirement Systems has moved for orders (i) granting final approval of the proposed settlement ("Settlement") with the Bear Stearns Defendants[1] and defendant Deloitte & Touche LLP ("Deloitte" and, collectively with the Bearn Stearns Defendants, the "Defendants"); (ii) granting certification of the proposed settlement class ("Settlement Class")[2]; and (iii) approving the

---

[1] The Bear Stearns Defendants are: (i) The Bear Stearns Companies; and (ii) James E. Cayne, Alan D. Schwartz, Warren J. Spector, Alan C. Greenberg, Samuel L. Molinaro, Jr., Michael Alix, and Jeffrey M. Farber.

[2] The Settlement Class consists of those who, during the period from December 14, 2006 through March 14, 2008 (the "Class Period"), purchased or otherwise acquired the common stock, other equity securities, or call options of or guaranteed by Bear Stearns, or sold Bear Stearns put options, and were damaged thereby.  The settlement class also includes all persons who received Bear Stearns Capital Accumulation Plan ("CAP") Units and Restricted Stock Units that had fully vested, entitled them to an equivalent number of shares of Bear Stearns common stock upon settlement at the end of the deferral period, during the Class Period, as part of their compensation as an employee with Bear Stearns and participation in its CAP and Restricted Stock Unit Plan.  Specifically excluded from the Settlement Class are: the Defendants; the officers and directors of Bear Stearns; the members of the immediate families of the Individual Defendants; any firm, trust, partnership, corporation, or entity in which any Defendant has a controlling interest; the legal representatives, heirs, successors-in-interest or assigns of any such excluded Person, and any Person who would otherwise be a Settlement Class member but properly excludes himself, herself,

proposed plan of allocation ("Plan of Allocation").  On the same
day, co-lead counsel for Lead Plaintiff, Berman DeValerio and
Labaton Sucharow LLP (collectively, "Class Counsel"), moved for
orders: (i) awarding attorneys' fees; (ii) reimbursing
litigation expenses incurred by Class Counsel; and (iii)
reimbursing Lead Plaintiff for its reasonable costs and
expenses.  The motions were heard on September 19, 2012.

For the reasons set forth below, the motions are
granted, and the objections to the Settlement are overruled.

## I.  Prior Proceedings

By order dated August 18, 2008, the MDL Panel assigned
to this Court a number of actions filed in the United States
District Courts for the Southern and Eastern Districts of New
York arising from the collapse of investment bank Bear Stearns
in March 2008.  On January 6, 2009, an Order was issued
consolidating all of these actions.  The Order appointed lead
counsel and lead plaintiffs for each of the three species of
actions comprising the consolidated set: (1) those asserting
securities claims, (2) those asserting derivative claims and (3)
those asserting ERISA claims.

or itself by filing a valid and timely request for exclusion in
accordance with the requirements set forth in the notice of
settlement.

On February 27, 2009, lead plaintiff for the
securities actions, The State of Michigan Retirement Systems
("Lead Plaintiff"), filed a consolidated class action complaint
("Complaint") alleging, *inter alia*, that Defendants had violated
federal securities law in that they (i) defrauded investors by
overstating the value of Bear Stearns' assets and understating
the risks entailed in those assets; and (ii) misled investors
concerning the company's liquidity problems.  The Complaint
alleges that, as a result of these misleading statements, Bear
Stearns' stock price was artificially inflated ruing the Class
Period, thereby harming all those who purchased the company's
stock during that time frame.  See Lead Plaintiff's Memorandum
of Law in Support of Motion for Final Approval of the Proposed
Class Action Settlements with Bear Stearns Defendants and
Deloitte & Touche LLP, the Proposed Plan of Allocation, and
Final Certification of the Settlement Class ("Pl. Mem.") at 2-3.

In April 2009, Defendants filed motions to dismiss,
which were denied on January 19, 2011.   See In re Bear Stearns
Cos., Inc., Sec., Derivative and ERISA Litig., 763 F. Supp. 2d
423 (S.D.N.Y. 2011) ("Bear Stearns I").   Thereafter, the parties
engaged in extensive discovery, leading to the production of
approximately nine million documents by Defendants and various
non-parties, and nearly 180,000 pages by Plaintiffs.  See Joint

5

Declaration of Joseph Tabacco, Jr. and Thomas A. Dubbs in

Support of (a) Lead Plaintiff's Motion for Final Approval of

Class Action Settlements and Plan of Allocation and (B) Co-Lead

Counsel's Motion for Attorneys' Fees and Reimbursement of

Litigation Expenses (Aug. 15, 2012) ("Joint Decl.") at 9, 14.

     In May 2012, settlement discussions that had

previously stalled in November 2009 were revived with the

assistance of a mediator, and by June 2012, proposed settlements

had been reached with both the Bear Stearns Defendants and

Deloitte ("the Settlements").  See Notice of Lead Plaintiff's

Unopposed Motion for Preliminary Approval of Partial Settlement,

Approval of Notice to the Settlement Class and Certification of

the Settlement Class for Settlement Purposes (June 7, 2012)

[Bear Stearns]; Notice of Lead Plaintiff's Unopposed Motion for

Preliminary Approval of Partial Settlement, Approval of Notice

to the Settlement Class and Certification of the Settlement

Class for Settlement Purposes (June 11, 2012) [Deloitte].  The

Settlements called for the Bear Stearns Defendants to pay $275

million and for Deloitte to pay $19.9 million, for a total

settlement amount of $294.9 million ("Settlement Amount").  The

Court granted preliminary approval to the Settlements via twin

preliminary approval orders issued June 13, 2012 (the

"Preliminary Approval Orders").  The Court also preliminarily

certified the Settlement Class pursuant to Fed. R. Civ. P. 23(a) and (23)(b)(3).

A total of 222,374 copies of the Notice and Proof of Claim ("Notices") were mailed to potential Settlement Class members. See Supplemental Affidavit Regarding Mailing of Notice and Proof of Claim and Requests for Exclusion Received To Date (Sept. 12, 2012)("Notice Aff.") at 1.  In response to the Notices, there were 115 requests for exclusion and two objections.[3]  Id. at 2.

_____

[3] The objections were submitted by (i) the Kentmill Plaintiffs, a group of fourteen individuals and entities; and (ii) an individual named Hannah M. Horgan.  The Kentmill Plaintiffs object only to the amount of the proposed Bear Stearns Settlement.  See Pl. Reply Mem. at 4.  This objection is overruled for the reasons stated below.  Horgan objects to the proposed plan of allocation and to the request for attorneys' fees and expenses, id. at 3, but her objections are conclusory and bereft of factual or legal support.  For example, the entirety of Horgan's objection to the proposed plan of allocation is that it is "too vague and too limited," and her objection to the proposed attorneys' fees and litigation expenses is merely that "they are excessive."  Pl. Reply Mem. at 1 n.2.  Objections of this nature are insufficient to weigh against a finding that the proposed settlement is fair and reasonable, and can be overruled without engaging in a substantive analysis.  See In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig., 246 F.R.D. 156, 168 (S.D.N.Y. 2007) (finding that "conclusory statements are not sufficient to weigh against approval of the Settlement as fair and reasonable").  Accordingly, Horgan's objections are overruled

On September 19, 2012, a fairness hearing was held
pursuant to Fed. R. Civ. P. 23(e)(2) at which the Court heard
from the Kentmill Plaintiffs, as well as from Lead Plaintiff and
Defendants.

## II. Certification of the Settlement Class and Appointment of Class Representative and Class Counsel

In the Preliminary Approval Orders, the Settlement
Class was certified pursuant to Rules 23(a) and (b)(3), on the
basis of a finding that the Settlement Class satisfies the
prerequisites for class action certification, in that: (1) the
members of the Settlement Class are so numerous that joinder of
all Settlement Class members is impracticable; (2) there are
questions of law and fact common to the Settlement Class; (3)
the claims of Lead Plaintiff are typical of the Settlement
Class's claims; (4) Lead Plaintiff and Co-Lead Counsel have
fairly and adequately represented and protected the interests of
the Settlement Class; (5) the questions of law and fact common
to the Settlement Class members predominate over any individual
questions; and (6) a class action is superior to other available
methods for the fair and efficient adjudication of the
controversy, considering that (i) the claims of Settlement Class

---

due to their lack of support, as well as for the reasons set
forth below.

Members in the Action are substantially similar and would, if
tried, involve substantially identical proofs and may therefore
be efficiently litigated and resolved on an aggregate basis as a
class action; (ii) the amounts of the claims of many of the
Settlement Class Members are too small to justify the expense of
individual actions; and (iii) it does not appear that there is
significant interest among Settlement Class Members in
individually controlling the litigation.

        Since there have been no material changes to alter the
propriety of these findings regarding the Settlement Class, this
action is hereby finally certified, for the purposes of
settlement only, as a class action pursuant to Fed. R. Civ. P.
23(a) and 23(b)(3), on behalf of the class of all persons who,
during the period from December 14, 2006 to and through March
14, 2008, inclusive, purchased or otherwise acquired the
publicly traded common stock or other equity securities, or call
options of or guaranteed by the The Bear Stearns Companies Inc.
("Bear Stearns"), or sold Bear Stearns put options, either in
the open market or pursuant or traceable to a registration
statement, and were damaged thereby.  The Settlement Class also
includes all persons who received Bear Stearns Capital
Accumulation Plan ("CAP") Units and Restricted Stock Units that
had fully vested, entitling them to an equivalent number of

9

shares of Bear Stearns common stock upon settlement at the end
of a deferral period during the Class Period, as part of their
compensation as an employee with Bear Stearns and participation
in its CAP and Restricted Stock Unit Plan.  Excluded from the
Settlement Class are: the Defendants; the officers and directors
of Bear Stearns; the members of the immediate families of the
Individual Defendants; any firm, trust, partnership,
corporation, or entity in which any Defendant has a controlling
interest; the legal representatives, heirs, successors-in-
interest or assigns of any such excluded Person, and any Person
who would otherwise be a Settlement Class member but properly
excludes himself, herself, or itself by filing a valid and
timely request for exclusion in accordance with the requirements
set forth in the notice of settlement.

In addition, the determinations in the Preliminary
Approval Orders regarding Lead Plaintiff and Class Counsel are
affirmed.  Lead Plaintiff is finally certified as class
representative for the Settlement Class, and the law firms of
Labaton Sucharow LLP and Berman DeValerio are appointed as Class
Counsel for the Settlement Class.

10

### III.  Approval of the Proposed Settlement

#### A. The Proposed Settlement is Procedurally Fair

"A proposed settlement is procedurally fair when it is reached through arm's length negotiations between experienced, capable counsel and after meaningful discovery." In re Wachovia Equity Sec. Litig., No. 08 civ. 6171 (RJS), 2012 WL 2774969, at *3 (S.D.N.Y. June 12, 2012) (quoting Wal-Mart Stores, Inc. v. Visa U.S.A., Inc., 396 F.3d 96, 116 (2d Cir. 2005), cert. denied, 544 U.S. 1044).  These elements are amply satisfied here.  The parties, represented by highly experienced and capable counsel, engaged in extensive arm's length negotiations, which included multiple sessions mediated by retired federal judge Layn R. Phillips, an experienced and well-regarded mediator of complex securities cases. See Joint Decl. at 22 n.14.  In addition, the parties have engaged in substantial and meaningful discovery efforts.  See id. at 9-14.  Accordingly, the proposed settlement is procedurally fair.

#### B.  The Proposed Settlement is Substantively Fair

Under Fed. R. Civ. P. 23(e), a class action lawsuit may not be settled without court approval.  Approval is to be granted only if the court is satisfied that the proposed settlement is fair, adequate, reasonable and not a product of

11

collusion.  Joel A. v. Giuliani, 218 F.3d 132, 138 (2d Cir.
2000).  In this Circuit, courts make such a determination by
examining the proposed settlement through the lens of the nine
factors set forth by in City of Detroit v. Grinnell Corp., 495
F.2d 448, 463 (2d Cir. 1974) (overruling on other grounds
recognized by Chambless v. Mates & Pilots Pension Plan, 845 F.2d
1053 (2d Cir. 1989)).  The Grinnell factors are: (1) the
complexity, expense and likely duration of the litigation; (2)
the reaction of the class to the settlement; (3) the stage of
the proceedings and the amount of discovery completed; (4) the
risks of establishing liability; (5) the risks of establishing
damages; (6) the risks of maintaining the class action through
the trial; (7) the ability of the defendants to withstand
greater judgment; (8) the range of reasonableness of the
settlement fund in light of the best possible recovery; and (9)
the range of reasonableness of the settlement fund in light of
all the attendant risks of litigation.  Wal-Mart, 396 F.3d at
117.

          As set forth below, eight of the nine Grinnell
factors—including those factors generally considered to be most
significant—weigh in favor of approval.  Accordingly, the
proposed settlement is substantively fair.

     *1. Complexity, Expense and Likely Duration of the*
     *Litigation*

     As a general rule, securities class actions are
"notably difficult and notoriously uncertain" to litigate.  In
re Michael Milken & Assocs. Sec. Litig., 150 F.R.D. 46, 53
(S.D.N.Y. 1993) (quoting Lewis v. Newman, 59 F.R.D. 525, 528
(S.D.N.Y. 1973)).  This case is no exception.  In addition to
the administrative and procedural complexities inherent in
matters of such magnitude, the arcane and labyrinthine financial
instruments that lie at the heart of Plaintiffs' allegations are
as complex of a subject matter as ever comes before the courts.
To prove their allegations, Plaintiffs here face a daunting,
protracted and expensive[4] "battle of the experts" with Defendants
regarding valuation of the financial instruments at issue.
Moreover, Plaintiffs' attempts to establish liability on the
part of Defendants would undoubtedly be met by a vigorous and
multi-faceted defense presented by Defendants' experienced
counsel.[5]

     Kentmill Plaintiffs assert that this factor actually
weighs against approval, since many significant pre-trial
hurdles—such as class certification, review of discovery

---

[4] See infra § VII(A) & n.15.

[5] See infra § III(B)(4).

13

materials, and a motion to dismiss—have already been cleared.
See Objection to Proposed Class Action Settlement and Notice of
Intent to Appear (Aug. 29, 2012) ("Kentmill Obj.") at 6-7.
However, contrary to Kentmill Plaintiffs' suggestion, class
certification for trial purposes has not yet been granted (it is
being granted here for the purposes of settlement only), and if
the action were to proceed, Defendants would undoubtedly move to
oppose certification, necessitating a battle on that issue. See
infra § III(B)(6). Further, the mere fact that Plaintiffs have
survived a motion to dismiss does not establish liability and
damages at trial. See infra §§ III(B)(4)&(5). The decision on
the motion to dismiss did not reach a conclusion on the issue of
whether the losses suffered by the putative class were caused by
the fraud or by external market conditions; instead, the loss
causation issue—which would be among the most difficult for
Plaintiffs to prevail on at trial, see infra § III(B)(5)—was
reserved for later determination. See Bear Stearns I at 507.

Accordingly, the complexity factor militates in favor
of settlement.

### 2. Reaction of the Class to the Settlement

"It is well settled that the reaction of the class to
the settlement is perhaps the most significant factor to be

14

weighed in considering its adequacy." In re Am. Bank Note
Holographics, Inc., 127 F. Supp. 2d 418, 425 (S.D.N.Y. 2001)
(quoting Sala v. Nat'l R.R. Passenger Corp., 721 F. Supp. 80, 83
(E.D. Pa. 1989)). Here, a total of 222,374 notices were sent to
potential class members, resulting in only 115 requests for
exclusion (more than 70 of which were from parties already
engaged in individual litigation or arbitration proceedings) and
just two objections. See Notice Aff. at 1-2.

Kentmill Plaintiffs argue that this factor militates
against approval because "a substantial amount of class members
are likely to opt out of the settlement," but the only support
offered for this assertion is a reference to "discussions with
other class members." See Kentmill Obj. at 7. Anecdotal
evidence is not sufficient to tip the scale in favor of the
objectors with respect to this factor.

Given the absence of significant exclusion or
objection—the rate of exclusion is 5.1% and the rate of
objection is less than 1%—this factor weighs strongly in favor
of approval. See Grant v. Bethlehem Steel Co., 823 F.2d 20, 24
(2d Cir. 1987) (holding that an otherwise appropriate settlement
should not be deemed unfair even in the face of opposition by
36% of the total class).

15

> 3.  *Stage of the Proceedings and the Amount of Discovery Completed*

In considering this factor, "the question is whether the parties had adequate information about their claims such that their counsel can intelligently evaluate the merits of plaintiff's claims, the strengths of the defenses asserted by defendants, and the value of plaintiffs' causes of action for purposes of settlement."  In re IMAX Sec. Litig., No. 06 Civ. 6128 (NRB), 2012 WL 2359653, at *11 (S.D.N.Y. June 20, 2012) (internal citations, quotation marks and alterations omitted). In this case, the parties have conducted extensive investigations, obtained and reviewed millions of pages of documents, and briefed and litigated a number of significant legal issues.  See Joint Decl. at 9-17.  It is therefore reasonable to assume that the parties have "obtained a sufficient understanding of the case to gauge the strengths and weaknesses of their claims and the adequacy of the settlement." In re AOL Time Warner, Inc. Sec. Litig., No. MDL 1500, 02 Civ. 5575 (SWK), 2006 WL 903236, at *10 (S.D.N.Y. Apr. 6, 2006).

Kentmill Plaintiffs contend that this factor weighs against approval, but in support of their position they offer only evidence regarding the substantial amount of discovery already completed.  See Kentmill Obj. at 7-8.  As set forth

16

above, the fact that a substantial amount of discovery has been completed militates *in favor* of approval.

As such, this factor favors approval.

### 4.  Risks of Establishing Liability

Plaintiffs face a significant risk of failing to establish the liability of Defendants.  With respect to the Bear Stearns Defendants, Plaintiffs would first need to prove that Bear Stearns' valuation and risk models were flawed. The likelihood of their success would have rested largely upon the testimony of expert witnesses.  When the success of a party's case turns on winning a so-called "battle of experts," victory is by no means assured.  See Am. Bank  Note Holographics, 127 F. Supp. 2d at 426-27; (noting that, in a battle of the experts, there is a possibility that fact finder will be "swayed" by experts from either side);  In re PaineWebber Ltd. P'ships Litig., 171 F.R.D. 104, 129 (S.D.N.Y. 1997) ("The issue would undoubtedly devolve into a battle of experts whose outcome cannot be accurately ascertained in advance.");  In re Warner Commc'ns Sec. Litig., 618 F. Supp. 735, 744-45 (S.D.N.Y. 1985) (noting that in a battle of the experts "it is virtually impossible to predict with certainty which testimony would be credited . . .").

17

Moreover, even if Plaintiffs succeeded in establishing that Bear Stearns' valuation and risk models were objectively flawed, they would then face the challenge of proving that Bear Stearns acted with scienter, a contention that the Bear Stearns Defendants could rebut by pointing to the substantial losses suffered by the company's own executives suffered and the absence of regulatory enforcement or criminal action arising from the collapse.

As to Deloitte, the standard for establishing the liability of a non-fiduciary auditor is more demanding than the standard applicable to fiduciaries such as the Bear Stearns Defendants. See In re Beacon Assocs. Litig., 745 F. Supp. 2d 386, 415-16 (S.D.N.Y. 2010). Plaintiffs must establish that Deloitte acted either with outright intent to aid the fraud, or else with recklessness so egregious as to approximate such intent. See id. Moreover, the valuation of complex financial instruments is an inexact science that relies heavily upon the professional judgment of the auditor, making it difficult to prove objective falsity. In addition, even if falsity were adequately demonstrated, Plaintiffs must still establish that Deloitte had knowledge of falsity.

Kentmill Plaintiffs contend that since the Court, in its opinion denying Defendants' motion to dismiss, sustained the

18

legal sufficiency of the claims as pleaded, it follows that
Plaintiffs will likely be able to successfully establish
liability at trial.  See Kentmill Obj. at 4.  The adequacy of
Plaintiffs' allegations to surpass the threshold for making out
a cause of action does not establish that those causes of action
could be successfully prosecuted at trial, as noted above.

Since Plaintiffs' ability to establish the liability
of Defendants is far from certain, this factor weighs in favor
of settlement approval.

### 5.  Risks of Establishing Damages

Plaintiffs face significant risk with respect to proof
of damages.  Defendants have contended that the decreases in
Bear Stearns' stock price were due to general market conditions,
and that the company's eventual collapse was purely the result
of irrational investor fears leading to an unprecedented "run on
the bank."  In addition, damages would be subject to a battle of
the experts, with "the possibility that a jury could be swayed
by experts for Defendants, who could minimize or eliminate the
amount Plaintiffs' losses."  Am. Bank Note Holographics, 127 F.
Supp. 2d at 426-27.  Under such circumstances, a settlement is
generally favored over continued litigation.  See Park v. The

19

Thompson Corp., No. 05 Civ. 2931 (WHP), 2008 WL 4684232, at *4
(S.D.N.Y. Oct. 22, 2008).

Kentmill Plaintiffs contend that this factor militates
against approval since the damages have been definitively
established already.  See Kentmill Obj. at 9. This is incorrect.
While the proposed settlement calls for money to be paid by the
Defendants, the agreed-upon amounts do not represent a
stipulation as to amount of damages sustained by the Settlement
Class.

Given the above, this factor militates in favor of
approval.

> 6.  Risks of Maintaining the Class Action through
> the Trial

Even if Plaintiffs' motion for class certification is
granted, a challenge to the certification could continue.  The
contention by Defendants that the market for Bear Stearns' stock
was efficient during the period immediately preceding the
company's collapse might preclude Plaintiffs from utilizing the
fraud-on-the-market presumption of reliance, thereby
jeopardizing the Settlement Class's basis for certification.
See Joint Decl. at 19.  The issue could well devolve into yet
another battle of the experts, which, as noted above, can lead

20

to uncertain results.  See supra § III(B)(4).  The risk that
Defendants could in fact succeed in their efforts to decertify
the class militates in favor of settlement approval.

> 7.  *The Ability of Defendants to Withstand*
> *Greater Judgment*

Defendant Bear Stearns is now owned by J.P. Morgan,
which is one of the largest financial institutions in the world.
Indeed, as of today, J.P. Morgan's market capitalization is
valued at over $150 billion,[6] and its ability to withstand a
greater judgment than the $275 million that the proposed
settlement requires is evident.  As noted by Kentmill
Plaintiffs, J.P. Morgan set aside a reserve of approximately $6
billion in anticipation of the expenses and costs stemming from
litigation relating to Bear Stearns.  Kentmill Obj. at 9.

The same is true--to a degree—for defendant Deloitte.
Deloitte, one of country's foremost accounting firms, reports
revenues of over $13 billion in the prior fiscal year alone,[7] an

---

[6] See Google Finance: J.P. Morgan Chase & Co.,
http://www.google.com/finance?hl=en&ds=n&pq=jp+morgan+finance&cp
=2&gs_id=rv&xhr=t&q=jp+morgan&prmdo=1&bav=on.2,or.r_gc.r_pw.r_qf
.&bpcl=37189454&biw=1680&bih=860&um=1&ie=UTF-8&sa=N&tab=ne (last
visited November 6, 2012).


[7] See Facts and Figures—Deloitte: U.S. by the numbers,
http://www.deloitte.com/view/en_US/us/press/Facts-
Figures/index.htm (last visited Nov. 6, 2012).

amount many orders of magnitude greater than the $19.9 million they are required to pay under the proposed settlement.

Since Defendants would be able to withstand greater judgments than the amounts in the proposed settlement, this factor weighs against settlement approval.

> 8.   *Range of reasonableness of the settlement fund in light of the best possible recovery*

The determination of whether a given settlement amount is reasonable in light of the best possibly recovery "does not involve the use of a mathematical equation yielding a particularized sum.  Instead, there is a range of reasonableness with respect to a settlement—a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." Morris v. Affinity Health Plan, Inc., 859 F. Supp. 2d 611, 621 (S.D.N.Y. 2012) (citations and quotation marks omitted).

According to Plaintiffs' economic expert, the decrease in the market value of Bear Stearns' stock that can be fairly attributed to Defendants' allegedly wrongful behavior totals $2.6 billion, which therefore represents the best possible recovery from Plaintiffs' perspective. See Pl. Reply Mem. at 6-8; Declaration of John D. Finnerty, Ph.D. (Sept. 12, 2012) at 7-

22

11.  The salient question, then, is whether the proposed
settlement amount of $294.9 million—representing just over 11%
of the best possible recovery—is within the range of
reasonableness under the circumstances.

        Kentmill Plaintiffs have contended that the proposed
$294.9 million settlement represents an unreasonably small
fraction (around 1%) of the best possible recovery, which they
believe to be $19 billion.  Kentmill Plaintiffs arrive at the
$19 billion figure by calculating the total the decline in Bear
Stearns' stock value from January 2007 through March 2008.
However, a drop in a company's stock value may be the result of
a wide variety of factors other than fraud.  See Dura Pharms.,
Inc. v. Broudo, 544 U.S. 336, 343 (2005).  A plaintiff asserting
a securities fraud cause of action may not simply claim as
damages the full market value loss during a given period, but
rather is required to prove that the damages sought were
actually caused by the alleged fraud, rather than other market
factors.  See In re Omnicom Grp., Inc. Sec. Litig., 597 F.3d
501, 510 (2d Cir. 2010).  It is unlikely that the Kentmill
Plaintiffs' contention could be adequately proven, given the
tumultuous market conditions that were prevailing during the
Class Period.  See Taft v. Ackermans, No. 02 Civ. 7951 (PKL),
2007 WL 414493, at *7-8 (S.D.N.Y. Jan. 31, 2007).

"It is well-settled that a cash settlement amounting to only a fraction of the potential recovery will not *per se* render the settlement inadequate or unfair." Morris, 859 F. Supp. 2d at 621 (internal citations and quotation marks omitted). Indeed, "there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." Grinnell, 495 F.2d at 455 n.2. Thus, the propriety of a given settlement amount is a function of both (1) the size of the amount relative to the best possible recovery; and (2) the likelihood of non-recovery (or reduced recovery).

Plaintiffs face significant challenges in establishing Defendants' liability, see supra § III(B)(4), and even if they manage to succeed on the liability front, Plaintiffs would likely encounter further difficulty in proving damages, see supra § III(B)(5). Given the considerable obstacles standing in the way of a full recovery of damages, the proposed settlement amount of $294.9 million is within the range of reasonableness, so this factor weighs in favor of approval.

> 9. *Range of reasonableness of the settlement fund in light of all the attendant risks of litigation*

As noted above, there is a legitimate risk that Plaintiffs would fail to prove either liability or damages. See

24

supra §§ III(B)(4)-(6) & (8).  In addition, the settlement
amount was the result of a mediation process guided by an
experienced and impartial mediator.  See Joint Decl. at 21-22 &
n.14.  Taking this into account, the proposed settlement amount
of $294.9 million falls within the range of reasonableness, so
this factor weighs in favor of approval.

*     *     *

Since the proposed Settlement is both procedurally and
substantively fair, and because the settlement of class action
litigation is generally favored by the courts, see Wal-Mart, 396
F.3d at 116-17, the proposed Settlement is hereby approved.

## IV.  Approval of the Plan of Allocation

"To warrant approval, the plan of allocation must also
meet the standards by which the settlement was scrutinized--
namely, it must be fair and adequate . . . .  An allocation
formula need only have a reasonable, rational basis,
particularly if recommended by experienced and competent class
counsel."  In re WorldCom, Inc. Sec. Litig., 388 F. Supp. 2d
319, 344 (S.D.N.Y. 2005) (internal citations and quotation marks
omitted).

The Plan, which was prepared by experienced counsel in concert with a damages expert, provides for the distribution of the settlement funds on a *pro rata* basis based on a formula tied to liability and damages, without favoring any particular type of security.  See Joint Decl. at 24-26.  The Plan is designed to fairly and rationally allocate the settlement funds among claimants based on the amount of artificial inflation present in Bear Stearns' securities that was purportedly caused by the company's allegedly fraudulent statements regarding its financial condition during the Class Period.  Id.

Given the above, and given that no substantive objections have been made regarding the Plan, the Plan is both fair and reasonable.

## V.  Approval of Requested Attorneys' Fees

"The Second Circuit has authorized district courts to employ a percentage-of-the-fund method when awarding fees in common fund cases, although the Circuit has encouraged district courts to cross-check the percentage fee against counsel's 'lodestar' amount of hourly rate multiplied by hours spent.  It bears emphasis that whether calculated pursuant to the lodestar or the percentage method, the fees awarded in common fund cases may not exceed what is 'reasonable' under the circumstances."  In

26

re Giant Interactive Grp., Inc. Sec. Litig., 279 F.R.D. 151,
163 (S.D.N.Y. 2011) (quoting Goldberger v. Integrated Res.,
Inc., 209 F.3d 43, 47 & 50 (2d Cir. 2000)) (internal citation
and quotation marks omitted).

    The reasonableness of a requested fee award turns on
the following factors: (A) the time and labor expended by
counsel; (B) the magnitude and complexities of the litigation;
(C) the risk of the litigation; (4) the quality of
representation; (5) the requested fee in relation to the
settlement; and (6) public policy considerations.  Goldberger,
209 F.3d at 50

    Lead Plaintiff's counsel ("Class Counsel") has
requested an award of attorneys' fees in an amount of 12% of the
Settlement Amount.  Given the proposed settlement amount of
$294.9 million, Class Counsel is effectively requesting a fee
award of $35,388,000.  As set forth below, the Goldberger
factors all weigh in favor of finding the requested fee award to
be reasonable.

        A.  Time and Labor Expended by Counsel

    Class Counsel has devoted more than 95,000 hours of
time in litigation this action, a herculean effort by any
measure.  See Memorandum of Law in Support of Co-Lead Counsel's

Motion for an Award of Attorneys' Fees and Reimbursement of Expenses and Lead Plaintiff's Request for Reimbursement of Expenses ("Att'y Fee Mem.") at 9.  Class Counsel spent this time engaged in labor-intensive activities such as: conductive an extensive background investigation, drafting a 218 page complaint, responding to and making various motions, engaging in discovery resulting in millions of produced documents, and consulting with multiple experts.  See id.  Moreover, the 95,000 hour time expenditure results in a "lodestar" amount of $38,552,873 at Class Counsel's regular billing rates, id., meaning that the lodestar cross-check results in a *negative* multiplier of less than 0.92—a strong indication of the reasonableness of the proposed fee.  See In re Blech Sec. Litig., No. 94 Civ. 7696 (RWS), 2002 WL 31720381, at *1 (S.D.N.Y. Dec. 4, 2002).  Based on the foregoing, this factor weighs in favor of fee approval.

### B.  Magnitude and Complexities of the Litigation

As set forth above, the collapse of Bear Stearns is paradigmatic of the collapse of the entire market and the resulting recession, and as such it presents issues of great magnitude and complexity.  See supra §§ III(B)(1) & IV(A). Accordingly, this factor weighs in favor of fee approval.

28

C.  Risk of Litigation

As set forth above, the risk of litigation was substantial in this case.  See supra §§ III(B)(4)-(6).  This factor weighs in favor of fee approval.

D.  Quality of Representation

The two firms comprising Class Counsel are both recognized as having substantial experience and expertise in prosecuting complex class actions.  Moreover, the quality of Class Counsel's work is evident from the fact that Plaintiffs survived motions to dismiss submitted by some of the nation's preeminent firms, who are representing the various Defendants. See Att'y Fee Mem. at 16-17 & n.12.

E.  Requested Fee in Relation to Settlement

The requested fee is only 12% of the Settlement Amount, well below the 17%-25% typically awarded in securities class actions and comparable cases in the Second Circuit.  See Att'y Fee Mem. at 6-7 (collecting cases).  Accordingly, this factor weighs in favor of fee approval.

F.  Public Policy Considerations

The requested fee is the product of negotiations between Class Counsel and Lead Plaintiff, a sophisticated

29

institutional investor who was involved in the litigation from its commencement.  <u>See</u> Att'y Fee Mem. at 7.  Lead Plaintiff carefully considered the fee amount in the context of the circumstances of the case, and concluded that it is fair and reasonable.  <u>See</u> <u>id.</u>  "When class counsel in a securities lawsuit have negotiated an arm's-length agreement with a sophisticated lead plaintiff possessing a large stake in the litigation, and when that lead plaintiff endorses the application following close supervision of the litigation, the court should give the terms of that agreement great weight."  <u>In re WorldCom</u>, 388 F. Supp. 2d at 353.  Accordingly, this factor favors fee approval.

*     *     *

Since the <u>Goldberger</u> factors weigh unanimously in favor of approval, and in light of the fact that not a single substantive objection was submitted regarding the proposed fee, the requested attorneys' fee of 12% of the Settlement Amount is reasonable.

30

## VII.  Approval of Requests for Reimbursement of Expenses

>    A.  Approval of Award Reimbursing Class Counsel's
>    Litigation Expenses

It is well-settled that "[a]ttorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were incidental and necessary to the representation of those clients." In re Indep. Energy Holdings PLC Sec. Litig., 302 F. Supp. 2d 180, 183 n.3 (S.D.N.Y. 2003) (quoting Miltland Raleigh-Durham v. Myers, 840 F. Supp. 2d 235, 239 (S.D.N.Y. 1993)). Class Counsel request reimbursement for litigation expenses in the amount of $2,040,351.57.  Although this is a sizable amount, Class Counsel have submitted declarations itemizing the incurred expenses, and all of the identified categories are of the type for which reimbursement is generally granted.[8]  In addition, there were no substantive objections submitted regarding the requested reimbursement.  Accordingly, the requested award is reasonable.

---

[8] Nearly half of Class Counsel's expenses come from the fees paid to the various experts who were consulted by Class Counsel.  See Att'y Fee Mem. at. 23.  Such a massive expenditure for expert fees is wholly unsurprising in this case, given the many core issues that turn upon expert opinions, see supra §§ III(B)(4)-(6) & (8)-(9).

31

B.   Approval of Award Reimbursing Lead Plaintiff's
Expenses

"Courts in this Circuit routinely award . . . costs
and expenses both to reimburse the named plaintiffs for expenses
incurred through their involvement with the action and lost
wages, as well as to provide an incentive for such plaintiffs to
remain involved in the litigation and to incur such expenses in
the first place." Hicks v. Stanley, No. 01 civ. 10071 (RJH),
2005 WL 2757792, at *10 (S.D.N.Y. Oct. 24, 2005).  Lead
Plaintiff has requested reimbursement of lost wages and expenses
in the amount of $31,053.14.  Given that Lead Plaintiff has
devoted more than 350 hours to the litigation, see Att'y Fee
Mem. at 25, that the amount requested is in line with lead
plaintiff awards in similar cases, see id. at 24 (collecting
cases), and that no substantive objections have been submitted
regarding this request, the requested award is reasonable.

## VIII.   Conclusion

For the foregoing reasons, the motion for final
certification of the class, final appointment of lead plaintiff
and class counsel, approval of the Settlement, and approval of
the Plan of Allocation is granted.  In addition, for the
foregoing reasons, the motion for attorneys' fees, for

32

reimbursement of Class Counsel for litigation expenses, and for
reimbursement of Lead Plaintiff for reasonable costs and
expenses is granted.

It is so ordered.


**New York, NY**
**November  8, 2012**

_____

ROBERT W. SWEET
U.S.D.J.