1  Mohammed K. Ghods, SBN 144616
2  mghods@ghodslaw.com
   William A. Stahr, SBN 167870
3  wstahr@ghodslaw.com
   Jeremy A. Rhyne, SBN 217378
4  jrhyne@ghodslaw.com
   GHODS LAW FIRM
5  2100 N. Broadway, Suite 300
   Santa Ana, CA  92706-2624
6  Telephone:     (714) 558-8580
   Facsimile:     (714) 558-8579
7
8  Attorneys for Plaintiff
   Vivine Wang
9

10

11              UNITED STATES DISTRICT COURT
                SOUTHERN DISTRICT OF NEW YORK
12

13
   IN RE THE BEAR STEARNS              Master File No:
14 COMPANIES, INC. SECURITIES,         08 M.D.L. No. 1963 (RWS)
   DERIVATIVE, AND ERISA
15 LITIGATION                          Case No.  11-CV-05643 RWS

16 This Document Relates to:
   Securities Action 11-cv-05643 (RWS)
17

18 VIVINE WANG, an individual,
                                       Case No.  11-CV-05643 RWS
19              Plaintiff,

20      vs.                            **PLAINTIFF VIVINE WANG'S**
                                       **OPPOSITION TO MOTION TO**
21 THE BEAR STEARNS COMPANIES,         **DISMISS**
   INC.,  et al.,
22
23              Defendants.

24

25       TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

26       PLEASE TAKE NOTICE that Plaintiff Vivine Wang ("Plaintiff" or "Mrs. Wang"),

27 hereby submits her Opposition to the Motion to Dismiss by Defendants Garrett Bland and Joe Y.

28 Zhou, as follows:

                              - 1 -

# TABLE OF CONTENTS

I. INTRODUCTION & SUMMARY OF ARGUMENT ........................................................ - 2 -

  A. Plaintiff Has Properly Stated Her Claims Against Defendant Bland.............................- 3 -

  B. Plaintiff Has Properly Stated Her Claims Against Defendant Zhou..............................- 4 -

II. FACTUAL BACKGROUND SUPPORTING THE COMPLAINT ...................................- 7 -

  A. Procedural Background ................................................................................................ - 11 -

III. ARGUMENT ................................................................................................................ - 11 -

  A. Plaintiff's Federal Securities Claims Satisfy the Pleading Requirements Set Forth Under

  Rule 9(b) and the PSRLA. ............................................................................................... - 11 -

    1. Governing Law............................................................................................... - 11 -

    2. Plaintiff's Complaint and the Supporting Documents Incorporated Therein Set Forth a

    Strong Inference of *Scienter*............................................................................................ - 12 -

      a) The Allegations Against Defendant Bland Are Pled With Particularity............- 13 -

      b) The Allegations Demonstrate That Defendant Bland Acted Recklessly and With

      Knowing Disregard ................................................................................................ - 14 -

      c) The Complaint Alleges Facts Sufficient to Support That Defendant Zhou Had the

      Requisite Motive and Opportunity to Commit Fraud Necessary to Establish *Scienter*.- 15 -

      d) As Plaintiff's Broker for Over a Decade, Defendant Zhou Owed a Duty to Disclose

      Material Information. ............................................................................................. - 16 -

    3. The Misrepresentations and Omissions Were Material. .......................................... - 18 -

    4. The Complaint Established Reasonable Reliance and That Plaintiff  Suffered

    Significant Losses As a Result of Defendant's Conduct. .................................................- 19 -

  B. Plaintiff's State Law Claims Are Properly Pled and not Subject to Dismissal..............- 20 -

    1. Defendants Piggyback Challenges to the State Law Claims For the Same Reasons as

    Their Other Challenges. ....................................................................................................- 21 -

    2. None of Ms. Wang's State Law Claims Are Time-Barred Because the Statute of

    Limitations Was Tolled During the Time She Was Putative Class Member in the Federal

    Class Action. .....................................................................................................................- 22 -

i

IV.    CONCLUSION ......................................................................................................- 25 -

ii

TABLE OF CONTENTS

1

**TABLE OF AUTHORITIES**

2

**Cases**

3   *American Pipe & Construction Co. v. Utah*, 414 U.S. 538 ............................................- 23 -, - 24 -

4   *Anchutz Corp. v. Merrill Lynch & Co., Inc.,* 690 F.3d 98 (2d Cir. 2012)..................................- 11 -

5   *Barnes v. Printron, Inc.,* No. 93–5085(JFK), 1998 WL 778378 (S.D.N.Y. Nov. 5, 1998).........- 6 -

6   *Basic Inc. v. Levinson,* 485 U.S. 224 (1988)................................................................- 18 -, - 19 -

7   *Burke v. Quick Lift, Inc.*, 464 F. Supp. 2d 150 (E.D.N.Y. 2006) ...........................................- 2 -

8   *California Restaurant Management Systems v. City of San Diego*, 195 Cal. App. 4th 1581 (2011)-

9   24 -

10  *Castellano v.Young & Rubicam, Inc.* 257 F.3d. 171 (2d Cir. 2001) ..........................................- 20 -

11  *Catholic Social Services, Inc. v. I.N.S.*, 232 F.3d 1139 (9th Cir. 2000)....................................- 23 -

12  *Chiarella v. United States*, 445 U.S. 222 (1980) .......................................................- 17 -

13  *Chill v. General Elec. Co.*, 101 F. 3d 263 (2d Cir. 1996) ..........................................- 15 -

14  *Clemens v. Daimler Chrysler Corp.*, 534 F.3d 1017 (9th Cir. 2008) .............................- 23 -, - 24 -

15  *Crown, Cork & Seal Co. Inc. v. Parker* (1983) 462 U.S. 345 ....................................- 23 -

16  *de Kwiatkowski v. Bear Stearns Co. Inc.* 306 F.3d 1293 (2002) .......................................- 6 -, - 18 -

17  *Duffy v. Cavalier*, 215 Cal. App. 3d 1517 (1989)...................................................- 17 -

18  *EBCI, Inc. v. Goldman, Sachs & Co,* 5 N.Y.3d 11 (2005) ........................................- 6 -,- 18 -

19  *Emergent Capital, Inc. v. Stonepath Group, Inc*., 343 F.3d 189 (2d Cir. 2003).....................- 20 -

20  *Ganino v. Citizens Utils. Co*, 228 F.3d 151 (2d Cir. 2000)................................- 13 -, - 15 -, - 19 -

21  *Hatfield v. Halifax PLC*, 564 F.3d 1177 (9th Cir. 2009). .....................................- 25 -

22  *Henneberry v. Sumitomo Corp. of America,* 415 F.Supp.2d 423 (S.D.N.Y. 2006)....................- 5 -

23  *In re Apple Computer Secs. Litig.,* 886 F.2d 1109, 1113 (9th Cir. 1989)........................- 3 -, - 4 -

24  *In re Donald Trump Casino Secs. Litig.,* 7 F.3d 357 (3d Cir. 1993) ..........................................- 4 -

25  *In re International Bus. Machs. Corp. Secs. Litig.,* 163 F.3d 102 (1998)...................................- 4 -

26  *In re Scholastic Corp. Sec. Litig*., 252 F.3d 63 (2d Cir. 2001) ..................................- 12 -

27  *In re Time Warner Sec. Litig.,* 9 F.3d 259, 266 (2d Cir. 1993)........................................- 3 -, - 4 -

28  *Jett v. Sunderman*, 840 F.2d 1487 (9th Cir. 1988)...............................................- 16 -, - 17 -, - 18 -

iii

*Keenan v. D.H. Blair & Co.,* 838 F.Supp. 82 (S.D.N.Y.1993) ...................................................- 6 -

*Kirchoff v. Am. Cas. Co.*, 779 F. Supp. 131 (D.S.D. 1991) .........................................................- 2 -

*Lawrence v. Cohn,* 325 F.3d 141 (2d Cir. 2003). ....................................................................- 12 -

*Lentell v. Merrill Lynch & Co., Inc.* 396 F.3d 161 (2d Cir. 2005)............................................- 23 -

*McEachin v. McGuinnis*, 357 F.3d 197 (2d Cir. 2004)...............................................................- 2 -

*Novak v. Kasaks*, 216 F.3d 300 (2d Cir. 2000) ..........................................- 12 -, - 14 -, - 15 -, - 16 -

*Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67 (2d Cir. 1998)...........................................- 8 -

*Paracor Finance, Inc. v. General Elec. Capital Corp.*, 96 F.3d 1151 (1996). .........................- 17 -

*Raab v. General Physics Corp.*, 4 F.3d 286 (4th Cir. 1993)........................................................- 4 -

*Rolf v. Blyth, Eastman, Dillon & Co., Inc.* 570 F.2d 38 (2d Cir. 1978)....................................- 15 -

*Rombach v. Chang*, 355 F.2d 164 (2d Cir. 2004) ..........................................................- 12 -, - 14 -

*Roth v. Jennings*, 489 F.3d 499 (2d Cir. 2007) ...............................................................- 8 -, - 11 -

*Salomon Bros., Inc. v. Huitong Int'l Trust & Inv. Corp.,* 1996 WL 675795 (S.D.N.Y. Nov. 21, 1996) ........................................................................................................................................- 5 -

*Salomon Bros., Inc. v. Huitong Int'l Trust & Inv. Corp.,* 1996 WL 675795 (S.D.N.Y. Nov. 21, 1996). ......................................................................................................................................- 18 -

*Scott v. Dime Sav. Bank of N.Y., FSB,* 886 F.Supp. 1073 (S.D.N.Y.1995) .....................- 6 -, - 16 -

*Shields v. Citytrust Bancorp., Inc.* 25 F.3d 1124 (2d Cir. 1994) .............................................- 16 -

*Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital Inc.*, 531 F. 3d 190 (2d Cir. 2008) .......................................................................................- 12 -, - 13 -,- 14 -, - 16 -, - 18 -

*Tellabs, Inc. v. Makor Issues & Rights, Ltd*, 551 U.S. 308 (2007) ...........................................- 12 -

*Twomey v. Mitchum, Jones & Templeton, Inc.*, 262 Cal. App. 2d 690 (1968) .........................- 17 -

*Wallace v. 600 Partners Co.,* 86 N.Y.2d 543, 548, 634 N.Y.S.2d 669, 658 N.E.2d 715 (1995) - 5 -

**Statutes**

15 U.S.C. § 78j(b) ....................................................................................................................- 12 -

15 U.S.C. § 78u–4(b)(2)...........................................................................................................- 12 -

**Regulations**

17 C.F.R. § 240.10b–5(b) (2008)..............................................................................................- 12 -

iv

## I.      INTRODUCTION & SUMMARY OF ARGUMENT

All of the Bear Stearns Defendants have answered Mrs. Wang's Complaint, except for two individual defendants who were the local Los Angeles tentacles of Bear Stearns' failed empire. Defendant Bland was a Senior Managing Director and Defendant Zhou was a seasoned stock broker who provided financial advice to Mrs. Wang and her family since approximately 1995. The Complaint provides proper and ample notice to these defendants, as it admittedly has to the non-moving defendants, of their actionable wrongdoings.

Misguidedly, Defendants' brief reads more like a closing trial brief arguing for ultimate findings of fact rather than a Rule 12(b) challenge to a pleading for lack of sufficient particularity. Defendants even purport to present evidence, albeit through improper and inadmissible means. Defendants' presentation proves that the challenged pleading is more than adequate to allow Defendants to properly defend themselves.  The ultimate factual issues cannot be decided now and will have to be decided at a proper evidentiary proceeding.

At this procedural juncture, "the facts as alleged in the complaint are assumed to be true and are construed in a light most favorable to plaintiffs." *Burke v. Quick Lift, Inc.*, 464 F. Supp. 2d 150, 153 (E.D.N.Y. 2006). The task of the court in ruling on a Rule 12(b)(6) motion is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered. *See Kirchoff v. Am. Cas. Co.*, 779 F. Supp. 131, 132 (D.S.D. 1991).  A motion to dismiss should be denied "'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004).

This Court is by now intimately familiar with the shameless concealments, misleading statements and other misconduct that led to the collapse of Bear Stearns.  The corruption at Bear Stearns was deep-rooted and pervasive.  Bear Stearns kept its investors, including Mrs. Wang who lost several millions of dollars, in the dark about the Company's risk and liquidity as well as other material facts including its highly risky mortgage-backed assets.  This Court has issued an extensive order in this case setting forth the dark history of Bear Stearns' misconduct and its collapse.  The Court's observations have been incorporated into Mrs. Wang's complaint.

1    Given the fact intensive nature of the issues in this case, the question is why have

2    Defendants Bland and Zhou moved for dismissal under 12(b)(6)?  Defendants are making an

3    unsavory effort to cut the connections with Los Angeles actors in this saga.  In their confusing

4    Motion, Defendants throw in everything but the kitchen sink claiming that Mrs. Wang's Section

5    10(b) claims are not adequately pled; that her California Securities law claims are time barred or

6    not pled with particularity; that her breach of fiduciary duty and common law fraud claims are

7    time-barred or not pled with particularity and finally that the conspiracy claim and California

8    B&P 17200 claims are also inadequately plead.  However, the crux of Defendants' argument is

9    that Bland only gave an opinion and Zhou had no duty to tell the truth at the point of the sale of

10    Bear Stearns' failing stock.  Defendants are wrong on both accounts.

11              **A.**       **Plaintiff Has Properly Stated Her Claims Against Defendant Bland.**

12    With respect to Defendant Bland, there is no denial that he made the statements to Mrs.

13    Wang's husband that induced purchase of Bear Stearns stock. Paragraph 25 of the Complaint

14    alleges with specificity that on March 11, 2008, Bear Stearns hosted a meeting at its office in

15    Century City, Los Angeles at which Bear Stearns' representatives made statements and

16    representations about the financial condition of the company.  Plaintiff's husband sat at a table

17    with Bear Stearns' Senior Managing Director Defendant Bland, who knew Plaintiff and her

18    husband were customers of Bear Stearns.  Defendant Bland told Plaintiff's husband, among other

19    things, that Bear Stearns was financially sound, that its stock value should be at least $85.00 per

20    share, and that now was a great time to invest in the stock.  Defendant Bland even expressly

21    advised Plaintiff's husband to buy as much of the company's stock as he could and stated that he

22    (Bland) would buy more if he could, but that he couldn't because of his executive position.

23    Defendants unabashedly claim that a mere 3 days before the entire house of cards collapsed,

24    Defendant Bland's misrepresentations were opinion of "corporate optimism"!

25    The authority cited by Defendants make it clear Defendants' position is without merit.

26    "Statements that are opinions or predictions are not *per se* inactionable under the securities laws."

27    *In re Time Warner Sec. Litig.,* 9 F.3d 259, 266 (2d Cir. 1993); *In re Apple Computer Secs. Litig.,*

28    886 F.2d 1109, 1113 (9th Cir. 1989). Statements regarding projections of future performance may

- 3 -

1    be actionable under Section 10(b) or Rule 10b-5 if they are worded as guarantees or are supported

2    by specific statements of fact, *see Raab v. General Physics Corp.,* 4 F.3d 286, 290 (4th Cir.

3    1993), or if the speaker does not genuinely or reasonably believe them, *see Time Warner,* 9 F.3d

4    at 266; *In re Donald Trump Casino Secs. Litig.,* 7 F.3d 357, 368 (3d Cir. 1993); *In re*

5    *International Bus. Machs. Corp. Secs. Litig.,* 163 F.3d 102, 107 (1998).

6        To make it worse, Defendants ask the Court to resolve the disputed evidentiary issue – to

7    wit: whether such statements were so-called "optimistic opinions" as opposed to outright factual

8    lies -- in an evidentiary vacuum on this Motion.  As the undeniable history has it, Bear Stearns

9    management at the time was regularly misleading the public by false statements without any

10   factual foundation for the truth.  There is no reason or evidence to support a finding that its Senior

11   Managing Director at a Bear Stearns sponsored event to attract investors was doing anything

12   different.  Even if he gave opinions as opposed to misleading facts, there is no *per se* immunity as

13   a matter of law.  "As noted above, an opinion may still be actionable if the speaker does not

14   genuinely and reasonably believe it or if it is without a basis in fact. *See Time Warner,* 9 F.3d at

15   266; *Donald Trump Casino,* 7 F.3d at 368; *Apple,* 886 F.2d at 1113.

16       At this juncture, there is no evidence the allegations of the complaint must be accepted as

17   true and there is no "evidence" at this point for the Court to make findings regarding veracity or

18   reasonableness of belief of Defendant Bland.  Furthermore, what the Court already has before by

19   way of undeniable fact is that the management of Bears Stearns was engaged in a concerted effort

20   to mislead the investors, the market and the country.  The effort to obtain dismissal of Defendant

21   Bland is misguided and should be denied.

22       **B.    Plaintiff Has Properly Stated Her Claims Against Defendant Zhou.**

23       The driver to get Defendant Zhou out of this case is that he allegedly had no duty to tell

24   the truth to Mrs. Wang about Bear Stearns' stock.  Defendants make a half-hearted argument that

25   Zhou had no fiduciary duty to speak based on the alleged 2008 customer agreement as opposed to

26   Zhou's long term relationship with Plaintiff as a trusted financial advisor.  Of course, evidence of

27   the agreement(s) is not properly before the Court at this stage. However, even if the Court were to

28   look at the agreement Defendants have presented, their claim of waiver of all fiduciary duties is

- 4 -

1   not supported by the language they purport to rely on.

2          The only part of the contract language that mentions the word "fiduciary" relates to "a

3   fiduciary as defined in Section 3(21)" of ERISA or "Section 4975 of the Internal Revenue Code

4   of 1986" with respect to "your Account(s) under this Agreement."  Fiduciaries under the above

5   Section 3(21) and Section 4975 are specifically defined creatures in connection with retirement

6   accounts. An ERISA Section 3(21) investment fiduciary is a paid professional who provides

7   investment recommendations to the plan sponsor/trustee.  Similarly, Section 4975 of the IRC

8   defines, in relevant parts, the term "plan" to include an IRA and defines the term "fiduciary" in

9   that context to include any person who exercises any discretionary authority or discretionary

10  control respecting management of such plan or exercises any authority or control respecting

11  management or disposition of its assets. Mrs. Wang's account is not alleged to have been an

12  ERISA or IRA type account.

13         The language of the agreement as written does not support Defendants' broad statements

14  to eviscerate all of their fiduciary duties.  "It is axiomatic that a contract is to be interpreted so as

15  to give effect to the intention of the parties as expressed in the unequivocal language employed."

16  *Wallace v. 600 Partners Co.,* 86 N.Y.2d 543, 548, 634 N.Y.S.2d 669, 658 N.E.2d 715 (1995).

17  Here, the disclaimers are specifically tailored to disavow a particular kind of fiduciary

18  relationship for retirement accounts and administrators.  This is not a clear, unambiguous and

19  unequivocal general disclaimer of any and all fiduciary duties in all contexts.

20         In any event,  the existence of a fiduciary relationship turns on a party reposing

21  confidence in another and reasonably relying on the other's superior expertise or knowledge.

22  *Henneberry v. Sumitomo Corp. of America,* 415 F.Supp.2d 423, 459 (S.D.N.Y. 2006); *Scott v.*

23  *Dime Sav. Bank of N.Y., FSB,* 886 F.Supp. 1073, 1078 (S.D.N.Y.1995) ("New York courts

24  typically focus on whether one person has reposed trust or confidence in another who thereby

25  gains a resulting superiority or influence over the first."). "Courts within this district have

26  recognized that th[e] question [of whether a fiduciary relationship exists] is essentially a factual

27  determination." *Salomon Bros., Inc. v. Huitong Int'l Trust & Inv. Corp.,* 1996 WL 675795, at *2

28  (S.D.N.Y. Nov. 21, 1996).

PLAINTIFF VIVINE WANG'S OPPOSITION TO MOTION TO DISMISS

1    With respect to Zhou, the Complaint at paragraph 18 alleges -- and Defendants do not

2    deny -- that sometime in the mid-90's, Defendant Zhou joined Bear Stearns as a broker, agent,

3    representative, and/or employee and began advising Plaintiff and her family about investments.

4    Defendant Zhou frequently made recommendations and gave specific advice to the Wang family

5    (and specifically Plaintiff's husband) concerning, among other things, investment strategies (*i.e.*,

6    purchase and sale of stocks).  Plaintiff and her husband frequently relied on Defendant Zhou's

7    financial advice.  These allegations are true and must be accepted as true at this juncture.

8    Here, Defendants conveniently ignore allegations of a deep and confidential relationship

9    between Zhou and Defendant Wang family going back more than 10 years before the subject

10   account agreement was signed a few days before the collapse of Bear Stearns when Bear Stearns

11   was already in deep trouble.  It is fundamental that fiduciary "liability is not dependent solely

12   upon an agreement or contractual relationship between the fiduciary and the beneficiary but

13   results from the relation".  *EBCI, Inc. v. Goldman, Sachs & Co.*, 5 N.Y.3d 11, 20 (2005).  Even

14   most minimally, as Bear Stearns knows first hand, Zhou owed a duty of honesty under any

15   scenario because a broker is obliged "to give honest and complete information when

16   recommending a purchase or sale."  *de Kwiatkowski v. Bear Stearns Co. Inc.* 306 F.3d 1293, 1302

17   (2002) ; *see also Keenan v. D.H. Blair & Co.,* 838 F.Supp. 82, 89 (S.D.N.Y.1993); *Barnes v.*

18   *Printron, Inc.,* No. 93–5085(JFK), 1998 WL 778378, at *9 (S.D.N.Y. Nov. 5, 1998); *EBCI, Inc.,*

19   *supra,* 5 N.Y.3d at 20-22.

20   Bottom line, Defendant Zhou, who was undeniably very close to the Wang family and

21   was trusted by them for his financial advice for a very long time, was duty bound to speak the

22   truth and nothing but the truth.  His concealments and failure to do so at the time of the sale are

23   actionable.  Again, this motion to dismiss is not an evidentiary hearing to answer all questions

24   and under the law, the examination of fiduciary relations is correctly a factual determination to be

25   decided upon evidence.  The effort to obtain dismissal of Defendant Zhou is also misguided and

26   should be denied.

27   In short, both Defendants' motions to dismiss are without merit and their summary

28   judgment like arguments should be denied.

PLAINTIFF VIVINE WANG'S OPPOSITION TO MOTION TO DISMISS

## II.     FACTUAL BACKGROUND SUPPORTING THE COMPLAINT

The Complaint alleges that since 1993, Mrs. Wang and other members of her family have had a broker-client relationship with stockbroker Bear Stearns and its various employees. (Complaint, at ¶ 22.)  Sometime in the mid-1990's, Defendant Zhou joined Bear Stearns as a licensed representative and stock-broker, working out of its Los Angeles office located in Century City.  (*Id.* at ¶ 23.)  Thereafter, Defendant Zhou began giving investment advice to Plaintiff and her family concerning investment strategies and providing recommendations regarding the purchase and sale of stocks.  (*Id.*)  Plaintiff frequently relied upon Defendant Zhou's financial advice.  (*Id.*)

During the first weeks of March 2008, Defendant Zhou contacted Mr. Wang on a frequent and regular basis. For example, between March 3 and March 14, 2008, Defendant Zhou spoke with Mr. Wang on at least six occasions regarding the Wangs' investments, including conversations that took place on March 3rd, March 4th, March 6th, March 10th, March 11th and March 14th, 2008.  (*Id.* at ¶¶25-30.)  During that 12-day period, based upon the advice, recommendations and actions of Defendants, Plaintiff acquired 150,000 total shares of  Bear Stearns stock and 50,000 shares in another entity, East West Bancorp Inc.  (*Id.* at ¶¶ 32, 38, 47.)

As Bear Stearns now is forced to admit, the vast majority of these trades executed by Defendant Zhou (as Plaintiff's broker) occurred during the "tumultuous days between March 6, 2008 and the near-collapse of Bear Stearns on March 14, 2008."  (Defendants' Memorandum of Law in Support of Motion to Dismiss at p. 1.)  Despite Bear Stearns' rapidly deteriorating financial condition, at no time during their many conversations and communications, did Defendant Zhou (or anyone at Bear Stearns for that matter) ever "warn, caution, or advise Plaintiff or her husband against buying any more BSC stock."  (Complaint ¶ 31.)  There was no mention of any tumult.  Quite the opposite.  Day after day, Defendant Zhou continued to try to sell more of the rotten apples.  Bear Stearns' Senior Managing Director, Defendant Bland recommended that the Wangs "buy as many BSC shares as they could" because BSC was a "financially sound" company whose "shares should be trading at least at $85.00 a share."  (*Id.* ¶ 30.)

1   What was never disclosed by Bear Stearns (but has since been discovered by the investing

2   public in the aftermath of Bear Stearns' virtual collapse) is that during the entire time that

3   Defendants Zhou and Bland were encouraging further investment in Bear Stearns by the Wangs,

4   Bear Stearns knew that is was on the brink of financial ruin. For example, on Thursday, March 6,

5   2008, the same date Defendant Zhou executed on a verbal trade for 10,000 BSC shares (*Id.* at

6   ¶27), unbeknownst to Plaintiff or her husband one of Bear Stearns European lenders (Rabobank

7   Group) advised the company that it would not renew a $500 million loan that was coming due

8   later that week indicating that it was unlikely to renew an additional $2 billion credit agreement

9   set to expire the following week.  (Consolidated Class Action Complaint for Federal Securities

10  Violations in 08 MDL 1963  ["Sec. CA Complaint"] ¶260 (Ex. A to Complaint) and Judge Robert

11  W. Sweet's 01/19/11 Opinion in 08 MDL 1963 ["Opinion"] at p. 67 (Ex. B to Complaint).)[1]

12  In a press release on Monday, March 10, 2008, two business days later, Bear Stearns

13  denied any rumors that the company was experiencing any liquidity problems stating: "[t]here is

14  absolutely no truth to the rumors of liquidity problems that circulated today in the market" and

15  suggesting that the company had some $17 billion in cash.  (Opinion at p. 68.)  That same day, in

16  a further attempt to squelch the liquidity rumors Defendant Greenberg (Bear Stearns' Executive

17  Committee Chairman) represented to the public that Bear Stearns had no liquidity problems

18  calling such an assertion "ridiculous, totally ridiculous."  (Sec. CA Complaint ¶¶ 263, 490;

19  Opinion at p. 68, p. 112.) Immediately before the public comments, however, Defendant

20  Greenberg had been informed that "[a]ll of [Bear Stearns'] institutions are calling us, and we're in

21  trouble." (Sec. CA Complaint ¶ 490; Opinion at p. 112.) That same day (March 10, 2008) after

22  contact with Defendant Zhou, he sold an additional 20,000 shares of BSC shares. (Complaint at

23  ¶28.)

24  Early in the morning the following day, (Tuesday, March 11, 2008), one of Bear Stearns

25  _____

26  [1]   Documents that are attached to the complaint or incorporated in it by reference are deemed part of the
    pleading and may be considered in ruling on a motion under Rule 12(b)(6).  *Roth v. Jennings*, 489 F.3d 499, 509 (2d

27  Cir. 2007) citing *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 71 (2d Cir. 1998), *cert. denied*, 525 U.S. 1103
    (1999).   The Sec. CA Complaint was attached as Ex. A to the Complaint and its allegations were expressly

28  incorporated therein.  (Complaint ¶1.)  The relevant pages of this Court's 01/19/11 Opinion in that matter were
    likewise attached as Ex. B to Complaint and incorporated by reference into the Complaint.  (*Id*. at ¶6.)

PLAINTIFF VIVINE WANG'S OPPOSITION TO MOTION TO DISMISS

1  lenders, ING Group NV ("ING") informed Bear Stearns that it was pulling about $500 million in
2  financing.  (Sec. CA Complaint ¶ 269; Opinion at p. 69.)  That same day, during a lunch meeting
3  hosted by Bear Stearns at its Century City offices, Plaintiff's husband sat at a table with Bear
4  Stearns Senior Managing Director Defendant Garrett Bland ("Defendant Bland"). (Complaint at
5  ¶30.)  At that lunch meeting, Defendant Bland, who knew that Plaintiff and her husband were
6  customers of Bear Stearns, touted the company's financial stability, recommending that the
7  Wangs increase the size of their investments in BSC shares.  (*Id.*)  Defendant Bland told Mr.
8  Wang (among other things) that Bear Stearns was "financially sound", that "its stock value should
9  be at least $85.00 per share" and that "now was a great time to invest in the stock." (*Id.*) In fact,
10  Defendant Bland even expressly advised Mr. Wang to "buy as much stock as he could" and that
11  stated "he (Bland) would buy more if he could, but that he couldn't because of his executive
12  position."  (*Id.*)

13        That same day (Tuesday, March 11, 2008) in reliance upon both Defendant Bland's
14  recommendations and the long-standing relationship with Defendant Zhou, an order for 20,000
15  additional shares of BSC was placed through Defendant Zhou.  (Complaint, at ¶¶ 28.)  By the end
16  of the day on Tuesday, March 11, 2008, however, the banks simply refused to issue any further
17  credit protection on the company's debts.  (Opinion at p. 69.)  This development (along with ING
18  pulling its financing) had a devastating effect on Bear Stearns liquidity.  (Sec. CA Complaint ¶¶
19  266-272; Opinion at p. 69).

20        The following day (Wednesday, March 12, 2008), Defendant Schwartz appeared on
21  CNBC to proclaim that Bear Stearns' liquidity position and balance sheet had not weakened at
22  all.  (Sec. CA Complaint ¶¶ 274-277; Opinion at pp. 69-70.)  Defendant Schwarz stated:

23        We finished the year, and we reported that we had $17 billion of cash sitting at
24        the bank's parent company as a liquidity cushion.  As the year has gone on, that
25        liquidity cushion has been virtually unchanged…we don't see any pressure on our
26        liquidity, let alone a liquidity crisis.

27  (*Id.*)

28        Defendant Schwartz made these statements despite the fact that Bear Stearns' liquidity

1   pool on March 12, 2008 was nearly $5 billion less that it was on Monday, March 10, 2008, and

2   despite the fact that some $13 billion of the company's cash was evaporating.  (*Id*.)  Defendant

3   Schwartz further publicly denied that Bear Stearns' risk had "scared away" any of its lenders even

4   though at the time he made these publicly-aired statements, ING had pulled $500 million in

5   financing.  (*Id*.)

6         Contrary to Defendant Schwartz' public statements, according to one report, on March 11,

7   2008 (the date of the lunch meeting), Bear Stearns liquidity pool stood at $15.8 billion "adjusted

8   for the customer protection."  (Sec. CA Complaint ¶ 273; Opinion at pp. 70-71.)  By March 13,

9   2008, the liquidity pool stood at $2 billion – a loss of more than $13 billion in less than two days.

10  (*Id*.)  Yet, on the following day, (Friday, March 14, 2008), Defendant Zhou sold a further

11  investment in BSC.  In reliance upon Defendant Bland's favorable recommendations and the

12  long-established relationship with Defendant Zhou and Bear Stearns, Defendant Zhou sold an

13  additional 200,000 shares of BSC.  (Complaint, at ¶ 31.)

14        Unbeknownst to Plaintiff or her husband, on March 14, 2008, in an extreme about-face,

15  Defendant Schwartz issued a press release announcing that Bear Stearns had "reached an

16  agreement with JP Morgan Chase & Co. (JPMC) to provide a secured loan facility back by the

17  Federal Reserve for an initial period of up to 28 days allowing Bear Stearns to access liquidity as

18  needed."  (*Id*. at ¶ 33.)  Both Plaintiff and her husband were unaware of the March 14th press

19  release at the time the last purchase.  (*Id*. at ¶ 34.) Two days later, on Sunday, March 16, 2008, JP

20  Morgan Chase & Co. announced that it was acquiring Bear Stearns for approximately $2.00 per

21  share causing the market price of BSC to immediately plummet and with it, Plaintiff's sizeable

22  investment in BSC stock.  (*Id*. at ¶ 35.)

23        Once the Wangs learned of the fraud, after having just paid millions of dollars for now

24  significantly devalued shares of BSC stock (worth $300,000 at JPMorgan's announced

25  acquisition price of $2.00 a share) the Wangs stopped payment on the scheduled wire transfer for

26  their final stock trades.  (*Id*. at ¶ 38.)  Eventually, over the Wangs' objections,  Bear Stearns

27  improperly and without Plaintiff's consent sold all of their stock holdings with Bear Stearns to

28  pay itself and began collection. This unauthorized liquidation of stock holdings created huge

- 10 -

1    losses for Plaintiff.  (*Id*.)

2            **A.      PROCEDURAL BACKGROUND**

3            Plaintiff has been a putative class member of the putative class of investors in the

4    Consolidated Class Action Complaint for Violations of the Federal Securities Law filed in this

5    United States District Court as 08 MDL 1963 that was filed on or about February 27, 2009 (Ex. A

6    to Complaint).  (Complaint, at ¶ 1.)  While that action was pending, Plaintiff filed the instant

7    complaint in the United States District Court (Central District of California) on or about March

8    29, 2011 (*Id*.)  In doing so, Plaintiff indicated that she intended to and elected to opt out of the

9    class action to pursue her individual claims.  (*Id*.).  Plaintiff's matter was transferred to New York

10   and coordinated with the 08 MDL 1963 Action.

11           All named defendants in Mrs. Wang's action have answered the Complaint, except the

12   Moving Defendants Bland and Zhou.

13   **III.    ARGUMENT**

14           **A.      PLAINTIFF'S FEDERAL SECURITIES CLAIMS SATISFY THE**

15                    **PLEADING REQUIREMENTS SET FORTH UNDER RULE 9(b) AND THE**

16                    **PSLRA.**

17                    **1.      Governing Law**

18           When deciding a motion to dismiss a complaint for failure to state a claim under Federal

19   Rules of Civil Procedure 9(b) and 12(b)(6), a court must construe the complaint liberally and

20   accept as true the factual allegations in the complaint and draw all reasonable inferences in

21   plaintiff's favor.  *See Roth v. Jennings*, 489 F.2d 499, 501 (2d Cir. 2007); *Anchutz Corp. v.*

22   *Merrill Lynch & Co., Inc.,* 690 F.3d 98, 107 (2d Cir. 2012).  Under the heightened pleading

23   requirements set forth in the Private Securities Litigation Reform Act ("PSLRA") and Federal

24   Rule of Civil Procedure 9(b) which requires averments of fraud to be "state[d] with particularity",

25   a plaintiff must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify

26   the speaker, (3) state when and where the statements were made, and (4) explain why the

27   statements were fraudulent."  *Rombach v. Chang*, 355 F.2d 164, 170 (2d Cir. 2004).  Rule 9(b),

28   however, "does not require the pleading of detailed evidentiary matter in securities litigation."  *In*

- 11 -

1  *re Scholastic Corp. Sec. Litig.*, 252 F.3d 63, 72 (2d Cir. 2001).

2        Plaintiff's principal securities fraud claims are brought pursuant to section 10(b) of the

3  Exchange Act, 15 U.S.C. § 78j(b).  This provision makes it unlawful to "use or employ, in

4  connection with the purchase or sale of any security…any manipulative or deceptive device or

5  contrivance in contravention of such rules and regulations as the Commission may proscribe." *Id.*

6  The SEC rule implementing the statute, Rule 10b–5, prohibits "mak[ing] any untrue statement of

7  a material fact or [omitting] to state a material fact necessary in order to make the statements

8  made, in the light of the circumstances under which they were made, not misleading."  17 C.F.R.

9  § 240.10b–5(b) (2008).  In order to succeed on a claim, a "plaintiff must establish that 'the

10  defendant, in connection with the purchase or sale of securities, made a materially false statement

11  or omitted a material fact, with *scienter*, and that the plaintiff's reliance on the defendant's action

12  caused injury to the plaintiff.' [Citation.]"  *Lawrence v. Cohn,* 325 F.3d 141, 147 (2d Cir. 2003).

13        **2.**      **Plaintiff's Complaint and the Supporting Documents Incorporated**

14        **Therein Set Forth a Strong Inference of *Scienter*.**

15        In order to plead *scienter* adequately under the PSLRA, a plaintiff must plead "with

16  particularity facts giving rise to a strong inference that the defendant acted with the required state

17  of mind." 15 U.S.C. § 78u–4(b)(2).  The requisite state of mind in a section 10(b) and Rule 10b-5

18  action is an intent "'to deceive, manipulate, or defraud.'" *Tellabs, Inc. v. Makor Issues & Rights,*

19  *Ltd*, 551 U.S. 308, 308 (2007).  To qualify as a "'strong inference,'" the inference of *scienter*

20  must be "more than merely plausible or reasonable—it must be cogent and at least as compelling

21  as any opposing inference of nonfraudulent intent." *Tellabs*, 551 U.S. at 324 (*quoting* 15 U.S.C.

22  § 78u–4(b)(2)).  In addition to intent, recklessness is a sufficiently culpable mental state for

23  securities fraud in this circuit. *Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital*

24  *Inc.*, 531 F. 3d 190, 194 (2d Cir. 2008).  Recklessness is defined as "'at the least . . . an extreme

25  departure from the standards of ordinary care . . . to the extent that the danger was either known

26  to the defendant or so obvious that the defendant must have been aware of it.'  [Citation.]" *Novak*

27  *v. Kasaks*, 216 F.3d 300, 308 (2d Cir. 2000).

28        The requisite *scienter* can be established by alleging facts to show either (1) that

PLAINTIFF VIVINE WANG'S OPPOSITION TO MOTION TO DISMISS

1    defendants had the motive and opportunity to commit fraud, or (2) strong circumstantial evidence

2    of conscious misbehavior or recklessness.  *Ganino v. Citizens Utils. Co*, 228 F.3d 151, 168–69

3    (2d Cir. 2000); *Novak*, 216 F.3d at 307.  Strong circumstancial evidence of *scienter* exists when,

4    such as in the instant case, the complaint sufficiently alleges any one of the following:  that the

5    defendants (1) "benefitted in a concrete and personal way from the purported fraud"; (2)

6    "engaged in deliberately illegal behavior"; (3) "knew facts or had access to information

7    suggesting that their public statements were not accurate"; *or* (4) "failed to check information

8    they had a duty to monitor."  *See Teamsters Local,* 531 F.3d at 194; *Novak,* 216 F.3d at 311..

9               a)        **The Allegations Against Defendant Bland Are Pled With**

10                        **Particularity.**

11        As a preliminary matter, there is no merit to Defendants' argument that Plaintiff has not

12   asserted the fraud allegations against Defendant Bland with the sufficient particularity as is

13   required under either Rule 9(b) or the PSLRA.  Here, Plaintiff has met all of the particularity

14   requirements.  The Complaint alleges those statements by Defendant Bland that Plaintiff contends

15   were fraudulent, namely:

16        • that Bear Stearns was "financially sound";

17        • that Bear Stearns "stock value should be at least $85.00 per share";

18        • that "now was a great time to invest in the stock";

19        • that Mr. Wang should "to buy as much BSC stock as he could"; and that

20        • that he (Bland) "would buy more [Bear Stearns stock] if he could, but that he (Bland)

21          couldn't because of his executive position."

22   Complaint, at ¶ 30.

23        The Complaint likewise alleges "who" made statements (Defendant Bland); "where"  and

24   "when" the statements were made (at a lunch meeting hosted by Bear Stearns at their Century

25   City offices on Tuesday, March 11, 2008); and "why" the statements were fraudulent, namely,

26   because at the time those representations were made, Bear Stearns "knew that Bear Stearns was in

27   precarious financial shape," "concealed the company's true financial condition or issued false and

28   misleading statements" in order to "maintain the artificially-inflated  price of BSC common

- 13 -

1  stock" to "induce investors such as the Wangs to purchase BSC stock." *Id.* at ¶ 45.  The

2  allegations against Defendant Bland have therefore been pled with sufficient particularity. *See*

3  *e.g. Rombach v. Chang*, 355 F.2d 164, 170 (2d Cir. 2004).

4          **b)**        **The Allegations Demonstrate That Defendant Bland Acted**

5                   **Recklessly and With Knowing Disregard.**

6       The allegations also set forth an adequate basis to establish that Defendant Bland's

7  statements were made recklessly which is a sufficiently culpable mental state for securities fraud

8  in this circuit. *Teamsters Local,* 531 F.3d at 194.  As a Senior Managing Director, the facts

9  alleged show that Defendant Bland "knew facts or had access to information suggesting that

10  [Bear Stearns'] public statements were not accurate"  during the "tumultuous days between

11  March 6, 2008 and near-collapse of Bear Stearns on March 14, 2008"  (D's Memo, p. 1).  This

12  gives rise to a "strong inference" of *scienter*.  *See Teamsters Local,* 531 F.3d at 194; *Novak,* 216

13  F.3d at 311.

14       For example, although Defendant Bland represented to Mrs. Wang's husband at the

15  March 11, 2008 lunch meeting that Bear Stearns was "financially sound," that "now was a great

16  time to invest in the stock" and that they should "buy as much BSC stock as he could"

17  (Complaint at ¶ 30), nothing could be further from the truth.  The day before (Monday, March 10,

18  2008), the company "issued a press release denying market liquidity rumors and expressly stating

19  that 'Bear Stearns' balance sheet, liquidity and capital remain strong,'" (Complaint at ¶ 28), and

20  Defendant Greenberg (Bear Stearns' Chairman of the Executive Committee) told CNBC during

21  an interview that assertions that Bear Stearns had liquidity problems were "ridiculous, totally

22  ridiculous."  (Complaint at ¶ 30; Sec. CA Complaint ¶¶ 263, 490; Opinion at p. 68, p. 112.)

23       The press release and CNBC interview was nothing more than a smoke screen. What Bear

24  Stearns did not disclose was that immediately before that CNBC interview, Defendant Greenberg

25  had been informed that "[a]ll of [Bear Stearns'] institutions are calling us, and we're in trouble."

26  (Sec. CA Complaint ¶ 490; Opinion at p. 112.) Nor did the company reveal that five days earlier

27  (on Thursday March 6, 2008) one of Bear Stearns' European lenders (Rabobank Group) advised

28  Bear Stearns that it would not renew a $500 million loan by the end of that week indicating that it

1    was unlikely to renew an additional $2 billion credit agreement set to expire the following week,

2    thus reducing Bear Stearns liquidity by $2.5 billion.  (Opinion at p. 67).

3        Nor did Defendant Bland have any reason to believe that his representation that the "stock

4    value should be at least $85.00 per share" was true.  As one of Bear Stearns' executives,

5    Defendant Bland was in a position where the "extent of the danger was either known to him or so

6    obvious that the he must have been aware of it." *Rolf v. Blyth, Eastman, Dillon & Co., Inc.* 570

7    F.2d 38, 37 (2d Cir. 1978);  *Novak,* 216 F.3d at 308.  As of the date of the lunch meeting, another

8    Bear Stearns lender (ING) advised that they had pulled or were pulling another $500,000,000 in

9    financing further negatively impacting Bear Stearns' liquidity. (Sec. CA Complaint ¶ 269;

10   Opinion at p. 69.)

11       Moreover, as Senior Managing Director and licensed representative, Defendant Bland

12   knew or should have known that the ensuing liquidity crisis of the company in which he held an

13   executive position negatively impacted the value of BSC shares.  Indeed, BSC's share price

14   dropped to $2.00 within days.  Defendant Bland's "egregious refusal to see the obvious, or to

15   investigate the doubtful, may . . . give rise to an inference of . . . recklessness." *Chill v. General*

16   *Elec. Co.*, 101 F. 3d 263, 269 (2d Cir. 1996).  Hence, because the Complaint (and its exhibits

17   thereto), demonstrate a strong inference of recklessness, that is sufficient to establish *scienter*, as

18   required.

19                 **c)        The Complaint Alleges Facts Sufficient to Support That**

20                           **Defendant Zhou Had the Requisite Motive and Opportunity to**

21                           **Commit Fraud Necessary to Establish *Scienter*.**

22       A "strong inference" of *scienter* may be shown by facts demonstrating that defendants had

23   the "motive and opportunity to commit fraud." *Ganino*, 228 F.3d at 168–69; *Novak,* 216 F.3d at

24   307.  "Motive" means "concrete benefits that could be realized by one or more of the false

25   statements and wrongful non-disclosures alleged" whereas "opportunity would entail the means

26   and likely prospect of achieving concrete benefits by the means alleged." *Novak*, at 307 (*citing*

27   *Shields v. Citytrust Bancorp., Inc*. 25 F.3d 1124, 1130 (2d Cir. 1994)).  Plaintiff has demonstrated

28   both here.

PLAINTIFF VIVINE WANG'S OPPOSITION TO MOTION TO DISMISS

1   As the Complaint alleges, over the course of twelve days between March 3 and March 14,

2   2008, Defendant Zhou had no less than six contacts with Mr. Wang which resulted in the Wangs

3   purchasing 150,000 shares of BSC at millions of dollars.  (Complaint, at ¶¶ 27-31, 47).  As their

4   broker, Defendant Zhou stood to directly benefit from these transactions.  Each time Defendant

5   Zhou sold further investments, he had a clear  "opportunity" to achieve concrete and direct

6   potential benefits for himself, namely, additional monies in the form of added commissions.

7   *Novak*, at 307.

8   Ignoring the mounting evidence of Bear Stearns' rapidly deteriorating financial condition

9   while continuing to solicit and encourage further investments in BSC stock worked to Defendant

10   Zhou's direct financial advantage.  Had Defendant Zhou advised Mrs. Wang of the true facts---

11   that Bear Stearns was heading toward a financial collapse---Defendant Zhou would have been

12   deprived of additional commissions.[2]  Since Defendant Zhou had both motive and opportunity to

13   commit fraud, a strong inference of *scienter* has been shown here.  *See Teamsters Local,* 531 F.3d

14   at 194; *Novak,* 216 F.3d at 311

15   **d)      As Plaintiff's Broker for Over a Decade, Defendant Zhou Owed**

16   **a Duty to Disclose Material Information.**

17   Defendants assert that Defendant Zhou owed no duty to disclose information

18   regarding Bear Stearns' rapidly deteriorating financial condition. (Memorandum of Law, at p.

19   10.) As explained in the Summary of Argument, and without burdening the Court with undue

20   repetition, Defendants are wrong and in any event, this issue is not susceptible of resolution at

21   this juncture on a motion to dismiss.

22   Moreover, Rule 10b-5 is violated by nondisclosure when there is a duty to disclose.  *Jett v.*

23   *Sunderman*, 840 F.2d 1487, 1492 (9th Cir. 1988).  Existence of fiduciary or agency relationship,

24   prior dealings, or circumstances such that one party has placed trust and confidence in the other

25   give rise to the duty to disclose.  *Id*. at 1493 (*citing Chiarella v. United States*, 445 U.S. 222, 232

---

26   [2]      This is especially true given the magnitude of the Wangs investments.  For example, on March 6th the

27   Wangs purchased 10,000 BSC shares for $719,567; on March 10th the Wangs purchased an additional 20,000 BSC shares for $1,280,658; on March 11th, the Wangs purchased an additional 20,000 BSC shares for $1,190,454; on

28   March 14, the Wangs purchased 100,000 shares in two orders for $1,671,985 and $1,700,0080. (Complaint, at ¶¶ 27-31.)

PLAINTIFF VIVINE WANG'S OPPOSITION TO MOTION TO DISMISS

1    (1980)).

2         A number of factors are used to determine whether a party has a duty to disclose: (1) the

3    relationship of the parties, (2) their relative access to information, (3) the benefit that the

4    defendant derives from the relationship, (4) the defendant's awareness that the plaintiff was

5    relying upon the relationship in making his or her investment decision, and (5) the defendant's

6    activity in initiating the transaction.  *Jett*, 840 F. 2d at 1493; *see also Paracor Finance, Inc. v.*

7    *General Elec. Capital Corp.*, 96 F.3d 1151 (1996).

8         Applying those factors here, it becomes clear that as their long-time broker and financial

9    adviser for many years, Defendant Zhou was acting in a fiduciary capacity toward Plaintiff and

10   her husband, and as such, owed them a duty to disclose material information related to their

11   investment decisions in BSC stock.  *See Twomey v. Mitchum, Jones & Templeton, Inc.*, 262 Cal.

12   App. 2d 690 (1968) ("the duties of the broker, being fiduciary in character, must be exercised

13   with the utmost good faith and integrity"); *Duffy v. Cavalier*, 215 Cal. App. 3d 1517, 1533 (1989)

14   ("the relationship between a stockbroker and his or her customer is fiduciary in nature").

15        *First*, Defendant Zhou's long-standing relationship with Plaintiff and her family spanned

16   more than a decade when Plaintiff and her family first became customers of Bear Stearns.

17   (Complaint, ¶ 22.)  Sometime in the mid-90's when Defendant Zhou joined Bear Stearns, he

18   "began advising Plaintiff and her family about investments", including "frequently ma[king]

19   recommendations" and giving "specific advice to the Wang family" about "investment strategies

20   (*i.e.* the purchase and sale of stocks)."  (*Id.*, at ¶23.) The multiple trades executed by Defendant

21   Zhou in the early March 2008 timeframe, were therefore not "impersonal market transaction"

22   between strangers (*Jett,* at 1493) but transactions that occurred within a trusted broker-client

23   relationship that had developed over a decade.

24        *Second*, as Plaintiff's stock-broker, Defendant Zhou had a duty to keep his clients apprised

25   of events that might impact their investment decisions.  *Duffy, supra*, at 1540 (stockbroker had a

26   "fiduciary duty to warn [the principal] that such transactions were inappropriate").  As an

27   employee of Bear Stearns, moreover, that duty heightened because the majority of trades

28   executed were investments by Plaintiff and her husband *in BSC's own shares*.  Thus, as a Bear

- 17 -

1  Stearns insider, not only did Defendant Zhou have much "greater relative access" to the

2  information pertaining to the value of BSC shares than did Plaintiff or her husband (*Jett*, 840 F.

3  2d at 1493), but since Defendant Zhou "failed to check information [he] had a duty to monitor" as

4  the Wangs trusted financial advisor, that provides further evidence of *scienter*.  *See Teamsters*

5  *Local,* 531 F.3d at 194; *Novak,* 216 F.3d at 311.

6       *Third*, as noted in Section A.2.c, *infra*, there is no doubt that Defendant Zhou was deriving

7  a significant personal benefit in the form of commissions.  This is additional evidence supporting

8  a strong inference of *scienter*.  *Jett*, 840 F. 2d at 1493.

9       *Finally,* not only was Defendant Zhou was actively involved in initiating the transactions

10  and was also well aware that the Wang family was relying upon their long-standing relationship

11  with him in making their investment decisions.  *Jett*, 840 F. 2d at 1493.  As the Complaint

12  alleges, during early March 2008 time frame, Defendant Zhou "talked with Plaintiff's husband

13  regarding further investment" who was his long-time client on at least six occasions: on March

14  3rd, March 4th, March 6th, March 10th, March 11th, and March 14th.  (*Id*., at ¶¶ 23-31.)  Defendant

15  Zhou was aware of an taking advantage of the long-standing relationship and his investment

16  advice would be trusted and relied upon. His silence at the most critical time (the point of sale)

17  was extremely harmful.

18       As discussed above, fiduciary liability results from the nature of the relationship. *EBCI,*

19  *Inc. v. Goldman, Sachs & Co*, 5 N.Y.3d 11, 170 (2005).  And the duty of honesty and complete

20  disclosure is unshakable.  *de Kwiatkowski v. Bear Stearns Co. Inc.* 306 F.3d 1293, 1302 (2002).

21  In the end, these are issues that require factual determination at the appropriate juncture and are

22  not matters to decide on a Motion to dismiss.  *Salomon Bros., Inc. v. Huitong Int'l Trust & Inv.*

23  *Corp.,* 1996 WL 675795, at *2 (S.D.N.Y. Nov. 21, 1996).

24          **3.**     **The Misrepresentations and Omissions Were Material.**

25       Nor is there any merit to Defendants' contention that the misstatements or omissions were

26  not "material." Materiality is a fact-specific inquiry.  *Basic Inc. v. Levinson,* 485 U.S. 224, 240

27  (1988). That determination depends on both all relevant circumstances and whether "'there is a

28  substantial likelihood that a reasonable shareholder would consider it important in deciding how

- 18 -

1   to [act].'" *Basic Inc.,* 485 U.S. at 231–32; *Ganino,* 228 F.3d at 161 (2d Cir. 2000).

2       That is, in order for the misstatement to be material, Plaintiff must show "'a substantial

3   likelihood that the disclosure of the omitted fact would have been viewed by the reasonable

4   investor as having significantly altered the "total mix" of information made available.'" *Id.*

5   Because materiality is a mixed question of law and fact, in the context of a Fed.R.Civ.P. 12(b)(6)

6   motion, "a complaint may not properly be dismissed…on the ground that the alleged

7   misstatements or omissions are not material unless they are so obviously unimportant to a

8   reasonable investor that reasonable minds could not differ on the question of their importance."

9   *Ganino*, 228 F.3d at 162.

10       Had Plaintiff or her husband known about the rapid evaporation of Bear Stearns' liquidity

11   and access to capital, "there is a substantial likelihood that a reasonable shareholder" like the

12   Wangs "would consider it important in deciding how to [act]." *Basic Inc.,* 485 U.S. at 231–32.  In

13   other words, had Defendants Bland or Zhou advised that Bear Stearns had lost half-a-billion

14   dollars in ING financing, had lost or were likely losing another $2.5 billion in Rabobank

15   financing, that its banks were refusing to finance its debts, and that its liquidity position had

16   dropped $13 billion in the course of a few days (despite statements from its top executives to the

17   contrary in press releases and publicly-televised interview, there is a strong likelihood that the

18   "disclosure of the omitted fact would have been viewed by the reasonable investor as having

19   significantly altered the 'total mix' of information made available." *Id.*  Hence, the

20   misrepresentations and omissions were material.

21            **4.**      **The Complaint Established Reasonable Reliance and That Plaintiff**

22                  **Suffered Significant Losses As a Result of Defendant's Conduct.**

23       Defendants' argument that Mrs. Wang could not have reasonably relied on any statements

24   or omissions by Defendants Bland or Zhou is equally unavailing.  In assessing the reasonableness

25   of plaintiff's reliance, courts consider the "entire context of the transaction, including factors such

26   as the complexity and magnitude, the sophistication of the parties, and the content of any

27   agreements between them."  *Emergent Capital, Inc. v. Stonepath Group, Inc*., 343 F.3d 189 (2d

28   Cir. 2003).

1   Based upon those factors, the Complaint also sufficiently alleges that Plaintiff reasonably

2   relied on the misrepresentations and omissions of Defendants Bland and Zhou.  As noted above,

3   there was a long-standing broker-client relationship with Bear Stearns dating back to 1993 and

4   with Defendant Zhou providing investment advice upon which Plaintiff had relied since the mid-

5   90's.  (Complaint, at ¶¶ 22-23.)  Also, the Complaint alleges, although "unbeknownst to Plaintiff

6   and her husband" Bear Stearns issued a press release on Friday, March 14, 2008 announcing that

7   Bear Stearns had reached  a deal with JPMC (Complaint, at ¶33).  "Both Plaintiff and her

8   husband were unaware of the [] March 14th press release at the time their last order was placed."

9   (*Id.,* at ¶34.) Thus, Plaintiff cannot be held to have knowledge of a press release that neither she

10  nor her husband knew existed at the time the last order was place.  Hence, the Complaint

11  sufficiently alleges reasonable reliance.

12  Plaintiff's Complaint has sufficiently alleged that her injuries were caused by Defendants'

13  misrepresentations and actionable omissions.  The allegations are sufficient to show that  "but for

14  the claimed misrepresentations or omissions, the plaintiff would not have entered into the

15  detrimental securities transaction."  *Lentell v. Merrill Lynch & Co., Inc.* 396 F.3d 161, 172 (2d

16  Cir. 2005).  And that there is also "the causal link between the alleged misconduct and the

17  economic harm ultimately suffered by the plaintiff."  *Id.*  (*citing Emergent Capital*, *supra*, at

18  197).  In light of the facts of this case, Defendants cannot argue in good faith that the damages

19  suffered by plaintiff were not "a reasonably foreseeable consequence of any misrepresentations or

20  material omission."  *Emergent Capital*, at 197 (*citing Castellano v.Young & Rubicam, Inc*. 257

21  F.3d. 171, 186 (2d Cir. 2001)).  The Complaint sufficiently alleges these elements.  Furthermore,

22  the advanced posture of this securities litigation further highlights that Defendants' misconduct

23  did cause damage and loss to the investors like Ms. Wang.

24  **B.      PLAINTIFF'S STATE LAW CLAIMS ARE PROPERLY PLED AND NOT**

25  **SUBJECT TO DISMISSAL.**

26  Plaintiff asserts additional causes of action under state law:  Breach of Fiduciary Duty;

27  Fraud/Deceit and Conspiracy to Defraud; Violations of California securities laws as set forth in

28  California Corporations Code §§ 25400 and 25401; and Violation of California Corporations

- 20 -

Code § 17200. Defendants provide a cursory challenge to these causes of action in essentially the same way as they have challenged Plaintiff's §10b(5) claims. These are merely "piggy-back" challenges based on the arguments made against Plaintiff's §10b(5) claims. These similar challenges fail for the same reasons as stated above.

### 1. Defendants Piggyback Challenges to the State Law Claims For the Same Reasons as Their Other Challenges.

By way of a quick review, Defendants "piggy-back" challenges are as follows:

1. Defendants Bland and Zhou assert that the Complaint fails to adequately allege violations of California Corporations Code §§ 25400 and 25401. Defendants say nothing new to support this challenge other than to refer the Court to "As described in detail in Section 1, *supra*…" of their moving Memorandum (Motion p. 20). There is no reason for Plaintiff to waste the Court's time and resources to repeat everything again. Accordingly, Plaintiff respectfully requests the Court deny Defendants' challenge to §§ 25400 and 25401 violations for the same reasons as stated in Plaintiff's Opposition above.

2. Defendants Bland and Zhou assert that the Complaint fails to plead fraud with particularity. Again, Defendants say nothing new to support this challenge other than to refer the Court to "As described in detail in Section 1.B., supra… " (Motion P. 21.). Again, there is no reason for Plaintiff to repeat everything. Accordingly, Plaintiff respectfully requests the Court deny Defendant's challenge to the fraud claim under state law for the same reasons as stated in Plaintiff's Opposition above.

3. Defendants Bland and Zhou next assert that the Complaint fails to plead a fiduciary duty to warn. Plaintiff has dealt with this argument at length above. In sum, the longstanding relationship of Bear Stearns with the Wangs family and the factual nature of the inquiry regarding their relations giving rise to fiduciary duties require denial of Defendants' challenge.

4. Defendants challenge the conspiracy theory of vicarious liability based their assertions that the substantive claims for fraud etc. fails. (Motion p. 24). Again, there is no reason for Plaintiff to waste time to repeat everything again. To the extent Defendants claim that the

- 21 -

Complaint does not say who conspired with who, they are wrong.  For example Paragraph 40 states:

> "Additionally, the above-mentioned statements and recommendations made directly to Plaintiff and/or her husband were made for the purpose of inducing investors such as the Wang's to purchase BCS stock.  At all relevant times Defendants Zhou and Bland were acting as financial advisors to Plaintiff and her husband and each was an employee or authorized agent for Bear Stearns.  At all relevant times Defendants Zhou, Bland, and others engaged in the deceitful course of conduct alleged herein with the consent, authorization and ratification of Bear Stearns.  Defendants engaged in an unlawful conspiracy to support BSC's falling stock price through the use of deceitful means, such as issuing false and misleading press releases and making numerous other misleading statements to and concealments from investors in the State of California and elsewhere concerning the financial health of Bear Stearns and the value of BSC stock.  Among other things, Defendants made false and fraudulent representations to Plaintiff and other investors while concealing the true financial condition and desperate plans of Bear Stearns.  Several Bear Stearns executives knew that Bear Stearns was in precarious financial shape, but concealed this information from Plaintiff and the public at all relevant times."

Defendants' feigned ignorance on this point is specious, and this argument too should be rejected

### 2. None of Ms. Wang's State Law Claims Are Time-Barred Because the Statute of Limitations Was Tolled During the Time She Was Putative Class Member in the Federal Class Action.

Defendants contend Plaintiff's state law securities fraud claims brought under California Corporations Code sections 25400 and 25401 and other state law claims are time-barred because, although Plaintiff waited more than two years (or three years, in the case of breach of fiduciary duty) from the date she discovered the facts constituting the violation to bring this action, her

1   state law securities fraud claims allegedly were not tolled during the pendency of the Securities

2   Action.  Specifically, Defendants contend that because Plaintiff filed the instant suit in California

3   (which was subsequently transferred to this Court) and because the Securities Action was pending

4   in New York, the so-called *American Pipe* doctrine based on *American Pipe & Construction Co.*

5   *v. Utah*, 414 U.S. 538, is inapplicable because California allegedly has refused to adopt this

6   doctrine where the class action was filed in a foreign jurisdiction.

7       In *American Pipe*, 414 U.S. at 554, the Supreme Court held the class tolling doctrine

8   provides that the commencement of a class action stops the running of the statute of limitation as

9   to all claims that might be asserted by all members of the class until class certification is denied.

10  In *Crown, Cork & Seal Co. Inc. v. Parker* (1983) 462 U.S. 345, 350, the Court extended the

11  *American Pipe* doctrine to all asserted members of the class, not just intervenors.  In so doing, the

12  Court determined this tolling rule was consistent with the purpose of statutes of limitation to put

13  the defendant on notice of the grounds for possible liability and protect him or her from having to

14  litigate stale claims.  *American Pipe*, 414 U.S. at pp. 554–555.

15      As Defendants point out, the Ninth Circuit has refused to extend *American Pipe* and

16  *Crown* to allow an earlier class action brought in a foreign jurisdiction to toll the statute of

17  limitations for a subsequently filed class action filed in California.  *See e.g*., *Clemens v. Daimler*

18  *Chrysler Corp.*, 534 F.3d 1017 (9th Cir. 2008).  This rule makes sense when plaintiffs are

19  "attempting to relitigate an earlier denial of class certification, or to correct a procedural

20  deficiency in an earlier would-be class."  *Catholic Social Services, Inc. v. I.N.S.*, 232 F.3d 1139,

21  1149 (9th Cir. 2000).

22      Here, however, Plaintiff is *not* seeking to relitigate the earlier denial of class certification

23  or attempting to correct procedural deficiencies of the previous class.  Plaintiff was a putative

24  class member until she properly and timely opted out.  Thus, the instant case is governed by

25  *American Pipe* and *Crown*, not *Clemens* and similar Ninth Circuit authority on which Defendants

26  rely.

27      In addition, the rationale for refusing to apply the *American Pipe* doctrine discussed in

28  *Clemens* is inapplicable here.  *Clemens* noted that federal courts have refused to apply the

- 23 -

doctrine absent guidance from a state's highest court because the doctrine would promote forum shopping by out of state plaintiffs and would tie a state's limitations period(s) to resolution of claims in other jurisdictions.  *Clemens*, 534 F.3d at 1025.  Those concerns do not exist here.

Indeed, Defendants do not contend, nor can they, that Plaintiff's filing of the instant action in California (which was subsequently transferred to this Court by Defendants) was the result of forum shopping.  In addition, applying the *American Pipe* doctrine to Plaintiff's state law claims would not tie California's statute of limitations to the resolution of Plaintiff's claims in a foreign jurisdiction, inasmuch as Plaintiff opted out of the putative class in the Securities Action *before* those claims were resolved.

Moreover, the rationale for barring Plaintiff's state law claims as a result of the statute of limitations is inapplicable here: "statutory limitation periods are 'designed to promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared.  The theory is that even if one has a just claim, it is unjust not to put the adversary on notice to defend within the period of limitation and that the right to be free of stale claims in time comes to prevail over the right to prosecute them.'"  *American Pipe*, 414 U.S. at 555.  Here, Plaintiff neither "slept on [her] rights," *ibid*, nor asserts claims that come as a surprise to Defendants, because as she opted out of the Securities Action and promptly filed the instant action to assert her own claims, including those grounded in state law.

Furthermore, this Court should *separately* reject Defendants' contention that Plaintiff's state law claims are time barred based on California's equitable tolling principles.  Defendants concede that California law governs the statute of limitations issue.  Equitable tolling under California law, is a "'judicially created, nonstatutory doctrine' that is 'designed to prevent unjust and technical forfeitures of the right to a trial on the merits when the purpose of the statute of limitations—timely notice to the defendant of the plaintiff's claims—has been satisfied.' [Citation.]"  *California Restaurant Management Systems v. City of San Diego*, 195 Cal. App. 4th 1581, 1593 (2011).  "Three factors are taken into consideration when deciding whether to apply equitable tolling under California law: (1) timely notice to the defendant in the filing of the first

- 24 -

1   claim; (2) lack of prejudice to the defendant in gathering evidence to defend against the second

2   claim; and (3) good faith and reasonable conduct by the plaintiff in filing the second claim."

3   *Hatfield v. Halifax PLC*, 564 F.3d 1177, 1185 (9th Cir. 2009).

4        In *Hatfield*, a case cited by Defendants, the Ninth Circuit held a plaintiff's individual

5   claims against defendants were equitably tolled by the timely filing of her nearly identical class

6   action against the same defendants filed earlier in New Jersey state court. *Hatfield*, 564 F.3d at

7   pp. 1184–1185.  The court noted California law permits equitable tolling and recognized

8   "California courts have permitted a plaintiff to take advantage of tolling based on the filing of a

9   prior class action [,]" even where the plaintiff was only a putative class member in the earlier

10  action. *Id.* at p. 1185.

11       Applying the equitable tolling principles here, Defendants clearly had notice of the

12  unlawful conduct at issue here as a result of the Securities Action.  Moreover, as noted,

13  Defendants do not contend they suffered any prejudice in gathering evidence or identifying

14  witnesses, nor can they, in light of the fact the claims asserted by Plaintiff here are based in large

15  measure on the same wrongful conduct that was at issue in the Securities Action.  Finally,

16  Plaintiff showed good faith and reasonable conduct in first opting out of the Securities Action and

17  then promptly filing the instant action, which included her state law claims.  Because Defendants

18  have not been prejudiced by her filing of the instant action, this Court should apply California's

19  equitable tolling doctrine and conclude Plaintiff's state law claims are not time barred.  The ends

20  of justice require this dispute to go forward on merit in its entirety.

21  **IV.    CONCLUSION**

22       For the foregoing reasons, Plaintiff requests that the Motion to Dismiss be denied.

23

24  DATED: October 4, 2013                                  GHODS LAW FIRM

25

26                                          By:  /s/ MOHAMMED K. GHODS_____
                                                MOHAMMED K. GHODS
27                                              mghods@ghodslaw.com
                                                WILLIAM STAHR
28                                              wstahr@ghodslaw.com

- 25 -

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

JEREMY A. RHYNE
jrhyne@ghodslaw.com
GHODS LAW FIRM
2100 N. Broadway #300
Santa Ana, CA 92706
Tel: (714) 558-8580
Fax: (714) 558-8579
Attorneys for Plaintiff
Vivine Wang

PLAINTIFF VIVINE WANG'S OPPOSITION TO MOTION TO DISMISS