UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------X

IN RE THE BEAR STEARNS COMPANIES, INC.
SECURITIES, DERIVATIVE, AND ERISA          OPINION & ORDER
LITIGATION,                                MDL No. 08-1963

-----------------------------------------X


A P P E A R A N C E S:

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12/12/13

<u>Attorneys for Movant Cancan limited</u>

MAYER BROWN LLP
1675 Broadway
New York, NY 10019
By:  Jonathan C. Medow, Esq.
     Brian J. Massengill, Esq.


Attorneys for Respondent Lead Plaintiff
State of Michigan Retirement Systems and
<u>Class Counsel for the Settlement Class</u>

LABATON SUCHAROW LLP
140 Broadway
New York, NY 10005
By:  Thomas A. Dubbs, Esq.
     James W. Johnson, Esq.
     Nicole M. Zeiss, Esq.

BERMAN DEVALERIO
One California St., Suite 900
San Francisco, CA 9411
By:  Joseph J. Tabacco, Jr., Esq.
     Patrick T. Egan, Esq.

**Sweet, D.J.**


Absent Class Member Cancan Limited ("Cancan") has moved for (i) intervention in this instant action for the purpose of seeking to participate in the previously approved settlement pursuant to Rule 24 of the Federal Rules of Civil Procedure and (ii) modification of the Court's Order dated September 20, 2013 ("Approval Order") pursuant to Rule 60(b) of the Federal Rules of Civil Procedure and the Court's equitable powers. Lead Plaintiff The State of Michigan Retirement Systems ("Lead Plaintiff") opposes the instant motion pursuant to Fed. R. Civ. P. 23(e). For the reasons set forth below, Cancan's motions are granted.


I.   **Prior Proceedings**


The facts and procedures underlying this case is discussed in this Court's November 9, 2012 opinion, In re Bear Stearns Co., Inc. Secs., Deriv., and ERISA Litig., 909 F. Supp. 2d 259 (S.D.N.Y. 2012). Accordingly, only facts relevant to this motion will be provided below.


By order dated August 18, 2008, the MDL Panel assigned to this Court a number of actions filed in the United States

2

District Courts for the Southern and Eastern Districts of New York arising from the collapse of investment bank Bear Stearns in March 2008. On January 6, 2009, an Order was issued consolidating all of these actions. The Order appointed lead counsel and lead plaintiffs for each of the three species of actions comprising the consolidated set: (1) those asserting securities claims, (2) those asserting derivative claims and (3) those asserting ERISA claims.

On February 27, 2009, Lead Plaintiff for the securities actions, The State of Michigan Retirement Systems, filed a consolidated class action complaint ("Complaint") alleging, *inter alia,* that Defendants[1] had violated federal securities law in that they (i) defrauded investors by overstating the value of Bear Stearns' assets and understating the risks entailed in those assets; and (ii) misled investors concerning the company's liquidity problems.

In May 2012, settlement discussions that had previously stalled in November 2009 were revived with the assistance of a mediator, and by June 2012, proposed settlements had been reached with both the Bear Stearns Defendants and

---

[1] The Bear Stearns Defendants are: (i) The Bear Stearns Companies; and (ii) James E. Cayne, Alan D. Schwartz, Warren J. Spector, Alan C. Greenberg, Samuel L. Molinaro, Jr., Michael Alix, and Jeffrey M. Farber.

Deloitte ("the Settlement"). The Settlement called for the Bear Stearns Defendants to pay $275 million and for Deloitte to pay $19.9 million, for a total settlement amount of $294.9 million ("Settlement Amount"). The Court granted preliminary approval to the Settlement via twin preliminary approval orders issued June 13, 2012 (the "Preliminary Approval Orders"). The Court also preliminarily certified the Settlement Class pursuant to Fed. R. Civ. P. 23(a) and (23)(b)(3). On November 9, 2012, this Court approved the motion for final certification of the class, found the proposed settlement as procedurally and substantively fair and approved the proposed plan of allocation ("Plan of Allocation"). In re Bear Stearns Co., Inc. Secs., Deriv., and ERISA Litig., 909 F. Supp. 2d 259, 265-71 (S.D.N.Y. 2012).

Cancan filed the instant motion on October 23, 2013. In its motion, Cancan requests for (i) intervention from this Court in this action for the limited purpose of seeking to participate in the previously approved Settlement; and (ii) modification of the provisions in the Approval Order which approved administrated determinations, directed payment of net settlement funds and preclude Cancan from receiving payment in the forthcoming second distribution of proceeds.

Lead Plaintiffs have opposed the motion, contending

that the Court barred claims submitted after June 15, 2013, and that the significant size of Cancan's potentially eligible claim, impact on claims the Court has already approved and considerations governing a showing of excusable neglect support denial of Cancan's motion.

Oral arguments were held, and the motion was marked fully submitted on December 4, 2013.

## II.  **Facts Alleged by Movant**

Cancan is a foreign financial investment company, incorporated in the British Virgin Islands and managed out of Geneva, Switzerland. (Broens Decl. ¶¶ 1-3). Between December 21, 2007 and March 14, 2008, Cancan made three purchases of Bear Stearns common stock, acquiring 3,992,499 shares at prices ranging from $51.09 per share to $89.46 per share. (Id. ¶ 4). It sold those shares in three transactions between March 19, 2008 and March 25, 2008 at prices ranging from $6.31 per share to $12.12 per share. (Id. ¶ 5). Cancan's total out-of-pocket loss equals approximately $231 million. (Id. ¶ 6 & Ex. A). Cancan is a member of the certified Settlement Class. See In re Bear Stearns, 909 F. Supp. 2d at 263 n.2 (Settlement Class includes "those who, during the period from December 14, 2006 through

5

March 14, 2008 (the 'Class Period'), purchased or otherwise acquired the common stock . . . of . . . Bear Stearns . . . and were damaged thereby").

Cancan's shares were registered in the "street name" of Cede & Co. as nominee of Brown Brothers Harriman ("Brown Brothers"), the custodial bank of Cancan's custodian, Lombard Odier Darier Hentsche & Cie ("Lombard Odier"). (Broens Decl. ¶ 7).

On June 12, 2012, the Court preliminarily approved the Settlement of this class action. (See Dkts. 288-89). The Court approved the form and content of the negotiated form of Notice, which advised, among other things, that "[t]o qualify for a payment," a class member "must send in a completed Proof of Claim," and that "[a]ll Proofs of Claim need to be submitted by October 25, 2012." (Dkt. 302-2, Ex. A, Notice, at 6). The Court further approved the retention of Garden City Group, Inc. ("GCG") as Claims Administrator, and ordered the distribution of the Notice to members of the Settlement Class. (Dkts. 288-89, Preliminary Approval Orders ¶¶ 7-9). The Court included a specific directive to "nominee purchasers such as brokerage firms and other persons and entities who purchased or otherwise acquired the publicly traded securities of Bear Stearns during

the Class Period as record owners but not as beneficial owners":
"[W]ithin seven (7) calendar days of their receipt of the
Notice," such record owners were "directed" to provide the
Administrator with "the names and last known addresses of the
beneficial owners" or "request additional copies of the Notice
and Proof of Claim, and within seven (7) calendar days of
receipt of such copies send them by first-class mail directly to
the beneficial owners." (Id. ¶ 9).

The Court initially set an October 2, 2012 Proof of
Claim submission deadline. In the Corrected Order Approving
Administrative Determinations and Directing Payment of Net
Settlement Funds, dated September 20, 2013 (the "Distribution
Order"), the Court approved a final cut-off date of June 15,
2013 (the "Bar Date") after which no other claims would be
accepted.

According to GCG's records, copies of the Notice were
mailed to both Brown Brothers and Lombard Odier, but "neither
entity sent back names/addresses of potential class members or
requested bulk notices to forward." (Medow Decl. ¶ 6 & Ex. B).
As a result, Cancan never received a copy of the Notice. (Broens
Decl. ¶¶ 8-10). Cancan alleges that Mr. Peter Broens, the
individual based in Geneva responsible for monitoring matters

relating to Cancan's past investment in Bear Stearns, likewise never saw the publication notice that appeared on July 9, 2012. (Id. ¶ 11; see Dkt. 302-2, Affidavit of Jose Fraga ¶ 8 (notice published on July 9, 2012)). Mr. Broens was away from his office that day in a remote location with little connectivity. (Broens Decl. ¶ 11). Mr. Broens did not learn that a settlement had been signed and approved (or that a claim deadline had been established) until September 25, 2013. (Id. ¶¶ 12-13). On that day a client informed him that another Bear Stearns shareholder had just asked if he (the client) had received his check from the settlement. (Id. ¶ 13).

Upon learning of the Settlement, Mr. Broens investigated the issue and the terms of the Plan of Allocation. (Id. ¶ 14). Mr. Broens collected Cancan's trading detail, filled out a Proof of Claim form and determined that Cancan had suffered a Recognized Loss (term used in the Plan of Allocation) exceeding $140.9 million. (Id. ¶ 15 & Ex. B). Cancan then submitted a completed Claim Form to the Claims Administrator within two days, on September 27, 2013. (Id., ¶ 16 & Ex. C). Counsel simultaneously advised class counsel of these developments. (Medow Decl. ¶ 4 & Ex. A).

a. **Status of the Settlement Distribution**

8

The Plan of Allocation approved by the Court calls for the distribution of the "Net Settlement Funds" to the class. The Net Settlement Funds equal the "Settlement Funds, which combined total $294.9 million, minus all taxes, costs, fees and expenses." (Dkt. 302-2, Ex. A, Notice, at 11). To date, the Court has approved payments to class counsel and GCG of approximately $36.5 million, leaving roughly $258.4 in Net Settlement Funds, before consideration of any investment income and any incremental expenses of administration, including whatever additional fees counsel and GCG may incur. (See Dkts. 334-35 and 390).

At least three separate distributions of the Net Settlement Funds are planned. The first distribution, now complete, paid out 90% of the Net Settlement Funds to "15,695 currently known Authorized Claimants." (Dkt. 379, Zuena Decl. ¶¶ 48(a)(1) and (5)). Each such claimant received his, her or its pro rata share of the distribution, calculated "by comparing the Claimant's Recognized Loss to the total Recognized Losses of all Authorized Claimants." (Id. ¶ 48(a)(1)). Claimants whose pro rata share entitled them to less than $10 did "not receive any payment from the Net Settlement Funds." (Dkt. 379, Zuena Decl. ¶ 48(a)(2); see Dkt. 302-2, Ex. A, Notice, at 11 ("No

distributions to Authorized Claimants who would receive less than $10.00 will be made, given the administrative expenses of processing and mailing such checks.")). After eliminating these claimants, those entitled to receive less than $100 were paid in full, but "will get no additional funds in subsequent distributions." (Dkt. 379, Zuena Decl., ¶ 48(a)(4)).

The first distribution was made on September 20, 2013, the day the Court entered the Approval Order and a few days before Mr. Broens' client was asked if he had received his check. (Medow Decl. ¶ 3).

The remaining 10% of the Net Settlement Funds was held back for a second, or "Reserve Distribution to address Claims-in-Process, Disputed Claims and any contingencies." (Dkt. 379, Zuena Decl. ¶ 48(a)(5)). The Reserve Distribution is the distribution of the 10% reserve fund created to compensate the "Claims-in-Process" that were not paid in the Distribution Order previously approved by the Court. There are "1,140 Claims-in-Process and 22 Disputed Claims." (Id., ¶ 10). The parties intend to distribute the "same pro rata share as a percentage of each claimant's Recognized Loss as awarded to Authorized Claimants" in the first distribution. (Id. ¶ 48(a)(6)). Mr. Jason Zuena, a Senior Director of Operations at GCG, did not provide a specific

10

estimate or range of the Recognized Losses that might be associated with the claims to be paid in the second round, but he assured the Court that "GCG has carefully and conservatively estimated the reserve amount and is confident that 10% of the Net Settlement Funds will be sufficient to cover payments to claimants with Claims-in-Process or Disputed Claims that are ultimately deemed eligible for payment." (Id., ¶ 11). Class counsel agreed that the proposed 10% holdback should be "more than sufficient" for this purpose. (Dkt. 380, Plaintiff's Memorandum, at 11).

A third distribution is planned to deal with funds that "often remain after a distribution because of uncashed checks or tax refunds." (Dkt. 379, Zuena Decl. ¶ 11; see id. ¶ 48(a)(7) & n.5 (checks may also be returned as undeliverable)). Such leftover funds will be distributed to certain Authorized Claimants identified in the previous rounds "in an equitable and economic fashion." (Id. ¶ 48(a)(9)). Those eligible for payment will be claimants who (a) actually cashed their checks in the prior rounds, and (b) were paid at least $100 (and, thus, were not paid in full). (Id.).

Through June 15, 2013, GCG accepted 15,695 Proofs of Claim representing total Recognized Losses of $3,488,306,082.92,

11

which can be broken down into Recognized Losses of $3,337,302,445.62 from 15,341 timely Proofs of Claim and Recognized Losses of $151,003,637.30 from 354 late but otherwise eligible Proofs of Claim postmarked on or before June 15, 2013 (approximately 4.3% of total Recognized Losses). (Zuena Decl. ¶¶ 39, 41.).

On September 27, 2013, Cancan submitted a Proof of Claim to Co-Lead Counsel. Cancan may have a Recognized Loss of approximately $141 million. (Cirami Decl. ¶ 9.). If its claim were timely and valid, Cancan could have expected to receive a payment in excess of $9 million. (Id. ¶9).

### b.   Treatment of Late-Filed Claims

Included among the Authorized Claimants eligible for payment in the first distribution were 354 claimants whose Proofs of Claim "were postmarked after the Court-established October 25, 2012 Proof of Claim submission deadline." (Id. ¶ 41). This is because, as of July 11, 2013, "[p]ursuant to Co-Lead Counsels' instructions, GCG has not rejected any Proof of Claim solely based on its late submission." (Id.).

These "late but otherwise eligible Proofs of Claim"

12

accounted for approximately 2.2% of the 15,695 claims scheduled for payment in the first round, but the Recognized Losses associated with them (and, therefore, the amounts distributed with respect to them) were disproportionately large. In combination, the Recognized Losses on the late-filed claims exceeded $151 million, (id., ¶ 9), 4.3% of the total, (id., ¶ 41), with Recognized Losses on individual "late but otherwise eligible Proofs of Claim" ranging up to $46.6 million. (Dkt. 379-3, Ex. B-2, Schedule of Late But Otherwise Eligible Claimants).

GCG had no objections. "GCG believes there will be no material prejudice to the Settlement Class in allowing the persons and entities that submitted these late claims to participate in the Distribution in that the amount that Authorized Claimants will receive will not be materially reduced from what he or she would have received if the late claimants were excluded." (Dkt. 379, Zuena Decl. ¶ 41). Class counsel told the Court the same thing. (Dkt. 380, Plaintiff's Memorandum, at 7 ("the payment of these late claims will not materially dilute the recoveries of timely Authorized Claimants")). Counsel argued that "it would be unfair to deny payment of an otherwise eligible claim received while claims were still being processed because it was submitted after the Court-approved claims filing

13

deadline." (Id.). No distinction was apparently drawn between late claimants who had a "good reason" for being late and those who did not.

GCG nevertheless recommended that a new deadline of June 15, 2013 be established and that "[a]ll Proofs of Claim received after June 15, 2013" be "rejected as untimely" and not "accepted for any reason." (Id. ¶ 48(b)). Class counsel agreed (Dkt. 380, Plaintiff's Memorandum, at 13), and the Court so ordered. (Dkt. 390, Approval Order ¶ 5).

## III. **Discussion**

### a.   **Cancan's Motion to Intervene is Granted**

Cancan May Intervene as of Right

Rule 24(a)(2) provides that "[o]n timely motion, the court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest."

14

> Intervention as of right under Rule 24(a)(2) is granted when all four of the following conditions are met: (1) the motion is timely; (2) the applicant asserts an interest relating to the property or transaction that is the subject of the action; (3) the applicant is so situated that without intervention, disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; and (4) the applicant's interest is not adequately represented by the other parties.

MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n, Inc., 471 F.3d 377, 389 (2d Cir. 2006). Cancan has satisfied these elements under Rule 24(a)(2).

First, whether Cancan's motion is timely is determined by "(1) how long the applicant had notice of the interest before it made the motion to intervene; (2) prejudice to existing parties resulting from any delay; (3) prejudice to the applicant if the motion is denied; and (4) any unusual circumstances militating for or against a finding of timeliness." U.S. Polo Assn., Inc. v. PRL USA Holdings, Inc., 09 CIV 9476, 2013 WL 837565, at *7 (S.D.N.Y. Mar. 6, 2013) (granting intervention and quoting United States v. Pitney Bowes, Inc., 25 F.3d 66, 70 (2d Cir. 1994)). Cancan filed its motion within days of learning that it could not reach agreement with class counsel (and within weeks of learning of the settlement) and Brown Brothers' and

15

Lombard Odier's collective failure to transmit the Notice constitutes "unusual circumstances militating for . . . a finding of timeliness."

Moreover, the prejudice to existing parties is negligible if Cancan is allowed to intervene at this time. Defendants will not suffer as their exposure is both capped and fixed. Defendants have been released from liability and cannot be asked to fund additional consideration. Blank v. Jacobs, 03-CV-2111 (JS) (WDW), 2013 WL 1310503, at *3 (E.D.N.Y. Mar. 27, 2013).

The overwhelming bulk of the class has been paid already in the first distribution, and there is ample money left over to cover the claims of the remaining class members even if Cancan is included in the second round of payments. Certain members of the class may recover incrementally less money if Cancan's claim is allowed. However, the ultimate dilution the remaining members of the class would suffer would be no more than 4% overall, or a reduction of four cents per dollar. In this circumstance, the class members are not prejudiced since they are obligated to share a fixed recovery with other equally entitled claimants and timely-filed claimants have no justifiable expectation of any particular payout. See Dahingo v.

16

Royal Caribbean Cruises, Ltd., 312 F. Supp. 2d 440, 446
(S.D.N.Y. 2004) (allowing late-filed claims to participate in a
settlement does not prejudice those who filed timely because
"the plaintiffs who had filed timely claims had no justifiable
expectation in any particular pay-out") (citing In re "Agent
Orange" Prod. Liab. Litig., 689 F. Supp. 1250, 1263 (E.D.N.Y.
1988)); accord, In re Orthopedic Bone Screw Prods. Liab. Litig.,
246 F.3d 315, 324 (3d Cir. 2001) ("It cannot be maintained that
timely registrants are more deserving of remedy, for purposes of
equity, than tardy registrants with similar claims, presuming
the failure to register on time was indeed blameless. By
excluding . . . late registrants from the class, the timely
registrants would receive what is essentially a "windfall,"
comprised of some portion of the recovery that would be owed to
the otherwise deserving late registrants . . . . the loss of a
windfall is not prejudicial."); In re Elec. Carbon Products
Antitrust Litig., 622 F. Supp. 2d 144, 154 (D.N.J. 2007)
("courts have generally said that the mere reduction of money
available to timely registrants is not considered prejudice for
purposes of this inquiry. All legitimate members of the class
are normally presumed equally entitled to share in recovery")
(internal citation omitted); CME Grp. Inc. v. Chicago Bd.
Options Exch., Inc., CIV.A. 2369-VCN, 2009 WL 1856693, at *3
(Del. Ch. June 25, 2009) ("Even though other Group A Member

17

distributions will be diminished somewhat . . . , the additional proceeds from the settlement pool they would receive if late filers were excluded is simply a windfall.").

Indeed, the potential dilution resulting from acceptance of Cancan's claim would be less than what both GCG and class counsel told the Court was acceptable when recommending that over 350 late-filed claims be paid in the first round. Acceptance of the late- filed claims in the initial round increased the total Recognized Losses sharing in the recovery by roughly 4.5%, from $3.337 billion to $3.488 billion. (Dkt. 379, Zuena Decl. ¶ 9). Allowing Cancan to participate now would cause only a 3.9% rise. Thus, the Court finds that Cancan's motion for intervention is timely.

Second, Cancan seeks money it lost from the sale of Bear Stearns shares and as a member of the Settlement Class. Cancan thus "asserts an interest relating to the property or transaction that is the subject of the action." Fed. R. Civ. P. 24(b)(2).

Third, as a member of the certified Settlement Class, Cancan has an "interest relating to the property or transaction that is the subject of the action." If the Court were to decline

to intervene, Cancan's interest would be extinguished for no compensation, which would eliminate Cancan's ability to protect its interest. See In re Cmty. Bank of N. Virginia, 418 F.3d 277, 314 (3d Cir. 2005) ("In the class action context, the second and third prongs of the Rule 24(a)(2) inquiry are satisfied by the very nature of Rule 23 representative litigation.").

Finally, Cancan lacks adequate representation among the parties to the action. Defendants have no interest in the instant motion, and the other members of the class would likely prefer to exclude Cancan since that would increase its payout. Cancan does not have anyone in the action who could or would adequately represent its interests.

Given the above, the Court will permit Cancan to intervene pursuant to Fed. R. Civ. P. 24(a)(2). See Fed. R. Civ. P. 24, Adv. Committee Notes ("a member of a class should have the right to intervene in a class action if he can show the inadequacy of the representation of his interest by the representative parties before the court").

Cancan May Permissively Intervene

Alternatively, Cancan contends that the Court should

grant Cancan permissive intervention under Rule 24(b)(1)(B).
Under Fed. R. Civ. P. 24(b)(1)(B), "[o]n timely motion, the
court may permit anyone to intervene who . . . has a claim or
defense that shares with the main action a common question of
law or fact." Rule 24(b)(3) further provides that "[i]n
exercising its discretion, the court must consider whether the
intervention will unduly delay or prejudice the adjudication of
the original parties' rights."

As discussed above, Cancan's motion is "timely" under
Rule 24(a) and, thus, 24(b)(1)(B). See In re Initial Pub.
Offering Sec. Litig., 499 F. Supp. 2d 415, 418 (S.D.N.Y. 2007)
(timeliness under Rules 24(a) and 24(b)(1)(B) are judged by the
same factors). And as also discussed above, there will be no
prejudice to the original parties. Furthermore, the first
distribution has been made; the second is fast approaching; and
the incremental time necessary to process Cancan's claim, which
covers only three purchases and three offsetting sales of common
stock, is de minimis. As such, granting Cancan permissive
intervention would not cause undue delay, and the Court grants
Cancan's motion for permissive intervention under Fed. R. Civ.
P. 24(b)(1)(B).


**b.    Cancan's Motion to Modify the**

**Approval Order Is Granted**

Cancan has also moved to modify the Approval Order pursuant to Fed. R. Civ. P. 60(b) or the Court's equitable powers. Rule 60(b) allows relief to a party from a "final judgment, order, or proceeding" for "mistake, inadvertence, surprise, or excusable neglect." Fed. R. Civ. P. 60(b)(1). "In deciding a Rule 60(b) motion, a court must balance the policy in favor of hearing a litigant's claims on the merits against the policy in favor of finality." Kotlicky v. U.S. Fidelity & Guar. Co., 817 F.2d 6, 9 (2d Cir. 1987). Such decisions are squarely within the discretion of the court. Id. When assessing claims of "excusable neglect," the Court must look at the following factors: "(1) the danger of prejudice to the [non-movant], (2) the length of the delay and its potential impact on judicial proceedings, (3) the reason for the delay, including whether it was within the reasonable control of the movant, and (4) whether the movant acted in good faith." Silivanch v. Celebrity Cruises, Inc., 333 F.3d 355, 366 (2d Cir. 2003) (quoting Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. 380, 395, 113 S. Ct. 1489, 123 L. Ed. 2d 74 (1993)).

As previously noted, the prejudice in granting Cancan's motion to other claimants would be negligible. While

Cancan filed its claim and the instant motion a year after the
October 25, 2012 filing deadline, Cancan filed its Claims Form
three months after the June 15, 2013 Bar Date. Further, the
second distribution has yet to occur, and modification of the
Approval Order would not significantly impact any judicial
proceedings. Cancan also submitted its Claims Form to the Claims
Administrator within two days, and the instant motion within a
month, of Mr. Broens discovery of the settlement. Cancan thus
acted in good faith in its attempt for inclusion in the
Settlement.

However, the Court must look at the reason for the
delay, including whether it was within the reasonable control of
the movant. Pioneer Inv. Servs. Co., 333 F.3d at 366. In
notifying class members of the Settlement, individual notice of
the Settlement were mailed to more than 230,000 potential Class
Members and nominees (such as brokers and custodians of
beneficial owners), (Zuena Declaration ¶5), and a summary notice
published in Investor's Business Daily and disseminated on the
internet. All brokers and nominee holders were instructed by the
Court in the Preliminary Approval Orders to either directly mail
the Notice and claim form to their clients or to provide their
clients' names and address to the Claims Administrator. (Dkt.
288 ¶ 9; 289 ¶ 9.) GCG did not exclude Cancan from its mailings;

22

notice was mailed to entities connected with Cancan. (See Cirami Decl. ¶4). Cancan's custodians received timely notice of the Settlement no later than June 27, 2012. (Cirami Decl. ¶¶ 3-4). Those custodians never alerted the Claims Administrator of Cancan's identity, nor filed a claim for Cancan, and, as explained by Cancan, did not directly notify it as ordered by the Court.

While it is arguable that Cancan should have learned of the settlement sooner via the public notices, Cancan's failure to find news on the Settlement constitutes neglect at worst. Excusable neglect "is not limited strictly to omissions caused by circumstances beyond the control of the movant." Pioneer Inv. Servs. Co., 507 U.S. at 392. "[F]or purposes of Rule 60(b), 'excusable neglect' is understood to encompass situations in which the failure to comply with a filing deadline is attributable to negligence." Id. at 394. "[E]xclud[ing] every instance of an inadvertent or negligent omission would ignore the most natural meaning of the word 'neglect.'" Id. at 394-95. "The word [neglect] therefore encompasses both simple, faultless omissions to act and, more commonly, omissions caused by carelessness." Id. at 388.

> While "[t]here is no question that in the distribution
> of a large class action settlement fund, 'a cutoff
> date is essential and at some point the matter must be
> terminated,'" application of this principle must not
> be so rigid as to preclude recovery by a deserving
> claimant.

In re Orthopedic Bone, 246 F.3d at 329 (citations omitted). The

Court does not believe that a rigid cutoff date is essential. As

such, Cancan's motion to modify is granted.


**IV.  Conclusions**


        Based on the reasoning given above, Cancan's (i)

motion to intervene is granted; and (ii) motion to modify the

approval order is granted.



        It is so ordered.


**New York, NY**
**December // , 2013**


ROBERT W. SWEET
U.S.D.J.