USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 7-10-14

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------X

IN RE BEAR STEARNS COMPANIES, INC. SECURITIES, DERIVATIVE, AND ERISA LITIGATION

08 MDL 1963

This Document Relates To:

Securities Action, 08 Civ. 2793

----------------------------------------X

A P P E A R A N C E S:

Attorneys for Lead Plaintiff
State of Michigan Retirement Systems and
Class Counsel for the Settlement Class

LABATON SUCHAROW LLP
140 Broadway
New York, NY 10005
By: Thomas A. Dubbs, Esq.
James W. Johnson, Esq.
Nicole M. Zeiss, Esq.

BERMAN DEVALERIO
One California St., Suite 900
San Francisco, CA 9411
By: Joseph J. Tabacco, Jr., Esq.

One Liberty Square
Boston, MA 02109
By: Patrick T. Egan, Esq.

**Sweet, D.J.**

Lead Plaintiff The State of Michigan Retirement Systems ("Lead Plaintiff") has moved for a distribution order approving administrative determinations and directing distribution of reserved settlement funds. Based on the conclusions set forth below, the motion is granted.

## I. Prior Proceedings

The facts and procedures underlying this case is discussed in this Court's November 9, 2012 Opinion and Order, *In re Bear Stearns Co., Inc. Secs., Deriv., and ERISA Litig.*, 909 F. Supp. 2d 259 (S.D.N.Y. 2012) (the "November 9, 2012 Opinion"). Accordingly, only facts relevant to this motion will be provided below.

By order dated August 18, 2008, the MDL Panel assigned to this Court a number of actions filed in the United States District Courts for the Southern and Eastern Districts of New York arising from the collapse of investment bank The Bear Stearns Companies Inc. ("Bear Stearns" or the "Company") in March 2008. On January 6, 2009, an Order was issued consolidating all of these actions. The Order appointed lead counsel and lead plaintiffs for

each of the three species of actions comprising the consolidated set: (1) those asserting securities claims, (2) those asserting derivative claims and (3) those asserting ERISA claims.

On February 27, 2009, Lead Plaintiff for the securities claims filed a consolidated class action complaint (the "Complaint") alleging, *inter alia,* that defendants Bear Stearns, James E. Cayne, Alan D. Schwartz, Warren J. Spector, Alan C. Greenberg, Samuel L. Molinaro, Jr., Michael Alix, Jeffrey M. Farber (collectively, the "Bear Stearns Defendants"), and Deloitte & Touche LLP ("Deloitte") had violated federal securities law in that they (i) defrauded investors by overstating the value of Bear Stearns' assets and understating the risks entailed in those assets; and (ii) misled investors concerning the company's liquidity problems.

In June 2012, proposed settlements had been reached with both the Bear Stearns Defendants and Deloitte ("the Settlements"). The Settlements called for the Bear Stearns Defendants to pay $275 million and for Deloitte to pay $19.9 million, for a total settlement amount of $294.9 million ("Settlement Amount") to a settlement fund (the "Net Settlement Fund") which resolved all of

the Settlement Class's[1] claims against all defendants. The Court granted preliminary approval to the Settlements via twin preliminary approval orders issued June 13, 2012 (the "Preliminary Approval Orders"). The Court also preliminarily certified the Settlement Class pursuant to Fed. R. Civ. P. 23(a) and (23)(b)(3). On November 9, 2012, this Court approved the motion for final certification of the class, found the proposed settlement as procedurally and substantively fair and approved the proposed plan of allocation ("Plan of Allocation" or "Plan"). *In re Bear Stearns*, 909 F. Supp. 2d at 265-71.

On September 20, 2013, a Corrected Order Approving Administrative Determinations and Directing Payment of Net Settlement Funds (the "First Distribution Order") was entered. The

[1] The Settlement Class consists of those who, during the period from December 14, 2006 through March 14, 2008 (the "Class Period"), purchased or otherwise acquired the common stock, other equity securities, or call options of or guaranteed by Bear Stearns, or sold Bear Stearns put options, and were damaged thereby. The Settlement Class also includes all persons who received Bear Stearns Capital Accumulation Plan ("CAP") Units ("CAP Plan Units") and Restricted Stock Units ("RSU Plan Units") (collectively, "CAP/RSU Plan Units") that had fully vested, entitled them to an equivalent number of shares of Bear Stearns common stock upon settlement at the end of the deferral period, during the Class Period, as part of their compensation as an employee with Bear Stearns. Specifically excluded from the Settlement Class are: the Defendants; the officers and directors of Bear Stearns; the members of the immediate families of the Individual Defendants; any firm, trust, partnership, corporation, or entity in which any Defendant has a controlling interest; the legal representatives, heirs, successors-in-interest or assigns of any such excluded Person, and any Person who would otherwise be a Settlement Class member but properly excludes himself, herself, or itself by filing a valid and timely request for exclusion in accordance with the requirements set forth in the notice of settlement.

Distribution Order authorized the distribution of 90% of the Net Settlement Funds, with the remaining 10% to be held in reserve (the "Reserve Distribution") to pay a small subset of Proofs of Claim submitted by claimants that required additional processing because of their complexity or extent of supporting documentation ("Claims-in-Process"); the Proofs of Claim of claimants who requested judicial review of the Court-approved claims administrator's, The Garden City Group, Inc. ("GCG"), rejection of their Proofs of Claim ("Disputed Claims"), but that ultimately might be deemed eligible for payment; and any other contingencies. On the same day, GCG made a distribution pursuant to the Distribution Order from the Net Settlement Funds, distributing payments to 15,500 Authorized Claimants for total proceeds of $230,329,766.28, or 90% of the Net Settlement Funds (the "Distribution").

The Distribution Order was modified by the Opinion and Order dated December 12, 2013 ("Modification Order"), which granted absent Settlement Class Member Cancan Limited's motion for intervention and allowed its late-filed Proof of Claim to be accepted.

GCG has reviewed and processed the Claims-in-Process, the Disputed Claims, any new claims received since June 15, 2013 ("New Claims") and any adjustments or revisions to existing claims ("Revised Claims") received. Discussion of these claims has been provided in the Declaration of Stephen J. Cirami ("Cirami Decl."), (MDL No. 08-1963 (RWS), ECF No. 438), and Declaration of Perry S. Carbone ("Carbone Decl."), (*id.*, ECF No. 444).

The Lead Plaintiffs filed the instant motion on May 23, 2014. Lead Plaintiffs seek entry of the proposed Order Approving Administrative Determinations and Direction Distribution of Reserved Settlement Funds ("Proposed Reserve Distribution Order" or "Proposed Order"). The Proposed Order adopts the GCG's administrative determinations regarding the Claims-in-Process, New Claims, Revised Claims and Disputed Claims. The Proposed Reserve Distribution Order would (i) approve the administrative determinations of GCG concerning the Claims-in-Process and Disputed Claims; (ii) approve payment to a relatively small number of claimants who filed late but otherwise valid Proofs of Claim after the June 15, 2013 bar date (the New Claims, which include the Cancan claim); (iii) approve payment to a small number of claimants who submitted additional documentation after the June 15, 2013 bar date and whose claims now calculate to a loss recognized under the Plan of Allocation (a "Recognized Loss") or

an increased Recognized Loss (the Revised Claims); (iv) direct the distribution of the 10% of the Net Settlement Funds that has been held in reserve; and (v) approve payment of GCG's outstanding fees and expenses incurred in connection with the administration of the Settlements.

The Bear Stearns Defendants and Deloitte have taken no position on the motion or Proposed Order.

Several claimants, in their individual capacities (the "Objecting Claimants"), have objected via letters to the instant motion and Proposed Reserve Distribution Order. Many of the Objecting Claimants are former employees of Bear Stearns who object to the exclusion of Bear Stearns common stock acquired through employee stock options outside of the Class Period, common stock and vested CAP/RSU Plan units that realized an overall market gain during the Class Period, publicly traded call options sold short and unexercised employee stock options.

The instant motion was marked fully submitted on June 11, 2014.

**II. Determinations Of GCG**

GCG has identified 1,143 total Claims-in-Process and 22 Disputed Claims. Cirami Decl. ¶¶ 2, 5, n.3. Many of these claims involved unique securities, specifically the CAP/RSU Plan Units. 636 of the 1,165 Claims-in-Process and Disputed Claims were found to be eligible. *Id.* ¶ 5. The total Recognized Loss for these eligible claims is $168,099,400.68. *Id.* GCG has submitted a list of the Claims-in-Process that have been provisionally approved for payment ("Claims-in-Process Authorized Claimants" or "Authorized Claimants"). *See id.*, Ex. A.

Since June 15, 2013, GCG has received 139 New Claims. *Id.* ¶ 10. Subsequent to the Modification Order, GCG was directed by co-lead counsel for Lead Plaintiff, Berman DeValerio and Labaton Sucharow LLP (collectively, "Class Counsel") to provisionally accept all claims received after June 15, 2013 to the extent that GCG determined them to be eligible for payment. Forty five of these late claims calculate to a Recognized Loss totaling $155,242,755.36. *Id.* The Recognized Loss attributable to the claim submitted by Cancan Limited is $140,929,370.41. *Id.* at 6 n.4.

Since June 15, 2013, 42 claimants have provided additional documentation to GCG to support their claims. *Id.* ¶ 11. GCG has determined that 26 of them now calculate to an above-zero Recognized Loss that previously had zero Recognized Loss and two

calculate to an increased Recognized Loss (the "Revised Authorized Claimants"). The revised Recognized Losses for the Revised Authorized Claimants total $1,347,572.41, less $21,804.12 that was awarded to these claimants in the Distribution. *Id.* The total additional "catch-up" award amount would be approximately $87,541 after applying the pro-rations from the Distribution. *Id.*

   a.   *Disputed Claimants*

Fifty four claimants (each a "Disputed Claimant") have requested judicial review of GCG's administrative determination of his, her or its Proof of Claim (each a "Disputed Claim"). After being contacted and their questions answered by GCG, 43 of the Disputed Claimants withdrew their requests for judicial review or completed their Proofs of Claim; 11 of the 54 total Disputed Claimants continue to request judicial review of GCG's administrative determinations. *Id.* ¶ 13. The remaining Disputed Claimants fall into the following categories:

- Four of the Disputed Claimants are claimants disputing GCG's determination that they are not Settlement Class Members;

- Five of the Disputed Claimants are claimants disputing GCG's determination that their Proofs of Claim do not calculate to a Recognized Loss; and

- Two of the Disputed Claimants are claimants disputing GCG's

determination of their number of eligible shares.

*Id.* ¶ 14.

The four Disputed Claimants disputing GCG's determination that they are not settlement class members are as follows:

- Disputed Claimant No. 1, Claim 1166077;
- Disputed Claimant No. 2, Claim 1000201;
- Disputed Claimant No. 3, Claim 1163922; and
- Disputed Claimant No. 4, Claim 1000145.

Cirami Decl. ¶ 15.

The five Disputed Claimants disputing GCG's determination that their Proofs of Claim do not calculate to a Recognized Loss or GCG's determination of their number of eligible shares are as follows:

- Disputed Claimant No. 5, Claim 1001814;
- Disputed Claimant No. 6, Claim 1000435;
- Disputed Claimant No. 7, Claim 1000810;
- Disputed Claimant No. 8, Claim 1124212; and

- Disputed Claimant No. 9, Claim 1208621.

*Id.* ¶¶ 17-18.

The two Disputed Claimants that contend that additional shares or securities should be eligible for compensation are as follows:

- Disputed Claim No. 10, Claim No. 1148039; and
- Disputed Claimant No. 11, Claim 1001516.

b. *Rejection Determinations*

GCG recommends for rejection of 623 Proofs of Claim (the "Rejected Claims"). Cirami Decl. ¶ 22. According to GCG, all claimants who timely filed claims or claims after June 15, 2013 received notification outlining any ineligible conditions and how to cure their claim, if possible. *Id.* ¶ 21.

## III. **Discussion**

The November 9, 2012 Opinion approved the Plan of Allocation and found that it "is designed to fairly and rationally allocate the settlement funds among claimants . . . . [and] is

both fair and reasonable." *Id.* at 270-71. However, the Objecting Claimants oppose the Proposed Reserve Distribution Order based on: (i) the exclusion of unexercised employee stock options; (ii) the exclusion of unvested CAP/RSU Plan Units; (iii) the exclusion of certain CAP/RSU Plan Units that had fully vested but were not exchanged for common stock; (iv) the exclusion of publicly traded call options; (v) an Objecting Claimant's allegedly incorrect classification as an officer/director of Bear Stearns; and (vi) improper or faulty conduct by and conflict of interest issues with Class Counsel and GCG.

a. *The Objecting Claimants Requests Are Denied*

1. Unexercised Employee Option Grants Are Not Covered Under The Plan of Allocation

Several Objecting Claimants have filed letters objecting to the exclusion of employee option grants. To the extent that the Objecting Claimants contend that unexercised option grants should be part of the Reserve Distribution, unexercised stock options are not eligible securities for participation in the Settlements pursuant to the Plan of Allocation. Section 25 of the Plan of Allocation sets forth that "[t]o calculate the Recognized Loss on Bear Stearns equity securities, options, or vested stock units *purchased/acquired and sold during the Class Period*, sales must be

matched against purchases/acquisitions during the Class Period . . . . This means that sales of Bear Stearns equity securities, options, or vested stock units will be first matched with any pre-Class Period holdings and then matched with purchases/acquisitions during the Class Period in chronological order. Sales of pre-Class Period purchases shall have no Recognized Loss." Plan of Allocation at 11-12 (emphasis added). For options, "the purchase/sale date is the date of the *exercise of the option* and the purchase/sale price of the share is the exercise price of the option." *Id.* at 12 (emphasis added). The Plan of Allocation thus acknowledges no Recognized Loss for unexercised employee options as stock options that remain unexercised throughout the Class Period have no purchase/sale date and no Recognized Loss.

Disputed Claimant No. 5 contends that Section 5 of the Plan of Allocation covers unexercised employee options. Section 5 states that the Settlement Class applied to "all persons or entities who, during the period from December 14, 2006 to and through March 14, 2008, inclusive, purchased or otherwise acquired the publicly traded common stock or other equity securities, or call options of or guaranteed by Bear Stearns, or sold Bear Stearns put options, either in the open market or pursuant or traceable to a registration statement, and were damaged thereby." Plan of Allocation at 5. Disputed Claimant No. 5 argues that the phrase

"publicly traded" applies only to "common stock or other equity securities" and not to "call options". The claimant contends that there was no requirement that options must be publicly traded for participation in the Settlement. The claimant notes that the phrase "publicly traded options" appears nowhere else in the Plan of Allocation.

In *Pappas v. Bank of Am. 401(k) Plan for Legacy Co.*, 526 F. App'x 785 (9th Cir. 2013) ("*Countrywide*"), an ERISA plan, challenged the plan of allocation in that action on similar grounds. The plan argued that due to the inclusion of the phrase "either in the open market or pursuant or traceable to a registration statement . . . purchased or otherwise acquired [the company's] . . . publicly traded common stock or call options, and/or sold . . . publicly traded put options (the 'Common Stock Subclass')," a common stock subclass could be either purchased on the open market or acquired pursuant to a traceable registration statement. *Id.* at 789. The Ninth Circuit found the phrase "either in the open market or pursuant or traceable to a registration statement" limited the settlement to only those who purchased the common stock subclass on the open market during the class period. *Id.* at 788-89. Common stock not purchased on the open market or transactions that occurred outside of the class period were not included in the settlement. *Id.* at 789. The Circuit Court based

its decision on the lawsuit's operative Securities Exchange Act of 1934 ("Exchange Act") Section 10(b) securities class action claims. *Id.* at 789. The court concluded that the common stock subclass had to be purchased on the open market because the complaint and class certification order was premised on a fraud-on-the-market theory that the company's allegedly fraudulent statements caused fraud on the market by inflating the price of stock purchased in the open market during the class period. *Id.* Similarly, the Complaint in this action pleads that Bear Stearns allegedly made misstatements and omissions that inflated the price of the stock purchased during the Class Period in violation of Section 10(b), 20(a) and 20A of the Exchange Act. Compl. ¶¶ 813-21.

Like *Countrywide*, the language of the Plan of Allocation belies support to Disputed Claimant No. 5's reading. Section 5 of the Plan does not present how a claimant's Recognized Loss is calculated for unvested employee options, nor does it specifically state that unvested employee options are included in the Settlement Class. Section 25 provides more information on the calculation of a Recognized Loss and only provides a Recognized Loss for vested stock units. Plan of Allocation at 11 ("The Settlement Funds . . . will be distributed according to the Plan of Allocation . . . to members of the Settlement Class . . . who have an out-of-pocket

net loss on all Class Period transactions in Bear Stearns equity securities, options, or *vested stock units*.") (emphasis added). Thus, when read in context of the overall Plan, Section 5 does not allow the inclusion of unexercised employee stock option as such an interpretation would eviscerate the language of Section 25. The more specific terms of Section 25 regarding how losses are actually calculated is applicable here, and under the Plan of Allocation, employee option grants that were not exercised and sold during the Class Period are not eligible as a Recognized Loss.

Disputed Claimant No. 5 notes that the Plan of Allocation describes how to calculate Recognized Loss on options that are not sold and contends that this should apply to unexercised options: "[f]or the Call Options sold or held after March 14, 2008, the Recognized Loss is the lesser of . . . $19.82 per Call Option." *Id.* at 13. However, this phrase is in the section titled "Publicly Traded Call Options on Bear Stearns Common Stock", and does not apply to unvested employee stock options. *Id.*

To the extent the Objecting Claimants are challenging the Class Period, Settlements or Plan of Allocation, the November 9, 2012 Opinion had previously certified the Settlement Class, which narrowed its terms to the Class Period, and found the Settlement and Plan of Allocation to be fair and adequate. *See*

*id.*, 909 F. Supp. 2d at 270-71. Despite the Objecting Claimants' generalized contentions to the contrary, there is no reason to overturn the November 9, 2012 Opinion's holding with respect to the Class Period, Settlements and Plan of Allocation for unexercised options. While the Objecting Claimants have suffered losses in that they will not be compensated for their bargained for unexercised option rights, to the extent that the unexercised options only provided the Objecting Claimants the option to purchase Bear Stearns stock, Objecting Claimants with unexercised options did not experience any monetary losses within the Class Period as they had not tendered any money for acquiring stock. Given such, and as previously held in the November 9, 2012 Opinion, the Settlement and Plan of Allocation are both fair and reasonable, and unexercised employee stock options are not included in the approved Plan of Allocation.

2. Unvested CAP/RSU Plan Units Are Not Entitled To A Recognized Loss

Several of the Objecting Claimants, including Disputed Claimant No. 5, have objected to the exclusion of their unvested CAP/RSU Plan Units. CAP/RSU Plan Units are programs offered as compensation by Bear Stearns to certain of its employees. Pursuant to the Plan of Allocation, the Settlement Class included "all persons who received Bear Stearns [CAP/RSU Plan Units] that had

fully vested, entitling them to an equivalent number of shares of Bear Stearns common stock upon settlement at the end of a deferral period, during the Class Period, as part of their compensation as an employee with Bear Stearns . . . ." Plan of Allocation at 5. The Plan of Allocation only covered fully vested CAP/RSU Plan Units during the Class Period. Accordingly, GCG was required to determine if the vesting date for the CAP/RSU Plan Units was within the Class Period in order to calculate a Settlement Class Member's actual recovery from the Net Settlement Funds.

CAP/RSU Plan Units generally vested according to a standard schedule (the "Standard Vesting Schedule"). Shares held in the base version of the CAP/RSU Plans vested 50% two years after the grant date and the remaining 50% three years after the grant date with the vesting usually occurring on November 30 of each year. Shares held in the premium version of the CAP/RSU Plans vested 50% three years after the grant date and the remaining 50% four years after the grant date with the vesting usually occurring on November 30 of each year. Cirami Decl. ¶ 7. To determine the vesting date for a claimant's CAP/RSU Plan Units, if the documents provided did not show a specific vesting period, GCG used the Standard Vesting Schedule. Under the Plan of Allocation, CAP/RSU Plan Units must have vested during the Class Period, from December 14, 2006 to and through March 14, 2008, and the claimant must have

held those vested CAP/RSU Plan Units as of the close of trading on May 30, 2008 in order for those CAP/RSU Plan Units to calculate to a Recognized Loss.

Certain claimants were informed that their unvested CAP/RSU Plan Units would automatically vest when JP Morgan acquired Bear Stearns. Cirami Decl. ¶ 8. However, the acquisition agreement between JP Morgan and Bear Stearns was not announced until March 16, 2008, after the close of the Class Period. Thus, any CAP/RSU Plan Units eligible for this accelerated vesting would not have vested until after the close of the Class Period, and these CAP/RSU Plan Units do not calculate to a Recognized Loss pursuant to the Plan of Allocation. *Id.*

3. Vested But Not Exchanged For Common Stock CAP/RSU Plan Units Must Be Offset By Gains During The Class Period

With regards to vested CAP/RSU Plan Units, several of the Objecting Claimants realized an overall market gain on their transactions on common stock and vested CAP/RSU Plan Units. The Settlement only applied to members of the Settlement Class "who have an out-of-pocket net loss on all Class Period Transactions in Bear Stearns equity securities, options, or vested stock units." Plan of Allocation at 11. The Plan of Allocation was also explicit

in that "[t]o extent a Claimant had an overall out-of-pocket gain from his, her or its overall transactions in Bear Stearns equity securities (or Options or Eligible Vested RSU/CAP Units) during the Class Period, the value of the Recognized Loss will be zero." *Id.* at 14. Both CAP/RSU Plan Units and common stock transactions were required to be offset by the total gains and losses of the claimant. Hence, to the extent an Objecting Claimant's overall market realization on his, her or its common stock and vested CAP/RSU Plan Units transaction during the Class Period was a gain, that Objecting Claimant did not suffer out-of-pocket losses or a Recognized Loss eligible for compensation under the Plan of Allocation.

4. Publicly Traded Call Options <u>Are Not Entitled To A Recognized Loss</u>

Under the Plan of Allocation, "[a]ny person or entity that sold Bear Stearns equity securities 'short' will have no Recognized Loss with respect to such purchases/acquisitions during the Class Period to cover said short sale." *Id.* at 12. Consequently, these option transactions must result in a Recognized Loss of zero.

5. Disputed Claimant No. 7 Was Properly Classified As <u>An Officer/Director Of Bear Stearns</u>

Disputed Claimant No. 7 has objected to his classification as an officer or director which would disqualify him from participation in the Settlements under the Plan. Disputed Claimant No. 7 was the Treasurer of Bear Stearns for a portion of the Class Period, but had resigned as Treasurer on January 14, 2008. In March 2008, his title was "Senior Managing Director" of Bear, Stearns & Co., Inc., a broker-dealer subsidiary of Bear Stearns, and CEO of Bear, Stearns Securities Corp., another broker-dealer subsidiary of Bear Stearns.

The Plan of Allocation excludes from the Settlement Class "the officers and directors of Bear Stearns." Plan of Allocation at 5. While Disputed Claimant No. 7 was not an officer of Bear Stearns for the entirety of the Class Period, he was an officer until January 2008, just two months before the close of the Class Period. Given that he was an officer for virtually all of the Class Period, Disputed Claimant No. 7 was properly excluded from the Settlement Class. *See, e.g., In re Giant Interactive Group, Inc. Secs. Litig.*, 279 F.R.D. 151, 158-159 (S.D.N.Y. 2011) (certifying settlement class that excluded officers and directors).

6. Class Counsel And GCG Did Not Act Improperly In Its

Handling Of The Distribution, Reserve Distribution And Proposed Order

Several Objecting Claimants have complained of Class Counsel's and GCG's conduct in explaining denials of Proofs of Claims, responding to client requests and dealing with potential conflicts of interest. They have also requested for a reduction in Class Counsel's awarded fees.

These Objecting Claimants have noted that Class Counsel's economic interest are at odds with assisting claimants who requested court review as Class Counsel's fee arrangement provides Class Counsel with a fixed fee and any additional effort on advocating the Disputed Claims would result in no additional compensation. In addition, these Objecting Claimants contend that the low number of Disputed Claims submitted to the Court means that it would not have been unduly burdensome for Class Counsel to have offered more attentive legal and individual attention to each Disputed Claimant.

Class counsel "owe[s] a duty to the entire class, not merely to the named plaintiffs" or individual claimants. *Schick v. Berg*, No. 03 Civ. 5513(LBS), 2004 WL 856298, at *8 (Apr. 20, 2004). In class actions there is always "the potential for conflicting

interests among the class representatives, class counsel, and
absent class members." *Maywalt v. Parker & Parsley Petroleum Co.*,
67 F.3d 1072, 1077 (2d Cir. 1995). "Once the action has been
certified to proceed as a class action, it is incumbent on the
class representatives to be alert for, and to report to the court,
any conflict of interest on the part of class counsel, as for
example, counsel's greater concern for receiving a fee than for
pursuing the class claims." *Id.* at 1068.

    As an initial matter, Class Counsel has previously been
held to be adequate representation for the class pursuant to Fed.
R. Civ. P. 23(a) and 23(b)(3). *See* November 9, 2012 Opinion, 909
F. Supp. 2d at 264-65. Further, any claims of conflict by Class
Counsel here is not substantial. Class Counsel has reaffirmed the
claims administrator's determination on the eligibility of the
Proofs of Claim according to the Plan of Allocation. There is no
evidence, and the Objecting Claimants do not claim as such, that
either Class Counsel or GCG has improperly applied the terms of
the Plan of Allocation. Mere affirmance of a claims administrator's
determination does not constitute inadequate representation by
class counsel especially when that determination was proper under
the court-approved plan of allocation. Even if Class Counsel is
set to receive a fixed fee, impropriety surely cannot follow from
the Lead Counsel's proper affirmance of the Plan that has been

held to be fair and reasonable.

With regards to Dispute Claimant No. 5's claims of delayed responses from Class Counsel, the documentary evidence shows that the claimant's communications with and questions to Class Counsel and GCG were answered within a reasonable time. *See* Carbone Decl. ¶¶ 5-12.

The Objecting Claimants contention that Class Counsel and/or GCG provided faulty instructions in its directions to the Objecting Claimants is belied by the 636 Class-in-Process Authorized Claims in this round of distribution who submitted and found to have proper Proofs of Claim and Recognized Losses and only 11 Disputed Claims. Objecting Claimants also have not provided examples of any such faulty or inadequate instructions.

Since no impropriety has been shown or found on the part of Class Counsel or GCG, the Objecting Claimants' request for a reduction of the Class Counsel's and GCG's awarded fees is denied.

b. *Review Of Disputed Claims*

Court review of the Disputed Claimants Proofs of Claim are as follows:

Disputed Claimant No. 1, Claim 1166077

Disputed Claimant No. 1 received approximately 7,718 CAP/RSU Plan Units which fully vested prior to the start of the Class Period. Disputed Claimant No. 1 also acquired 6,228 shares of Bear Stearns common stock prior to the start of the Class Period. Since participation in the Settlement is open only to those who "purchased or acquired . . . securities (or sold/wrote put options) during the Class Period," Plan of Allocation at 5, no eligible purchases were made as all securities were acquired prior to the start of the Class Period. The Proof of Claim of Disputed Claimant No. 1 is rejected.

Disputed Claimant No. 2, Claim 1000201

Disputed Claimant No. 2 received a total of approximately 2,090 CAP/RSU Plan Units in 2006 and 2007. The supporting documentation shows a vesting date of May 1, 2008 for 206 CAP/RSU Plan Units and a vesting date of May 1, 2009 for an additional 206 CAP/RSU Plan Units, both of which are after the close of the Class Period. Claimant did not provide supporting documentation for the remaining approximately 1,678 CAP/RSU Plan Units. Application of the Standard Vesting Schedule results in

vesting dates after the close of the Class Period. Given such, no eligible purchases were made during the Class Period. The Proof of Claim of Disputed Claimant No. 2 is rejected.

Disputed Claimant No. 3, Claim 1163922

Disputed Claimant No. 3 acquired 700 shares of common stock on March 24, 2008, after the close of the Class Period. No eligible purchases were made during the Class Period because the acquisition of common stock occurred after the close of the period. Hence, the Proof of Claim of Disputed Claimant No. 3 is rejected.

Disputed Claimant No. 4, Claim 1000145

Disputed Claimant No. 4 received 1,724.68 CAP/RSU Plan Units pursuant to the base plan in 2007. No supporting documentation was provided regarding the vesting date. Application of the Standard Vesting Schedule results in vesting dates after the close of the Class Period. Thus, no eligible purchases were made during the Class Period because all CAP/RSU Plan Units vested after the close of the period. The Proof of Claim of Disputed Claimant No. 4 is rejected.

Disputed Claimant No. 5, Claim 1001814

Disputed Clamant No. 5 has CAP/RSU Plan Units, common stock and publicly traded call options that factor into his Recognized Loss.

*CAP/RSU Plan Shares* - Disputed Claimant No. 5 received approximately 30,205 CAP/RSU Plan Units which were fully vested prior to the beginning of the Class Period. The Recognized Loss assigned to these shares is zero. Disputed Claimant No. 5 also received approximately 2,625 CAP/RSU Plan Units which fully vested during the Class Period and were held after May 30, 2008. The market loss for these approximately 2,625 CAP/RSU Plan Units calculates to $257,705.74. Pursuant to the Plan of Allocation, these CAP/RSU Plan Units were assigned a value of $46.595 per share for a Recognized Loss of approximately $122,298.

*Common Stock* - Prior to the start of the Class Period, Disputed Claimant No. 5 held 144,000 shares of Bear Stearns common stock. On December 18, 2006, Disputed Claimant No. 5 acquired approximately 19,231 shares of common stock (converted from CAP/RSU Plan Units granted in 2001) which were assigned a value of $56.88 per share for a total purchase price of approximately $1,093,859. On March 22, 2007, Disputed Claimant No. 5 acquired an additional 1,292 shares of common stock (converted from CAP/RSU

Plan Units granted in 2001) which were assigned a value of $56.88 per share for a total purchase price of approximately $73,488. On April 13, 2007, Disputed Claimant No. 5 purchased an additional 10 shares of common stock for $148.40 per share for a total purchase price of approximately $1,484. On December 21, 2007, Disputed Claimant No. 5 acquired an additional 4,566 shares of common stock (converted from CAP/RSU Plan Units granted in 2002) which were assigned a value of $64 per share for a total purchase price of approximately $292,224. In the aggregate, the total amount paid for the 25,099 shares of common stock acquired during the Class Period calculates to approximately $1,461,056. Disputed Claimant No. 5 sold 25,099 shares of common stock on December 26, 2007 for $88.4439 per share, for a total sale price of approximately $2,219,853, resulting in an overall market gain of approximately $758,797.

*Publicly Traded Call Options* - at the beginning of the Class Period, Disputed Claimant No. 5 had an opening short position of Bear Stearns call options. During the Class Period, Disputed Claimant No. 5 engaged in several other transactions in call options, all sold short with eventual purchases to cover those sales. As discussed above and pursuant to the Plan of Allocation, any person or entity that sold Bear Stearns equity securities "short" will have no Recognized Loss with respect to such

purchases/acquisitions during the Class Period to cover said short sale.

Disputed Clamant No. 5's CAP/RSU Plan Units calculate to a Recognized Loss. However, the Claimant's losses are completely offset by the net market gain received as a result of his common stock transactions. The common stock market gain of $758,797 is greater than his CAP/RSU Plan Units market loss of $257,705, and the claim results in an overall net market gain of $501,092. Therefore, the Recognized Loss for Disputed Claim No. 5 is zero, and his Proof of Claim is rejected.

<u>Disputed Claimant No. 6, Claim 1000435</u>

Disputed Claimant No. 6 has CAP/RSU Plan Units and common stock transactions that factor into his Recognized Losses.

*CAP/RSU Plan Units* - Disputed Claimant No. 6 received approximately 6,842 vested CAP/RSU Plan Units prior to the start of the Class Period. The Recognized Loss assigned to these shares is zero. Disputed Claimant No. 6 was also granted approximately 657 additional CAP/RSU Plan Units in 2005 which vested during the Class Period, were held after May 30, 2008 and were assigned a grant price of $116.50. Disputed Claimant No. 6 was also granted

approximately 961 CAP/RSU Plan Units in 2004 which vested during the Class Period, were held after May 30, 2008 and were assigned a grant price of $102.65. These 1,618 CAP/RSU Plan Units that were fully vested during the Class Period calculate to a market loss of $159,044, and, pursuant to the Plan of Allocation, these CAP/RSU Plan Units have a value of $46.59 per share for a Recognized Loss of approximately $75,382.

*Common Stock* - On December 18, 2006, Disputed Claimant No. 6 acquired approximately 2,871 shares of common stock (converted from CAP/RSU Plan Units granted in 2002) which were assigned a value of $64 per share for a total purchase price of approximately $183,744. On December 21, 2007, Disputed Claimant No. 6 acquired 2,626 shares of common stock (converted from CAP/RSU Plan Units granted in 2003) which were assigned a value of $73.75 per share for a total purchase price of approximately $193,667. In the aggregate, the total amount paid for the 5,497 shares of common stock acquired during the Class Period totals approximately $377,411. On December 18, 2006, Disputed Claimant No. 6 sold 1,060 shares of common stock at approximately $164.68 per share for total proceeds of approximately $174,559. On December 21, 2006, Disputed Claimant No. 6 sold 1,811 shares of common stock at approximately $164.95 per share for total proceeds of approximately $298,724. On December 21, 2007, Claimant No. 6 sold 2,626 shares of common stock

at approximately $89.0327 per share for total proceeds of approximately $233,800. In the aggregate, the proceeds received from the sale of 5,497 shares of common stock totals approximately $707,083, resulting in a net common stock market gain of $329,672.

The CAP/RSU Plan Units market loss of $159,044 is offset by the common stock market gain of $329,672, and results in a claim of an overall net market gain of $170,628. The Recognized Loss for Disputed Claim No. 6 is therefore zero. The Proof of Claim of Disputed Claimant No. 6 is rejected

Disputed Claimant No. 7, Claim 1000810

As discussed above, Disputed Claimant No. 7 was a Bear Stearns officer and excluded by the Plan of Allocation from participation in the Settlements. His Proof of Claim is further discussed as follows:

*CAP/RSU Plan Shares* - Disputed Claimant No. 7 received approximately 46,496 shares of fully vested CAP/RSU Plan Units prior to the start of the Class Period. The Recognized Loss assigned to these shares is zero. Disputed Claimant No. 7 received approximately 14,652 additional fully vested CAP/RSU Plan Units during the Class Period that were held after May 30, 2008. The

total market loss for these CAP/RSU Plan Units is approximately $1,434,431. Under the Plan of Allocation, these shares were assigned a value of $46.59 per share for a total Recognized Loss of approximately $682,649.

*Common Stock* - On December 18, 2006, Disputed Claimant No. 7 acquired approximately 19,274 shares of common stock (converted from CAP/RSU Plan Units granted in 2001) which were assigned a value of $56.88 per share for a total purchase price of approximately $1,096,305. On March 22, 2007, Disputed Claimant No. 7 acquired 1,295 shares of common stock (converted from CAP/RSU Plan Units granted in 2001) which were also assigned a value of $56.88 per share for a total purchase price of approximately $73,659. On December 21, 2007, Disputed Claimant No. 7 acquired an additional 25,927 shares of common stock as the result of CAP/RSU Plan Units granted in 2002 which were assigned a value of $64 per share for a total purchase price of approximately $1,659,328. The total amount paid for the 46,496 shares of common stock acquired is approximately $2,829,293. On December 18, 2006, Disputed Claimant No. 7 sold 19,274 shares of common stock at approximately $164.76 per share for total proceeds of approximately $3,175,700. On March 22, 2007, Disputed Claimant No. 7 sold 1,295 shares of common stock at approximately $151.27 per share for total proceeds of approximately $195,903. On December 21, 2007, Disputed Claimant

No. 7 sold 25,927 shares of common stock at approximately $89.03 per share for total proceeds of approximately $2,308,350. In the aggregate, the proceeds received for the 46,496 shares of common stock total approximately $5,679,953, resulting in a net common stock market gain of $2,850,660.

When the common stock market gain of approximately $2,850,660 is offset by the CAP/RSU Plan Units market loss of $1,434,431, the claim results in a net market gain of $1,416,229. The Recognized Loss for Disputed Claimant No. 7 is zero. The Proof of Claim for Disputed Claimant No. 7 is thus rejected.

Disputed Claimant No. 8, Claim 1124212

Disputed Claimant No. 8 purchased 127 shares of common stock on March 13, 2008 for $55 per share. The claimant sold them on March 14, 2008 for $58 per share for a net market gain of $3 per share and an overall gain. The Recognized Loss for these transactions is zero. Disputed Claimant No. 8 also purchased 760 shares of common stock at varying prices, all on March 14, 2008 and sold them on the same day. Pursuant to the Plan of Allocation, "in and out" transactions have a recognized loss of zero. *See* Plan of Allocation at 13 ("For Bear Stearns common stock purchased or acquired on March 14, 2008 and . . . sold on March 14, 2008, the

Recognized Loss is zero"). The Proof of Claim for Disputed Claimant No. 8 is rejected.

Disputed Claimant No. 9, Claim 1208621

Disputed Claimant No. 9 sold short 2,500 shares prior to the start of the Class Period. 1,200 shares were purchased on March 14, 2008 and 1,300 shares were purchased after the Class Period ended. These purchases were made to cover pre-Class Period short sales and therefore have no Recognized Loss. Disputed Claimant No. 9 also purchased 15,000 shares after the end of the Class Period that remained unsold as of May 30, 2008. The shares were purchased after the Class Period ended; they do not calculate to a Recognized Loss. Thus, the Proof of Claim for Disputed Claimant No. 9 is rejected.

Disputed Claim No. 10, Claim No. 1148039

Disputed Claimant No. 10 purchased 300 shares of Bear Stearns common stock prior to the start of the Class Period. Disputed Claimant No. 10 acquired less than one share of common stock on January 29, 2007 at approximately $169 per share and acquired less than one share on April 30, 2007 at approximately $160 per share, all of which was sold on May 1, 2008 at

approximately $6.47 and $6.74, respectively. Pursuant to the Plan of Allocation, these shares are assigned a value of the lesser of $46.59 per share or the purchase price paid per share less the greater of (i) the sales proceeds received per share, or (ii) the average closing price per share applicable to the date of sales as listed in the Plan of Allocation. Here, the lesser value is $46.59 per share. Given such, the total Recognized Loss is approximately $54.95, and payment will be made for that amount.

Disputed Claimant No. 10 has challenged the determination that the 300 shares purchased prior to the Class Period do not calculate to a Recognized Loss. With regards to equity securities, the Plan of Allocation only provides for distribution of Settlement proceeds for stock purchased or acquired and sold during the Class Period. Plan of Allocation at 11. Accordingly, the 300 shares of Disputed Claimant No. 10 purchased prior to the Class Period cannot calculate to a Recognized Loss.

<u>Disputed Claimant No. 11, Claim 1001516</u>

Disputed Claimant No. 11 has requested judicial review of the determination that employee options that were not exercised to purchase common stock are not eligible securities in the

Settlements. As noted above, such securities are not eligible under the Plan of Allocation. Accordingly, Disputed Claimant No. 11's unexercised employee options are not eligible for distribution under the Settlements.

c. *The Claims-in-Process Authorized Claimants Is Approved*

Having reviewed the documentation for the Claims-in-Process Authorized Claimants, GCG's recommendation for payment to the 636 Claims-in-Process Authorized Claimants found to be eligible for funds under the Plan of Allocation is approved. After applying the pro-rations from the Distribution, the award amount from the Reserve Distribution to these claims will be approximately $11,098,764.

d. *Participation In The Reserve Distribution For The Revised Authorized Claimants Is Approved*

The Revised Authorized Claimants' Recognized Losses revised by GCG is an appropriate revision for these eligible claims. GCG's recommendation for the "catch-up" award amount of $87,541 to be paid to the Revised Authorized Claimants is approved.

e. *Participation In The Reserve Distribution For The New Claims Is Approved*

GCG was instructed by Class Counsel to approve the New Claims based on the Modification Order. Given such, the Proofs of Claim for the New Claims is approved.

f. *Affirmation Of GCG's Rejection Determinations Of The Rejected Claims*

GCG recommends for rejection 623 Proofs of Claim. According to GCG, all claimants who timely filed claims or claims after June 15, 2013 received notification outlining any ineligible conditions and how to cure their claim, if possible. Cirami Decl. ¶ 21. The general reasons for rejection of the Proofs of Claim recommended for rejection are as follows:

| **Reason for Rejection** | **Number of Claims** |
|---|---|
| Proof of Claim Did Not Fit the Class Description | 183 |
| Duplicate Proof of Claim | 36 |
| Deficient Proof of Claim Never Cured | 150 |
| Proof of Claim Did Not Result in a Recognized Loss | 254 |
| **TOTAL** | **623** |

*Id.* ¶ 22.

Other than the 11 Disputed Claimants, none of the other Rejected Claimants have disputed the rejection of their Proof of Claim. Having reviewed the GCG's recommendations, the Proofs of

Claim for the 623 Rejected Claims is rejected.

g. *GCG's Fees And Disbursements Is Approved*

GCG was responsible for directing the first distribution to Authorized Claimants, reviewing additional claims containing CAP and/or RSU shares and issues, assessing the Claims in Process, mailing and distributing all payments and communications to Authorized Claimants, and other tasks related to the Distribution and administration of the Proofs of Claim. GCG billed Class Counsel on a regular basis and provided regular reports of all of the work GCG performed with respect to the administration of the Settlements. Cirami Decl. ¶ 23, Ex. F. Class Counsel authorized all work performed therein. GCG has filed an invoice for $421,261.49 that reflects GCG's outstanding fees and expenses that have been incurred in in connection with its work related to the Claims-In-Process, Disputed Claims and New and Revised Claims, as well as GCG's estimate of fees and expenses to conduct the Reserve and Supplemental Distributions in accordance with the Distribution Plan. *Id.*, Ex. F.

Having reviewed the Declaration of Stephen J. Cirami and the accompanying invoices which detail the work done by GCG, GCG's services and charges were appropriate and in accord with the types

of services and charges necessary for administering the Proofs of Claim, Distribution and Reserve Distribution. *See Presidential Life Ins. Co. v. Miliken*, No. 92-CV-1151, 1997 WL 727497, *5-6 (S.D.N.Y. Nov. 20, 1997) (claims administrator's services included, among other things, processing proofs of claims, assisting in administering the fund, and calculating taxes); *Genden v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 741 F. Supp. 84, 88 (S.D.N.Y. 1990) (approving a total of $507,684.45 to settlement administrator for services in administering the settlement fund); *Blank v. Jacobs*, No. 03-CV-2111(JS)(WDW), 2013 WL 1310503, at *5 (E.D.N.Y Mar. 27, 2013) (approving claims administrator's fees and expenses for processing and distribution of settlement fund). Accordingly, GCG is entitled to the requested amount of $421,261.49 for its fees and expenses.

## IV. Conclusion

Based on the conclusions set forth above, the motion for a distribution order approving administrative determinations and directing distribution of reserved settlement funds made by Lead Plaintiff is granted.

It is so ordered.

**New York, NY**
**July 8 , 2014**

**ROBERT W. SWEET**
**U.S.D.J.**