UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE BEAR STEARNS COMPANIES, INC. SECURITIES, DERIVATIVE, AND ERISA LITIGATION | Master File No.: |
| This Document Relates To: | 08 M.D.L. No. 1963 (RWS) |
| Securities Action, 08 Civ. 2793 (RWS) | |
| VIVINE H. WANG, | |
| Plaintiff, | |
| v. | No. 11 Civ 5643 (RWS) |
| BEAR STEARNS COMPANIES LLC; J.P. MORGAN SECURITIES LLC; J.P. MORGAN CLEARING CORP; DELOITTE & TOUCHE LLP; ALAN D. SCHWARTZ; ALAN C. GREENBERG; JOEY ZHOU; and GARRETT BLAND | |
| Defendants. | |

**BEAR STEARNS DEFENDANTS' MEMORANDUM OF LAW
IN SUPPORT OF THEIR MOTION FOR SANCTIONS
BASED ON ROGER WANG'S FAILURE TO APPEAR FOR DEPOSITION**

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES..........................................................................................................ii

PRELIMINARY STATEMENT ....................................................................................................1

BACKGROUND ............................................................................................................................3

    A.    The Wangs and Their Counsel Mr. Ghods ...............................................................3

    B.    The Wangs' Purchase of Bear Stearns Shares .........................................................3

    C.    The FINRA Arbitration Between Bear Stearns and the Wangs ...............................4

    D.    The Wangs' Duplicative Suits Against Bear Stearns ..............................................5

    E.    Fact Discovery in the Opt-Out Actions ...................................................................6

    F.    Mr. Wang Fails to Appear for His Deposition .........................................................7

LEGAL STANDARD ...................................................................................................................11

ARGUMENT.................................................................................................................................12

I. PLAINTIFF AND MR. GHODS SHOULD BE SANCTIONED ............................................12

    A.    Sanctions Against the Plaintiff Mrs. Wang Are Necessary....................................13

    B.    Sanctions Against Mr. Ghods Are Appropriate......................................................15

II. DISMISSAL IS THE MOST APPROPRIATE SANCTION...................................................17

    A.    In the Alternative, Mr. Wang Should Be Precluded From Testifying at Trial .......................................................................................................................20

III. BEAR STEARNS IS ENTITLED TO ATTORNEYS' FEES AND COSTS .........................21

CONCLUSION .............................................................................................................................24

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Agiwal v. Mid Island Mortgage Corp.,*
   555 F.3d 298 (2d Cir. 2009) ..................................................................... 11, 17, 18

*Al Barnett & Son, Inc. v. Outboard Marine Corp.,*
   611 F.2d 32 (3d Cir. 1979) ....................................................................................... 17

*Baker v. Urban Outfitters,*
   431 F. Supp.2d 351 (S.D.N.Y. 2006) ...................................................................... 16

*Chambers v. NASCO, Inc.,*
   501 U.S. 32 (1991) .................................................................................................. 11

*Cine Forty-Second St. Theatre v. Allied Artists Pictures,*
   602 F.2d 1062 (2d Cir. 1979) ................................................................................. 17

*DLC Mgm't Corp. v. Town of Hyde Park,*
   163 F.3d 124 (2d Cir. 1998) ................................................................................... 12

*Flaks v. Koegel,*
   504 F.2d 702 (2d Cir. 1974) ................................................................................... 13

*Gollomp v. Spitzer,*
   568 F.3d 355 (2d Cir. 2009) ................................................................................... 16

*Grinnell v. Charles Pfizer & Co.,*
   274 Cal. App.2d 424 (Ct. App. 1969) .................................................................... 19

*Guifu Li v. A Perfect Day Franchise, Inc.,*
   281 F.R.D. 373 (N.D. Cal. 2012) ........................................................................... 16

*Handwerker v. AT&T Corp.,*
   211 F.R.D. 203 (S.D.N.Y. 2002) ...................................................................... 18, 20

*John Wiley & Sons, Inc. v. Book Dog Books, LLC,*
   298 F.R.D. 145 (S.D.N.Y. 2014) ...................................................................... 22, 23

*Koch v. Pechota,*
   10-cv-9152, 2013 WL 5996061 (S.D.N.Y. Nov. 8, 2013) ...................................... 21

*Link v. Wabash R.R.,*
   370 U.S. 626 (1962) .......................................................................................... 11, 15

*Lovetro v. Steers,*
   234 Cal. App.2d 461 (Ct. App. 1965) .................................................................... 15

Doc# US1 9808947v11

*Magee v. Paul Revere Life Insurance Co.*,
178 F.R.D. 33 (E.D.N.Y. 1998)..................................................................14, 21

*Mirkin v. Wasserman*,
5 Cal.4th 1082 (Cal. 1993) .........................................................................19

*Nalaskowski v. Golowicz*,
65 N.Y.S.2d 718 (N.Y. Sup. Ct. 1946).......................................................15

*National Hockey League v. Metropolitan Hockey Club, Inc.*,
427 U.S. 639 (1976) ...................................................................................18

*Pioche Mines Consol., Inc. v. Dolman*,
333 F.2d 257 (9th Cir. 1964) ......................................................................17

*PrecisionFlow Techs., Inc. v. CVD Equip. Corp.*,
198 F.R.D. 33 (N.D.N.Y. 2000), *aff'd* 140 F. Supp.2d 195 (N.D.N.Y. 2001).................14, 22

*SEC v. Razmilovic*,
738 F.3d 14 (2d Cir. 2013) ..........................................................................18

*Reilly v. Natwest Mkts. Grp. Inc.*,
181 F.3d 253 (2d Cir. 1999) ..................................................................11, 21

*S. New England Tel. Co. v. Global NAPs Inc.*,
624 F.3d 123 (2d Cir. 2010) ............................................................11, 12, 18

*Sieck v. Russo*,
869 F.3d 131 (2d Cir. 1989) ........................................................................17

*Thomas E. Hoar, Inc. v. Sara Lee Corp.*,
882 F.2d 682 (2d Cir. 1989) ........................................................................23

*Underdog Trading L.L.C. v. Verizon Servs. Corp.*,
273 F.R.D. 372 (S.D.N.Y. 2011)..................................................................22

*Vorcom Internet Servs., Inc. v. L&H Eng'g & Design LLC*,
No. 12 CV 2049 VB, 2014 WL 116130 (S.D.N.Y. Jan. 13, 2014) ............23

*Xstrata Canada Corp. v. Advanced Recycling Tech., Inc.*,
No. 1:08–CV–1366, 2010 WL 1539722 (N.D.N.Y. Apr. 19, 2010) ...........17

**STATUTES**

28 U.S.C. § 1927 ..............................................................................12, 16, 23

**OTHER AUTHORITIES**

Cal. R. Prof'l Conduct 3-310..........................................................................15

Fed. R. Civ. P. 26(c) ....................................................................................................... 13

Fed. R. Civ. P. 30(b)(6) ............................................................................................. 11, 13

Fed. R. Civ. P. 37 ....................................................................................................passim

Fed. R. Civ. P. 45 ....................................................................................................... 14

S.D.N.Y. L. R. 26.4(a) ................................................................................................. 17

N.Y. R. Prof'l Conduct 1.7 ........................................................................................... 15

The Bear Stearns Companies LLC, J.P. Morgan Securities LLC, J.P. Morgan Clearing Corp. (collectively, "Bear Stearns") and Alan D. Schwartz, (together with Bear Stearns, "The Bear Stearns Defendants"), respectfully submit this memorandum of law in support of their motion for sanctions based on Roger Wang's failure to appear for deposition.[1]

## PRELIMINARY STATEMENT

Plaintiff's husband, Roger Wang, is the most critical witness in this case. He – not Plaintiff – made the purchases of Bear Stearns stock in March 2008 that are at issue in this case. Only he – not Mrs. Wang – can testify as to why those purchases were made.

Defendants, however, have been denied a fair opportunity to obtain discovery as to the basis for Mr. Wang's sudden decision to purchase more than $3 million worth of Bear Stearns stock in just eight days, all while the company's share price was declining rapidly and just before a run-on-the-bank nearly destroyed the company. Despite diligent efforts to take Mr. Wang's deposition, Defendants have been deliberately frustrated by Plaintiff Mrs. Wang, her husband Mr. Wang, and their lawyer, Mohammed Ghods. The culmination of this vexatious course of conduct occurred on January 13, 2015. After repeated notice, Defendants' counsel traveled to Los Angeles to take Mr. Wang's deposition in a manner consistent with a previously issued order of this Court. Mr. Wang simply failed to appear, and repeated attempts to communicate with the Wangs' attorney Mr. Ghods have been ignored.

The Wangs' refusal to respond or appear is just the latest in a continuing course of bad-faith conduct that began in 2008. Despite making unambiguous unsolicited purchases of

---

[1]   Defendant Deloitte & Touche LLP, is filing a parallel motion for sanctions. The other individuals identified in the caption are either deceased (Alan C. Greenberg) or have been dismissed from this case (Joey Zhou and Garrett Bland).

Bear Stearns shares, the Wangs almost immediately refused to pay. Thus, Bear Stearns was forced to bring a FINRA arbitration against Mrs. Wang to recover monies owed to it.

In the arbitration, Mrs. Wang (represented by Mr. Ghods) refused to comply with *any* of her discovery obligations. As a result, the FINRA panel imposed sanctions, and ultimately ordered her to pay Bear Stearns several million dollars, including attorneys' fees and costs.

Separately, while the arbitration was pending, the Wangs brought two different lawsuits relating to their purchase of Bear Stearns stock. For reasons that have never been explained, Mr. and Mrs. Wang brought functionally identical complaints relating to the same transactions. Both of their complaints were transferred to this Court. Mr. Wang chose to have his complaint consolidated with the class action. Mrs. Wang elected to opt out and proceed separately. The Wangs have never explained why it was appropriate to pursue duplicate claims in this Court relating to a single set of transactions—and their actions unnecessarily multiplied the proceedings. Whatever the motive behind the Wangs' procedural strategies, they cannot be permitted to ignore basic principles of litigation. They are required to provide discovery, and their lawyer is required to communicate with opposing counsel. The Wangs and Mr. Ghods, however, just ignore the rules.

Under the circumstances, the most appropriate sanction is dismissal of Mrs. Wang's complaint. In the alternative, Mr. Wang should be precluded from testifying at trial. At a minimum, Defendants should be awarded the costs and fees incurred in attempting unsuccessfully to take Mr. Wang's deposition in the manner ordered by the Court.

## BACKGROUND

**A.     The Wangs and Their Counsel Mr. Ghods**

H. Roger Wang ("Mr. Wang") and Vivine H. Wang ("Mrs. Wang") have been married for approximately thirty-five years. [Baughman Decl. Ex. 2.] [2] They live together, and keep joint bank accounts.  [Baughman Decl. Ex. 4 ¶ 24; Ex. 29 (Vivine H. Wang Deposition Transcript) at 63:18-64:13).]

Mr. Wang is a real estate mogul whose reported net worth is more than $3 billion. [Baughman Decl. Ex. 3 (Forbes.com profile of H. Roger Wang).]   Mrs. Wang performs administrative tasks for the couple, and often opens accounts in her name for the benefit of both. As she testified, "because he flies a lot, so I'm the one who easy to just contact with brokerage, so under my name.  Sometimes need signature or some need information, it's much easier.  So [we] use my name." [Baughman Decl. Ex. 29 at 19:13-18.]  She also has described Mr. Wang as her "boss." [*Id.* at 71:17-22.]

For at least twenty years, the Wangs have relied on Mohammed K. Ghods, ("Mr. Ghods"), who is currently the named partner of the Ghods Law Firm in Santa Ana, California, for legal services.   Mr. Ghods has represented either Mr. Wang, Mrs. Wang, or both, in numerous lawsuits dating back at least twenty years.  [Baughman Decl. ¶ 7.]  Indeed, Mr. Ghods has actively litigated on behalf of both Mr. and Mrs. Wang in this Court.

**B.     The Wangs' Purchase of Bear Stearns Shares**

In February 2008, Mr. Wang instructed his wife to open a brokerage account at Bear Stearns & Co. ("BS&Co.").  He asked her to fill out the necessary paperwork, but did not

---

[2]   "Baughman Decl." refers to the accompanying Declaration of John F. Baughman in Support of the Bear Stearns Defendants' Motion for Sanctions Based on Roger Wang's Failure to Appear for Deposition, dated January 28, 2015.

tell her why he wanted to open the account. [Baughman Decl. Ex. 29 at 43:3-19 ("Q. Did he tell you why?  A.  No.").]

Between March 6, 2008 and the near-collapse of Bear Stearns on March 14, 2008, Mr. Wang directed the purchase of 150,000 shares of Bear Stearns stock (most of which he did not pay for).  As Mrs. Wang explained:

> Q:   Who first introduced the idea [of purchasing Bear Stearns stock]?
>
> A:   My boss.
>
> Q:   By your boss, you're referring to [whom]?
>
> A:   My husband.

[*Id.* at 71:17-22.] Mrs. Wang also confirmed that Mr. Wang was the final decision-maker for each and every purchase:

> Q:   So your husband makes all the final investment decisions?
>
> A.   Yes . . . . I just follow his instruction.

[*Id.* at 46:17-48:8.]

## C.     The FINRA Arbitration Between Bear Stearns and the Wangs

After the Wangs refused to pay for all of their stock purchases, BS&Co. liquidated their account on March 18, 2008, and filed an arbitration to recover the remaining money owed. [Baughman Decl. Ex. 4 ¶¶ 38-39.]  Mrs.  Wang – represented by Mr. Ghods – refused to participate in the arbitration, and was sanctioned by the FINRA panel for failing to comply with discovery obligations. [Baughman Decl. Ex. 6.][3]  Remarkably, however, in this

---

[3]  The FINRA arbitration was not the first time the Wangs had been accused of evading their discovery obligations.  For example, in *Ladki Network, Inc. v. Hung Roger Wang et al.*, No. 546591 (San Diego Municipal Court, filed Oct. 13, 1992), Mr. Wang's own lawyer (Sergio W. Stevens) filed a motion to withdraw, citing Mr. Wang's failure to respond to discovery requests.  In a publicly filed letter, Mr. Stevens wrote to Mr. Wang: "For over a month this

case, Mrs. Wang has claimed that she was not even aware that the FINRA panel had imposed sanctions. [Baughman Decl. Ex. 29 at 159:6-160:14.]

On the merits, after two days of hearings, the panel awarded BS&Co. a total of $3,048,514.87, including attorneys' fees and costs. [Baughman Decl. Ex. 6.] Mrs. Wang challenged the arbitration award in federal court in California, but the challenge was unsuccessful and judgment was entered in favor of BS&Co. [Baughman Decl. Ex. 8.] The district court also awarded attorneys' fees and costs. [Baughman Decl. Ex. 9.] On appeal, the Ninth Circuit affirmed. [Baughman Decl. Ex. 10.]

## D. The Wangs' Duplicative Suits Against Bear Stearns

After the near-collapse of Bear Stearns in March 2008, Mr. Wang filed a lawsuit against Bear Stearns and several of its employees in Los Angeles County Superior Court, based on his purchases of Bear Stearns stock. [Baughman Decl. Ex. 11.] Mr. Wang's action was removed and transferred to this Court. It was then consolidated with related securities actions under the caption *In re Bear Stearns Cos., Inc. Securities Litigation*, No. 08 M.D.L. 1963 (S.D.N.Y.) (RWS) (the "Securities Class Action"). [Baughman Decl. Ex. 12.]

In his complaint, Mr. Wang alleged that he had directed the purchase of all shares in the BS&Co. account and that he was "the owner" of those shares. [Baughman Decl. Ex. 11 ¶¶ 18-23, 71.] He also alleged that "[a]t all relevant times, [he] intended and understood that any stock orders that he was going to place with Bear Stearns were for him and his family and that he would pay for and have an ownership interest in the same." [*Id.* ¶ 14.]

---

office has attempted to obtain your responses to Discovery . . . . In light that a motion for sanctions would very likely be granted, this places us in a very strained position. This has not been the first time that we have tried to contact you repeatedly without a response on your part." [Baughman Decl. Ex. 5 at 14.]

In 2011, while both Mr. Wang's action and the Securities Class Action were pending before this Court, Mrs. Wang filed suit against Bear Stearns (in federal court in California), basing her allegations on the same stock purchases alleged in Mr. Wang's complaint. [Baughman Decl. Ex. 4.]  Over objection, the MDL Panel transferred Mrs. Wang's action to this Court.  [Doc. No. 32.][4]  On February 6, 2012, this Court granted Mrs. Wang's application to have her case coordinated, rather than consolidated, with the Securities Class Action.  [Doc. No. 53.]

Consistent with Mr. Wang's complaint, Mrs. Wang alleged that it was "Plaintiff's husband" who placed all the orders for the account.  [Baughman Decl. Ex. 4 ¶¶ 27-32.]  She alleged that both she and her husband were the beneficial owners of the account.  [*Id.* ¶ 32 ("the *Wangs* became beneficial owners of 150,000 shares of BSC stock.") (emphasis added).]

E.     **Fact Discovery in the Opt-Out Actions**

The Securities Class Action ultimately settled, and this Court approved the settlement on November 29, 2012.  [Baughman Decl. Ex. 16.]

The Securities Class Action claims administrator received 111 timely requests for exclusion from the settlement class, including one from Mrs. Wang, but none from Mr. Wang. [Baughman Decl. Ex. 16 at 11-13.]  Under the applicable Second Case Management Order, depositions in the opt-out actions were scheduled to be completed by December 10, 2014.[5]

---

[4]  Citations in the form "Doc. No. __" refer to documents filed in this case, 11-cv-5643 (S.D.N.Y.).

[5]  The time period for depositions in the Second Case Management Order, [Baughman Decl. Ex. 17], was automatically stayed pending various motions to dismiss, and therefore extended by the number of days between July 2, 2013 (the date on which the motions to dismiss were filed) and May 22, 2014 (the date on which the stay was lifted).  Accordingly, the deposition deadline in the Second Case Management Order was extended until December 10, 2014.

**F.     Mr. Wang Fails to Appear for His Deposition**

Bear Stearns initially requested deposition dates for Mr. and Mrs. Wang on October 3, 2014. [Baughman Decl. Ex. 18.] Mrs. Wang's deposition occurred on December 3, 2014. [Baughman Decl. Ex. 29.]

With respect to Mr. Wang, however, Bear Stearns got the run-around. Despite having represented Mr. Wang in this Court since 2009, and having represented him specifically on matters relating to the transactions at issue in this case, Mr. Ghods refused to accept service of a deposition subpoena for his long-time client. Indeed, when pressed, he was evasive as to whether he still represented Mr. Wang.

Bear Stearns sought confirmation that Mr. Ghods was authorized to act on behalf of Mr. Wang at least nine times between October 23 and December 8, 2014. There were documented communications on October 23, October 27, October 30, October 31, November 7, November 10, November 29, December 4, and December 8. [Baughman Decl. ¶¶ 28-41.] During this period, Mr. Ghods actively negotiated possible deposition parameters on Mr. Wang's behalf, but also claimed to be awaiting instructions from his "client" on the issue of service. [Baughman Decl. Exs. 20, 22.] It was not until December 9, 2014, that Mr. Ghods finally acknowledged that he was acting as Mr. Wang's counsel in this matter. [Baughman Decl. Ex. 30.]

While all of this was going on, Bear Stearns had pursued a variety of other methods to attempt to obtain Mr. Wang's testimony. First, Bear Stearns attempted to serve Mr. Wang personally at his house. It was met with more evasive tactics. When the process server went to the Wang residence on November 11, 2014, he was first told via intercom that Mr. Wang was inside the house "sleeping." [Baughman Decl. Ex. 21.] Then, Mrs. Wang interrupted and told the process server that Mr. Wang was actually in China. *Id.* When asked when Mr. Wang

would return, Mrs. Wang said that she did not know. *Id.* The process server made additional attempts to serve Mr. Wang personally, but was unsuccessful. As part of his efforts, the process server again asked when Mr. Wang would return from China, and Mrs. Wang said she did not know. *Id.*

Given this stonewalling by the Wangs, Bear Stearns was forced to seek relief from this Court. On November 24, 2014, Bear Stearns asked this Court to order service on Mr. Wang by alternate means. [Doc. No. 101 at 2-3.] This Court granted the application and ordered that service on Mr. Wang by certified mail, as well as by email and certified mail on Mr. Ghods, would be effective. [Doc. No. 102.] Bear Stearns completed service in that manner the same day that the Court's order was issued, November 26, 2014. [Baughman Decl. ¶ 38.] Mr. Ghods wrote to the Court later that same day, acknowledging receipt of the deposition subpoena and requesting an order that Mr. Wang's deposition not go forward in December 2014 but instead be scheduled for January 2015 in Los Angeles, California. [Doc. Nos. 104, 105.]

Upon receipt of the subpoena, Mr. Ghods proffered (but did not file) purported "Objections to Deposition Subpoena" on behalf of Mr. Wang (the "December 9 Objections"). [Baughman Decl. Ex. 30.] These objections were trivial at best, but in an effort to move matters along Bear Stearns promptly re-issued a new subpoena to remedy the supposed "defects" Mr. Ghods had identified. [Baughman Decl. ¶ 44.]

The needless back and forth between October 3 and December 9 brought this matter to the brink of the scheduled close of fact discovery on December 10, 2014. Thus, Bear Stearns was again forced to seek relief, specifically, an order allowing Mr. Wang's deposition to take place after the scheduled close of fact discovery. [*See* Doc. Nos. 114, 116, and 118.] The Wangs, through Mr. Ghods, put forth a frivolous opposition, arguing, for example, that any delay

in Mr. Wang's deposition was attributable to Bear Stearns. Mr. Ghods also asserted that Bear Stearns had not provided "proof of delivery" of a subpoena, even though he had previously represented that he had received the subpoena and informed the court that Mr. Wang would be available to be deposed in January 2015. [*See* Doc. No. 116.] [6] This Court granted Bear Stearns' request to take Mr. Wang's deposition after the close of fact discovery. [Doc. No. 121.]

After the extension was granted, Bear Stearns tried yet again to confer with Mr. Ghods regarding a date for Mr. Wang's deposition. Once more, however, Mr. Ghods refused to confirm any dates. On December 24, 2014, Mr. Ghods wrote to Bear Stearns that he still could not confirm Mr. Wang's availability for specific dates in January. [Baughman Decl. Ex. 38.] Mr. Ghods also emailed – but again did not file – new "Objections" to the deposition subpoena, repeating the same frivolous arguments that this Court had already rejected. [Baughman Decl. Ex. 39.]

In light of Mr. Ghods' history of evasion, and the need to coordinate schedules among multiple defendants and their counsel, Bear Stearns wrote to Mr. Ghods on December 26, 2014 that it could no longer wait for Mr. Ghods to confirm a date. [Baughman Decl. Ex. 40.] Accordingly, Bear Stearns issued an Amended Notice of Deposition to Roger Wang (the "Amended Notice") that set January 13, 2015 as the date for Mr. Wang's deposition, at a location in Los Angeles, California less than three miles from his Beverly Hills residence. [Baughman Decl. Ex. 42.] Bear Stearns served the Amended Notice on Mr. Ghods by email and certified mail, and served a copy on Mr. Wang by certified mail. [Baughman Decl. ¶¶ 53-55.] Certified mail records confirm that the Amended Notice was delivered to Mr. Wang's residence

---

[6]   Mr. Ghods never explained in his opposition why he refused to confirm – for more than two months – that he even represented Mr. Wang; or why he refused to accept service of a subpoena and instead forced Bear Stearns to go through the expense of attempting to serve Mr. Wang personally, and then to seek an order providing for service by alternate means.

on January 2, 2015.  [Baughman Decl. Ex. 43.]  Mr. Ghods never responded to the letter or to the Amended Notice.  [Baughman Decl. ¶¶ 56-58.]

On January 8, 2015, Bear Stearns attempted to follow up with Mr. Ghods by telephone and email to confirm that Mr. Wang would attend the January 13 deposition. [Baughman Decl. ¶¶ 57-58.]  Bear Stearns explained in an email to Mr. Ghods that counsel would be flying from New York to Los Angeles shortly, and "would appreciate the courtesy of a confirmation whether or not Mr. Wang will appear."  [Baughman Decl. Ex. 45.]  Bear Stearns also warned Mr. Ghods that if Mr. Wang failed to appear, Bear Stearns would seek sanctions.  *Id.*

Mr. Ghods responded several hours later that he would "check as soon as possible and let you know."  *Id.*  Bear Stearns never heard anything further from Mr. Ghods.  [Baughman Decl. ¶ 60.]

Bears Stearns' counsel – as well as counsel for co-defendant Deloitte & Touche LLP – flew to Los Angeles for Mr. Wang's deposition.  On the morning of January 13, 2015, Bear Stearns' counsel and Deloitte's counsel went to the noticed site.  Neither Mr. Wang nor Mr. Ghods appeared.  [Baughman Decl. ¶¶ 63-68.]

Bear Stearns has not heard anything at all from Mr. Ghods since January 8, 2015. [Baughman Decl. ¶ 60.]

Bear Stearns has reason to believe that Mr. Wang was in Los Angeles at the time he was scheduled to be deposed because his daughter – a reality television celebrity – posted on her widely-followed social media site several photos of her with Mr. Wang at the Golden Globe Awards late in the evening of January 11, 2015. [Baughman Decl. Exs. 46-48.]

Bear Stearns has incurred attorneys' fees and costs of approximately $100,000.00 as a result of the Wangs' discovery abuses, including for time spent attempting to serve Mr.

Wang, for seeking court approval for service by alternate means, for seeking court approval for an extension of time to depose Mr. Wang, for preparing for Mr. Wang's deposition, for traveling to Los Angeles, and for preparing this motion for sanctions.  [Baughman Decl. ¶ 69.]

## LEGAL STANDARD

"Whether exercising its inherent power, or acting pursuant to Rule 37, a district court has wide discretion in sanctioning a party for discovery abuses." *Reilly v. Natwest Mkts. Grp. Inc.*, 181 F.3d 253, 267 (2d Cir. 1999); *see also S. New England Tel. Co. v. Global NAPs Inc.*, 624 F.3d 123, 143 (2d Cir. 2010) ("[W]e review all aspects of a District Court's decision to impose sanctions for abuse of discretion[.]") (quotations omitted).

Federal Rule of Civil Procedure 37(d) authorizes sanctions whenever "a party, or a party's officer, director or managing agent – or a person designated under Rule 30(b)(6) or 31(a)(4) – fails, after being served with proper notice, to appear for that person's deposition[.]" *See Agiwal v. Mid Island Mortgage Corp.*, 555 F.3d 298, 302 (2d Cir. 2009) ("[A] district court may dismiss an action if a party fails to attend a deposition of that party."). Rule 37(d)(3) provides that the sanctions available are those set forth in Rule 37(b)(2), including "dismissing the action in whole or in part[.]" *See* Fed. R. Civ. P. 37(b)(2)(A)(v).

In addition to this Court's authority under Rule 37, district courts have inherent power to regulate litigation and sanction parties for conduct that is undertaken "in bad faith, vexatiously, wantonly, or for oppressive reasons" – including through the sanction of dismissal. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-49 (1991); *Link v. Wabash R.R.*, 370 U.S. 626, 629-631 (1962).  A court may sanction bad-faith conduct through its inherent authority even when that conduct could also be sanctioned by the Federal Rules or by statute. *Chambers*, 501 U.S. at 50.  Sanctions pursuant to the Court's inherent power require a finding of bad faith, which can be shown by "clear evidence" that the challenged actions were undertaken for "harassment or delay

or . . . other improper purposes." *DLC Mgm't Corp. v. Town of Hyde Park*, 163 F.3d 124, 136 (2d Cir. 1998).

Further, this Court has authority under 28 U.S.C. § 1927 to impose monetary sanctions on an attorney whose bad-faith conduct "multiplies the proceedings in any case unreasonably and vexatiously." 28 U.S.C. § 1927. An attorney sanctioned under § 1927 may be required to pay the "excess costs, expenses, and attorneys' fees reasonably incurred" by the opposing party. *Id.*

In order to select the appropriate sanction, the district court "is free to consider the full record in the case." *S. New England Tel. Co.*, 624 F.3d at 144 (quotations omitted).

## ARGUMENT

### I.
### PLAINTIFF AND MR. GHODS SHOULD BE SANCTIONED

Sanctions are necessary because the Wangs and their counsel repeatedly and willfully obstructed Bear Stearns' efforts to depose Mr. Wang. *First*, Mr. Ghods refused to accept service of any subpoena. *Second*, he refused to acknowledge that he represented Mr. Wang, forcing Bear Stearns to make a motion for alternate service. *Third*, after dropping the ruse that he did not represent Mr. Wang, Mr. Ghods served "Objections" to the deposition subpoena that manufactured additional excuses that were entirely frivolous. *Fourth*, Mr. Ghods refused to confirm any dates when Mr. Wang would be available, and, after having run out the clock on the close of fact discovery, opposed Bear Stearns' request to take Mr. Wang's deposition after the cut-off date. *Fifth,* when Bear Stearns noticed Mr. Wang's deposition for January 13, 2015 (and told Mr. Ghods that counsel were flying from New York to Los Angeles for the deposition), Mr. Wang willfully refused to appear, or even warn Bear Stearns that he

would not appear.[7]  The Wangs' and Mr. Ghods' bad-faith tactics have prejudiced Bear Stearns' ability to defend itself, and have needlessly multiplied its legal fees and expenses.  Cases such as this are precisely why courts have the power to impose sanctions.

## A.   Sanctions Against the Plaintiff Mrs. Wang Are Necessary

Although it was Mr. Wang who failed to appear for his deposition, Mrs. Wang should bear the consequences as well.  The fact that she, not her husband, is the formal plaintiff here is a technicality arising from the Wangs' pointless multiplicity of lawsuits.  What is clear is that they were working together in connection with the trades at issue in this case and that Mrs. Wang's claims are based entirely on Mr. Wang's actions.

While Rule 37(d) applies on its face only to a "party, a party's officer, director, or managing agent[,] or a person designated under Rule 30(b)(6) or 31(a)(4)," the list is not exhaustive.  Courts have not hesitated to impose sanctions on a party when a person who is the "alter ego" of a party or under the party's "control" fails to appear for deposition.  For example, in *Flaks v. Koegel*, 504 F.2d 702 (2d Cir. 1974), the plaintiff scheduled the deposition of a non-party corporation owned by the individual defendant (Koegel) and his wife.  No corporate representative appeared.  The district court imposed sanctions on Koegel under Rule 37(d), and Koegel appealed.  The Second Circuit found that "[i]n light of the virtual identity of interest between Koegel and [the corporation] and Koegel's position of complete control over the corporation, the failure of [the corporation] to appear at the deposition could properly be

---

[7]   Mr. Wang's failure to appear is not excused by Mr. Ghods' service of "Objections" to the deposition subpoena.  Rule 37(d)(2) makes clear that failure to appear for a deposition "is not excused on the ground that the discovery sought was objectionable, unless the party failing to act has a pending motion for a protective order under Rule 26(c)."  *See* Fed. R. Civ. P. 37(d)(2).  Since the Wangs never filed a motion for a protective order, Mr. Wang had no excuse not to appear for his deposition.

considered to be the failure of the party Koegel to appear at his deposition." *Id.* at 710 n.6 (citations omitted).

Similarly, in *Magee v. Paul Revere Life Insurance Co.*, 178 F.R.D. 33 (E.D.N.Y. 1998), the district court sanctioned the plaintiff for the failure of his treating physician and designated expert witness – Dr. Tassy – to appear for deposition. Rejecting the plaintiff's argument that a party could not be sanctioned for a non-party's failure to appear, the Court explained: "While Rule 45 may set forth the exclusive remedy for sanctioning *Dr. Tassy* for his failure to appear at the depositions, it does not follow that the plaintiff may not also be sanctioned [under Rule 37(d)] for his failure to produce this key witness." 178 F.R.D. at 38; *see also PrecisionFlow Techs., Inc. v. CVD Equip. Corp.*, 198 F.R.D. 33, 38 (N.D.N.Y. 2000) ("[S]anctions may be imposed upon a party or its counsel under Rule 37(d) for the nonappearance of a witness who is not an officer, director or managing agent or had been designated as a representative of a party . . . if the party assumed responsibility for the appearance of the witness at the deposition."), *aff'd* 140 F. Supp.2d 195 (N.D.N.Y. 2001).

Here, Mr. Wang's failure to appear for his deposition is tantamount to a party's failure to appear under Rule 37(d). From the beginning, he and his wife have acted as each other's alter egos or agents. Mr. Wang instructed Mrs. Wang to open a brokerage account, and she filled out the necessary paperwork. She opened the account in her name, but he was the one who actually placed the stock orders (and allegedly relied on purported misstatements). [Baughman Decl. Ex. 4 ¶¶ 25-32.] They both allege that the shares were owned jointly. [*See id.* ¶ 32 ("the Wangs became beneficial owners of 150,000 shares of BSC stock."; *and* Baughman Decl. Ex. 11 ¶ 14 ("Plaintiff intended and understood that any stock orders that he was going to place with Bear Stearns were for him and his family[.]").]

Under both California and New York law, a spouse's actions may bind the other spouse under an implied agency theory when the circumstances suggest that one either has the authority to bind the other or where one acquiesces to the other's actions. *See Nalaskowski v. Golowicz*, 65 N.Y.S.2d 718, 720 (N.Y. Sup. Ct. 1946); *Lovetro v. Steers*, 234 Cal. App.2d 461, 475-77 (Ct. App. 1965) (finding that wife was bound by her husband's acts where the husband "took care of all their business affairs during the marriage" and the wife "knew of the nature of the [transactions]" and was on notice of deficient payments). While "an agency cannot be implied from the marriage relation alone[,] . . . much less evidence is required to establish a principal and agent relationship between husband and wife than between nonspouses." *Lovetro*, 234 Cal. App.2d at 475. Given that the Wangs have been married for thirty-five years, live together, use joint bank accounts, worked in concert to make the trades at issue in the case, and are represented by the same attorney in litigation about those trades, it is clear that they are each other's agents for purposes of this action.[8] Indeed, it would be anomalous – and unjust – if Mrs. Wang could claim that Mr. Wang was her agent for purposes of his alleged reliance on Bear Stearns' purported misstatements or omissions, but not for purposes of his failure to appear at a deposition related to the same transaction.[9]

## B.   Sanctions Against Mr. Ghods Are Appropriate

Sanctions are also appropriate against Mr. Ghods for his role in the Wangs' willful evasion of discovery.

---

[8]   Under the applicable California or New York rules on professional responsibility, the Wangs would have had to waive any conflict to both be represented by Mr. Ghods. *See* Cal. R. Prof'l Conduct 3-310; N.Y. R. Prof'l Conduct 1.7.

[9]   The conduct of Mr. Ghods, an agent of both Mr. and Mrs. Wang, is also attributable to both his clients. *See Link v. Wabash R.R.*, 370 U.S. 626, 633-34 (1962) ("[In] our system of representative litigation, . . . each party is deemed bound by the acts of his lawyer-agent and is considered to have 'notice of all facts, notice of which can be charged upon the attorney.'" (quoting *Smith v. Ayer*, 101 U.S. 320, 236 (1880))).

To impose sanctions on an attorney – pursuant either to 28 U.S.C. § 1927 or the Court's inherent authority – the Court must make a finding of conduct that constitutes, or is akin to, bad faith. *Gollomp v. Spitzer*, 568 F.3d 355, 368 (2d Cir. 2009). The attorney must be provided notice and an opportunity to be heard, although no evidentiary hearing is required. *Id.* Courts have imposed sanctions where an attorney unreasonably fails to produce a deponent for months, or otherwise delays discovery and imposes excess costs on the other side. For example, in *Guifu Li v. A Perfect Day Franchise, Inc.*, 281 F.R.D. 373, 396 (N.D. Cal. 2012), the court ordered defense counsel to pay attorneys' fees "[a]fter failing to produce [a deponent], despite a court order, for over six months." In *Baker v. Urban Outfitters*, 431 F. Supp.2d 351, 366 (S.D.N.Y. 2006), the court imposed § 1927 sanctions against an attorney who refused to produce documents on grounds that had no merit, and then, after the court ordered production, failed to produce the documents until the last day of discovery, requiring discovery to be re-opened.

Here, Mr. Ghods' litigation tactics are sanctionable. Mr. Ghods refused to accept a subpoena on behalf of his longstanding client. He refused even to confirm that he represented Mr. Wang, when in fact Mr. Ghods has represented Mr. Wang in this case, and dozens of others, and now admits that he does represent him in this case. Over the course of the last four months, Mr. Ghods has delayed in responding, or failed to respond to, calls, emails and letters, and never confirmed a date for Mr. Wang's deposition. [*See, e.g.*, Baughman Decl. ¶¶ 41, 50, 59-60.] After Mr. Ghods succeeded in delaying until the end of the fact discovery period, he then opposed (with no colorable basis) Bear Stearns' request to take Mr. Wang's deposition after the close of fact discovery. Finally, after Bear Stearns noticed Mr. Wang's deposition for January 13, 2015, and asked Mr. Ghods as a professional courtesy whether Mr. Wang would in fact appear – to save Bear Stearns' counsel the trip across the country – Mr. Ghods replied that he

would "check" and let Bear Stearns know "as soon as possible." Despite his representation, that never happened. [Baughman Decl. ¶ 60.] Mr. Ghods never followed up, and has not contacted Bear Stearns since. *Id.*

> Mr. Ghods' conduct is contrary to Local Civil Rule 26.4(a), which provides:
>
> Counsel are expected to cooperate with each other, consistent with the interests of their clients, in all phases of the discovery process and to be courteous in their dealings with each other, including in matters relating to scheduling and timing of various discovery procedures.

Mr. Ghods ignored this rule, and his conduct was improper.

## II.
## DISMISSAL IS THE MOST APPROPRIATE SANCTION

Dismissal of an action is necessary and appropriate where a litigant has acted with "willfulness, bad faith, or any fault." *Agiwal*, 555 F.3d at 302-03 (affirming dismissal of action where plaintiff failed to appear for deposition); *see also Cine Forty-Second St. Theatre v. Allied Artists Pictures*, 602 F.2d 1062, 1068 (2d Cir. 1979) ("[C]ourts should not shrink from imposing harsh sanctions where, as in this case, they are clearly warranted."). A standard that "inhibit[ed] the imposition of the harsher sanctions authorized by Rule 37 [] would turn the rule into a 'paper tiger.'" *Sieck v. Russo*, 869 F.3d 131, 134 (2d Cir. 1989) (quotation omitted).

Courts around the country have dismissed actions where a party or someone under the party's control fails to appear for deposition. *See, e.g.*, *Al Barnett & Son, Inc. v. Outboard Marine Corp.*, 611 F.2d 32, 35 (3d Cir. 1979) (dismissing case for failure to attend deposition), *abrogated on other grounds, Alexander v. Gino's Inc.*, 621 F.2d 71 (3d Cir. 1980); *Pioche Mines Consol., Inc. v. Dolman*, 333 F.2d 257, 269 (9th Cir. 1964) (entering default judgment as sanction for failure to attend deposition); *Xstrata Canada Corp. v. Advanced Recycling Tech., Inc.*, No. 1:08–CV–1366, 2010 WL 1539722, at *2 (N.D.N.Y. Apr. 19, 2010) (same).

In *National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 643 (1976), the Supreme Court affirmed the dismissal of an action for a party's failure to respond to interrogatories.   The Supreme Court explained that the sanction of dismissal for discovery evasion serves "not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent." *Id.*; *see also Agiwal*, 555 F.3d at 303.

In considering the appropriateness of dismissal or other sanctions for discovery abuse, the Second Circuit has instructed district courts to consider four non-exclusive factors: "(1) the willfulness of the non-compliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance, and (4) whether the noncompliant party had been warned of the consequences of noncompliance." *S. New England Tel. Co.*, 624 F.3d at 144 (citations omitted).  "[T]hese factors are not exclusive, and they need not each be resolved against the [sanctioned] party." *SEC v. Razmilovic*, 738 F.3d 14, 25 (2d Cir. 2013).

Here, all four factors weigh strongly in favor of dismissal.

*First,* the Wangs and Mr. Ghods have willfully evaded and obstructed discovery. They have persisted in frustrating discovery despite having been sanctioned in the FINRA arbitration, and despite two orders from this Court making allowance for Mr. Wang's deposition, first permitting service by alternate means and second allowing his deposition to take place after the close of fact discovery.  Their course of conduct is strong evidence of their willfulness and bad faith.  *See, e.g., Handwerker v. AT&T Corp.*, 211 F.R.D. 203, 209 (S.D.N.Y. 2002) ("[P]ersistent refusal to comply with a discovery order presents sufficient evidence of willfulness, bad faith or fault.") (quotation omitted).

*Second*, no lesser sanction than dismissal is appropriate given the Wangs' continued pattern of misconduct and the prejudice to Defendants from being unable to depose the person who made the investment decisions at issue in this case.   Mr. Wang's testimony is critical.  No one else – certainly not Mrs. Wang – can testify as to why Mr. Wang decided to purchase shares of Bear Stearns in March 2008.  To defend itself, particularly with respect to a fraud claim that requires proof of actual reliance, Bear Stearns must know exactly what alleged misstatements or omissions Mr. Wang purports to have relied on.[10]

Scheduling extensions will not cure the problem because the discovery period – which was already extended by Court order – is now closed, and because there is no indication that a further extension would result in Mr. Wang actually appearing for his deposition.  Indeed, lesser sanctions cannot be imposed because they have *proven* ineffective in this very dispute. The FINRA arbitration panel imposed sanctions on the Wangs for failing to comply with their discovery obligations in that proceeding.  Those sanctions did nothing to prevent similar conduct here.   Indeed, those sanctions were so ineffective that Mrs. Wang was *not even aware* that sanctions had been imposed.  [Baughman Decl. Ex. 29 at 159:6-160:14.]  Purely monetary sanctions would also be irrelevant to the Wangs in light of their well-documented wealth.

*Third*, with respect to duration, the Wangs' obstructionism has persisted for months, if not years.  FINRA imposed its discovery sanctions in 2009 – over five years ago.  In

---

[10]  Mrs. Wang's complaint includes, at Count Four, a claim for fraud under California common law.  California law, unlike federal securities law, does not recognize the "fraud-on-the-market" presumption of reliance. *See Mirkin v. Wasserman*, 858 P.2d 568, 772-75 (Cal. 1993).  For purposes of her California common-law fraud claim, Mrs. Wang must prove that she, or her agent, actually relied on a misrepresentation made by Bear Stearns. *See, e.g., Grinnell v. Charles Pfizer & Co.*, 274 Cal. App.2d 424, 441 (Ct. App. 1969) (holding that plaintiffs, who had not heard or read misrepresentations of pharmaceutical manufacturer, were allowed to sue manufacturer for breach of express warranty because the doctors who administered the drugs had relied on the manufacturer's representation and acted as the plaintiffs' agents).

this action, the Wangs have been on notice since at least October 3, 2014 that Bear Stearns was seeking to depose Mr. Wang, but have continuously obstructed all of Bear Stearns' good-faith efforts to take his deposition.  *See Handwerker*, 211 F.R.D. at 210-11 (noting that noncompliance that lasted months weighs in favor of Rule 37 sanctions).

*Fourth*, while notice is not a prerequisite for Rule 37 sanctions, the Wangs have been on ample notice that non-compliance with discovery would result in sanctions.  Not only had they been sanctioned in the earlier FINRA arbitration, but Bear Stearns also specifically warned the Wangs that it would seek sanctions if Mr. Wang failed to appear for his deposition. [Baughman Decl. Ex. 45.]  It is indisputable that Mr. Ghods received the warning, because he responded to Bear Stearns' email that same day.  *Id.*  Of course, his response did not indicate whether Mr. Wang would actually appear, which would have saved Bear Stearns' counsel from having to fly across the country for a deposition that would not and did not take place.

Dismissal is the most meaningful and appropriate sanction.

## A.   In the Alternative, Mr. Wang Should Be Precluded From Testifying at Trial

By far the most appropriate sanction is to dismiss this action in its entirety.  Any lesser sanction would prejudice Defendants by forcing them to litigate this case without discovery into Mr. Wang's reasons for purchasing Bear Stearns shares.  But some remedy is necessary, and, at a minimum, if this Court were to decide not to dismiss this action, it should preclude Mr. Wang from testifying at trial.  Bear Stearns would be seriously prejudiced if Plaintiff could introduce Mr. Wang's testimony at trial after Defendants were denied any opportunity to take his deposition.

Rule 37 expressly provides that preclusion is an available sanction for a party's failure to appear for a deposition.  *See* Fed. R. Civ. P. 37(b)(2)(A)(ii).  Courts in this Circuit routinely preclude testimony when parties, or witnesses acting on behalf of parties, fail to appear

for depositions. *See, e.g.*, *Reilly*, 181 F.3d at 269 ("[W]e have little difficulty in concluding that barring [defendant's employees] Adams and Letzler from testifying [as to designated subjects] . . . was proper."); *Magee*, 178 F.R.D. at 38-39 (precluding plaintiff's physician from testifying at trial and noting that "the sanction was not merely warranted, but virtually required."). In *Koch v. Pechota*, this Court precluded plaintiff from introducing her own testimony at trial where she had failed to complete her deposition. *Koch v. Pechota*, 10-cv-9152, 2013 WL 5996061 at *4-5 (S.D.N.Y. Nov. 8, 2013) (Sweet, J.) (Plaintiff "will not testify unless she completes her deposition. I have said that before."); *see also id.*, 2013 WL 3892827, at *10 (July 25, 2013) (Sweet, J.) ("I just don't think that she can refuse to be deposed and then walk in and testify.").

Courts in this Circuit consider several factors in deciding whether to preclude testimony, including: "(1) the party's explanation for the failure to comply with the discovery order; (2) the importance of the testimony of the precluded witness; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance." *Reilly*, 181 F.3d at 269 (citations omitted). Here, all these factors weigh strongly in favor of precluding Mr. Wang's testimony: the Wangs have no good explanation – indeed no explanation *at all* – for Mr. Wang's failure to appear. Mr. Wang is *the* critical witness in this case. Bear Stearns will be severely prejudiced by not being able to depose him before trial. And fact discovery – which has already been extended once to allow for his bad conduct – is now closed.

### III.
### BEAR STEARNS IS ENTITLED TO ATTORNEYS' FEES AND COSTS

In addition to the sanctions described above, the Court should also order Plaintiff and Mr. Ghods to reimburse the attorneys' fees and expenses Bear Stearns has had to incur to cope with their discovery misconduct.

Where a party fails to appear for a deposition, Rule 37(d) *requires* cost-shifting: "the court must require the party failing to act, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by that failure." Fed. R. Civ. P. 37(d)(3). Cost-shifting is excused only where "the failure [to appear] was substantially justified or other circumstances make an award of expenses unjust." *Id.*; *John Wiley & Sons, Inc. v. Book Dog Books, LLC*, 298 F.R.D. 145, 148 (S.D.N.Y. 2014). The noncompliant party bears the burden of showing that his failure to comply was justified or that an award of expenses would be unjust. *John Wiley*, 298 F.R.D. at 148.

Under Rule 37, a party's failure to comply with discovery is only substantially justified – and thus excused from cost-shifting – if "there was a genuine dispute or if reasonable people could differ as to the appropriateness of the contested action." *Underdog Trading L.L.C. v. Verizon Servs. Corp.*, 273 F.R.D. 372, 377 (S.D.N.Y. 2011) (quotation omitted); *see also PrecisionFlow Techs.*, 140 F. Supp.2d at 200 (holding that counsel's refusal to tell opposing counsel that he had instructed deponents not to appear was "combative in nature" and not substantially justified).

Here, the Wangs and Mr. Ghods have not provided – and cannot provide – any justification for Mr. Wang's failure to appear at his deposition, let alone a substantial justification. Even after Bear Stearns informed Mr. Ghods that counsel were flying from New York to Los Angeles, Mr. Ghods refused to say whether or not Mr. Wang would appear. Nor did Mr. Ghods seek a protective order or dispute that the deposition had been properly noticed for January 13, 2015. Instead, he actually undertook to confirm whether Mr. Wang would appear, but completely failed to do so.

As a result of the Wangs' and Ghods' misconduct, Bear Stearns has incurred approximately $100,000.00 in attorneys' fees and costs. These fees and costs include, *inter alia*, time spent attempting to serve Mr. Wang; seeking court approval for service by alternate means; seeking court approval for an extension of time to depose Mr. Wang; preparing for Mr. Wang's deposition; traveling to Los Angeles for the deposition he did not attend; and preparing this motion for sanctions. These fees were all reasonable and necessary, and should be imposed on Plaintiff under Rule 37(d). *See Vorcom Internet Servs., Inc. v. L&H Eng'g & Design LLC*, No. 12 CV 2049 VB, 2014 WL 116130, at *6 (S.D.N.Y. Jan. 13, 2014) (holding that reasonable attorneys' fees under Rule 37 include time spent preparing for a deposition and motions to compel a deposition); *John Wiley*, 298 F.R.D. at 147 (holding that reasonable attorneys' fees under Rule 37 include attorney travel and lodging expenses, court reporter fees, and costs incurred seeking sanctions).

Further, Bear Stearns' attorneys' fees and costs should also be imposed on Mr. Ghods pursuant to 28 U.S.C. § 1927 for "multipl[ying] the proceedings . . . unreasonably and vexatiously." Mr. Ghods' liability should be joint and several with the Plaintiff. *See Thomas E. Hoar, Inc. v. Sara Lee Corp.*, 882 F.2d 682, 686-88 (2d Cir. 1989) (affirming joint and several liability of party and its counsel for monetary sanctions awarded under Rule 37), *abrogated on other grounds, Cunningham v. Hamilton Cnty., Ohio*, 527 U.S. 198 (1999).

If this Court grants the Bear Stearns Defendants' proposed order for sanctions, Bear Stearns will submit forthwith contemporaneous time records and other documentation detailing its requested attorneys' fees and costs.

## CONCLUSION

· For the foregoing reasons, this Court should grant the Bear Stearns Defendants'
motion for sanctions, dismiss the complaint with prejudice, and order Plaintiff and Mr. Ghods to
pay Bear Stearns' attorneys' fees and costs.

Dated: January 29, 2015
New York, New York

PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP

By: _____
    Brad S. Karp
    John F. Baughman
    Jessica S. Carey
    Jonathan Hurwitz

1285 Avenue of the Americas
New York, New York 10019-6064
Tel.   (212) 373-3000
Fax   (212) 757-3990
Email: jbaughman@paulweiss.com

*Attorneys for Defendants The Bear Stearns Companies
LLC, J.P. Morgan Securities LLC, J.P. Morgan
Clearing Corp.*

SKADDEN, ARPS, SLATE, MEAGHER
& FLOM LLP

By: _____
Jay B. Kasner (jay.kasner@skadden.com)
Susan Saltzstein (susan.saltzstein@skadden.com)
4 Times Square
New York, New York 10036-6522
Tel: (212)735-3000
Fax: (212)735-2000

*Attorneys for Defendant Alan D. Schwartz*

24