UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------X

IN RE BEAR STEARNS COMPANIES, INC.
SECURITIES, DERIVATIVE, AND ERISA                08 MDL 1963
LITIGATION

This Document Relates To:

    Securities Action, 08 Civ. 2793

------------------------------------------X

VIVINE H. WANG,

                  Plaintiff,                11 Civ. 5643

    -against-                                   OPINION

BEAR STEARNS COMPANIES LLC; J.P. MORGAN
SECURITIES LLC; J.P. MORGAN CLEARING CORP.;
DELOITTE & TOUCHE LLP; ALAN D. SCHWARTZ;
ALAN C. GREENBERG; JOEY ZHOU; and GARRETT
BLAND,

                  Defendants.

------------------------------------------X

**Sweet, D. J.**

The defendants Bear Stearns Companies LLC, J.P. Morgan Securities LLC, J.P. Morgan Clearing Corp. (collectively, "Bear Stearns") and Alan D. Schwartz (together with Bear Stearns, "The Bear Stearns Defendants") and defendant Deloitte & Touche LLP ("Deloitte") collectively the ("Defendants") have moved pursuant to Rule 37(d), F. R. Civ. P. for sanctions based on the failure of H. Roger Wang ("Mr. Wang") to appear for deposition in this securities action brought by plaintiff Vivine H. Wang ("Mrs. Wang" or the "Plaintiff").  Based on the facts and conclusions set forth below, Defendants' motions are granted, sanctions are imposed including the dismissal of the Plaintiff's complaint and the award of costs and attorneys' fees in connection with the failure of Wang to appear for his deposition.

**Prior Proceedings and Facts**

Mr. Wang and Mrs. Wang have been married for approximately thirty-five years.  Declaration of John F. Baughman in Support of the Bear Stearns' Motion for Sanctions, dated January 28, 2015 (hereinafter "Baughman Decl.") Ex. 2.

1

They live together, and keep joint bank accounts.  Baughman
Decl. Ex. 4 ¶ 24; Ex. 29 at 63:18-64:13.


Mr. Wang is a real estate mogul whose reported net
worth is more than $3 billion.  Baughman Decl. Ex. 3.  Mrs. Wang
performs administrative tasks for the couple, and often opens
accounts in her name for the benefit of both.  Baughman Decl.
Ex. 29 at 19:13-18.  As she testified, "because he flies a lot,
so I'm the one who easy to just contact with brokerage, so under
my name.  Sometimes need signature or some need information,
it's much easier.  So [we] use my name."  She also has described
Mr. Wang as her "boss."  Id. at 71:17-22.


For at least twenty years, the Wangs have relied on
Mohammed K. Ghods, ("Mr. Ghods"), who is currently the named
partner of the Ghods Law Firm in Santa Ana, California, for
legal services.  See generally Declaration of Mohammed K. Ghods
dated February 5, 2015 (hereinafter "Ghods Decl.").  Mr. Ghods
has represented either Mr. Wang, Mrs. Wang, or both, in numerous
lawsuits and has litigated on behalf of both Mr. and Mrs. Wang
in this Court.  Baughman Decl. ¶ 7.

In February 2008, Mr. Wang instructed his wife to open a brokerage account at Bear Stearns & Co. ("BS&Co."). He asked her to fill out the necessary paperwork, but did not tell her why he wanted to open the account. Baughman Decl. Ex. 29 at 43:3-19. Between March 6, 2008 and the near-collapse of Bear Stearns on March 14, 2008, Mr. Wang directed the purchase of 150,000 shares of Bear Stearns stock (most of which he did not pay for). As Mrs. Wang explained:

Q: Who first introduced the idea [of purchasing Bear Stearns stock]?

A: My boss.

Q: By your boss, you're referring to [whom]?

A: My husband.

Id. at 71:17-22. Mrs. Wang also confirmed that Mr. Wang was the final decision-maker for each purchase:

Q: So your husband makes all the final investment decisions?

A. Yes . . . . I just follow his instruction.

Id. at 46:17-48:8.

After the Wangs refused to pay for all of their stock purchases, BS&Co. liquidated their account on March 18, 2008 and filed an arbitration to recover the remaining money owed. Baughman Decl. Ex. 4 ¶¶ 38-39.  Mrs. Wang, represented by Mr. Ghods, refused to participate in the arbitration and was sanctioned by the FINRA panel for failing to comply with discovery obligations.  Baughman Decl. Ex. 6.  Mrs. Wang testified that she was not even aware that the FINRA panel had imposed sanctions.  Baughman Decl. Ex. 29 at 159:6-160:14.

On the merits, after two days of hearings, the panel awarded BS&Co. a total of $3,048,514.87, including attorneys' fees and costs.  Baughman Decl. Ex. 6.  Mrs. Wang challenged the arbitration award in federal court in California, but the challenge was unsuccessful and judgment was entered in favor of BS&Co.  Baughman Decl. Ex. 8.  The district court also awarded attorneys' fees and costs.  On appeal, the Ninth Circuit affirmed.  Baughman Decl. Ex. 10.

After the near-collapse of Bear Stearns in March 2008, Mr. Wang filed a lawsuit against Bear Stearns and several of its employees in Los Angeles County Superior Court, based on his purchases of Bear Stearns stock.  Baughman Decl. Ex. 11.  Mr.

4

Wang's action was removed and transferred to this Court.  It was
then consolidated with related securities actions under the
caption In re Bear Stearns Cos., Inc. Securities Litigation, No.
08 M.D.L. 1963 (S.D.N.Y.) (RWS) (the "Securities Class Action").
Baughman Decl. Ex. 12.

        In his complaint, Mr. Wang alleged that he had
directed the purchase of all shares in the BS&Co. account and
that he was "the owner" of those shares.  Baughman Decl. Ex. 11
¶¶ 18-23, 71.  He also alleged that "[a]t all relevant times,
[he] intended and understood that any stock orders that he was
going to place with Bear Stearns were for him and his family and
that he would pay for and have an ownership interest in the
same."  Id. ¶ 14.

        In 2011, while both Mr. Wang's action and the
Securities Class Action were pending before this Court, Mrs.
Wang filed suit against Bear Stearns in federal court in
California, basing her allegations on the same stock purchases
alleged in Mr. Wang's complaint.  Baughman Decl. Ex. 4.  Over
objection, the MDL Panel transferred Mrs. Wang's action to this
Court.  On February 6, 2012, this Court granted Mrs. Wang's

application to have her case coordinated, rather than
consolidated, with the Securities Class Action.

Consistent with Mr. Wang's complaint, Mrs. Wang
alleged that it was "Plaintiff's husband" who placed all the
orders for the account.  Baughman Decl. Ex. 4 ¶¶ 27-32.  She
alleged that both she and her husband were the beneficial owners
of the account.  Id.  ¶ 32.  The Securities Class Action
ultimately settled, and this Court approved the settlement on
November 29, 2012.

The Securities Class Action claims administrator
received 111 timely requests for exclusion from the settlement
class, including one from Mrs. Wang, but none from Mr. Wang.
Baughman Decl. Ex. 16 at 11-13.  Under the applicable Second
Case Management Order, depositions in the opt-out actions were
scheduled to be completed by December 10, 2014.

Bear Stearns initially requested deposition dates for
Mr. and Mrs. Wang on October 3, 2014.  Baughman Decl. Ex. 18.
Mrs. Wang's deposition took place on December 3, 2014.  Baughman
Decl. Ex. 29.

Despite having represented Mr. Wang in this Court
since 2009, and having represented him specifically on matters
relating to the transactions at issue in this case, Mr. Ghods
refused to accept service of a deposition subpoena for Mr. Wang
and was evasive as to whether he still represented him.

Bear Stearns sought confirmation that Mr. Ghods was
authorized to act on behalf of Mr. Wang at least nine times
between October 23 and December 8, 2014.  There were documented
communications on October 23, October 27, October 30, October
31, November 7, November 10, November 29, December 4, and
December 8.  Baughman Decl. ¶¶ 28-41.  During this period, Mr.
Ghods actively negotiated possible deposition parameters on Mr.
Wang's behalf, but also claimed to be awaiting instructions from
his "client" on the issue of service.  Baughman Decl. Exs. 20,
22.  On December 9, 2014, Mr. Ghods finally acknowledged that he
was acting as Mr. Wang's counsel in this matter.  Baughman Decl.
Ex. 30.

Bear Stearns pursued a variety of other methods to
attempt to obtain Mr. Wang's testimony.  First, Bear Stearns
attempted to serve Mr. Wang personally at his house.  It was met
with more evasive tactics.  When the process server went to the

7

Wang residence on November 11, 2014, he was first told via intercom that Mr. Wang was inside the house "sleeping." Baughman Decl. Ex. 21.  Then, Mrs. Wang interrupted and told the process server that Mr. Wang was actually in China.  Id.  When asked when Mr. Wang would return, Mrs. Wang said that she did not know.  Id.  The process server made additional attempts to serve Mr. Wang personally, but was unsuccessful.  Id.  As part of his efforts, the process server again asked when Mr. Wang would return from China, and Mrs. Wang said she did not know. Id.

On November 24, 2014, Bear Stearns south an order for service on Mr. Wang by alternate means.  The application was granted and service on Mr. Wang ordered by certified mail, as well as by email and certified mail on Mr. Ghods was approved. Bear Stearns completed service in that manner the same day that the Court's order was issued, November 26, 2014.  Baughman Decl. ¶ 38.  Mr. Ghods wrote to the Court later that same day, acknowledging receipt of the deposition subpoena and requesting an order that Mr. Wang's deposition not go forward in December 2014 but instead be scheduled for January 2015 in Los Angeles, California.

Upon receipt of the subpoena, Mr. Ghods proffered (but did not file) purported "Objections to Deposition Subpoena" on behalf of Mr. Wang (the "December 9 Objections"). Baughman Decl. Ex. 30. Bear Stearns promptly re-issued a new subpoena to remedy the supposed "defects" Mr. Ghods had identified. Baughman Decl. ¶ 44.

The communications between counsel from October 3 to December 9 brought this matter to the brink of the scheduled close of fact discovery on December 10, 2014. Bear Stearns served Mr. Wang on December 10, 2014, in a manner specifically authorized by this Court. Neither Plaintiff nor Mr. Wang took any action in any court to oppose or quash that subpoena. Bear Stearns sought an order allowing Mr. Wang's deposition to take place after the scheduled close of fact discovery. The Wangs, through Mr. Ghods, opposed, arguing, that any delay in Mr. Wang's deposition was attributable to Bear Stearns. Mr. Ghods also asserted that Bear Stearns had not provided "proof of delivery" of a subpoena, even though he had previously represented that he had received the subpoena and informed the court that Mr. Wang would be available to be deposed in January 2015. Bear Stearns' request to take Mr. Wang's deposition after the close of fact discovery was granted.

After the extension was granted, Bear Stearns tried again to confer with Mr. Ghods regarding a date for Mr. Wang's deposition.  Mr. Ghods refused to confirm any dates.  On December 24, 2014, Mr. Ghods wrote to Bear Stearns that he still could not confirm Mr. Wang's availability for specific dates in January.  Baughman Decl. Ex. 38.  Mr. Ghods also emailed - but again did not file new "Objections" to the deposition subpoena, repeating the same arguments that this Court had previously rejected. Baughman Decl. Ex. 39.

In light of the communications with Mr. Ghods, and the need to coordinate schedules among multiple defendants and their counsel, Bear Stearns wrote to Mr. Ghods on December 26, 2014 that it could no longer wait for Mr. Ghods to confirm a date. Baughman Decl. Ex. 40.  Accordingly, Bear Stearns issued an Amended Notice of Deposition to Roger Wang (the "Amended Notice") that set January 13, 2015 as the date for Mr. Wang's deposition, at a location in Los Angeles, California less than three miles from his Beverly Hills residence.  Baughman Decl. Ex. 42.  Bear Stearns served the Amended Notice on Mr. Ghods by email and certified mail, and served a copy on Mr. Wang by certified mail.  Baughman Decl. ¶¶ 53-55.  Certified mail

records confirm that the Amended Notice was delivered to Mr.
Wang's residence on January 2, 2015.  Baughman Decl. Ex. 43.
Neither Mr. Ghods nor Mr. Wang responded to the letter or to the
Amended Notice.  Baughman Decl. ¶¶ 56-58.

On January 8, 2015, Bear Stearns attempted to follow
up with Mr. Ghods by telephone and email to confirm that Mr.
Wang would attend the January 13 deposition.  Baughman Decl. ¶¶
57-58.  Bear Stearns explained in an email to Mr. Ghods that
counsel would be flying from New York to Los Angeles shortly,
and "would appreciate the courtesy of a confirmation whether or
not Mr. Wang will appear."  Baughman Decl. Ex. 45.  Bear Stearns
also warned Mr. Ghods that if Mr. Wang failed to appear, Bear
Stearns would seek sanctions.  Id.

Mr. Ghods responded several hours later that he would
"check as soon as possible and let you know."  Id.  No further
communication was received from Mr. Ghods.  Bears Stearns'
counsel, as well as counsel for co-defendant Deloitte & Touche
LLP, flew to Los Angeles for Mr. Wang's deposition.  On the
morning of January 13, 2015, Bear Stearns' counsel and
Deloitte's counsel went to the noticed site.  Neither Mr. Wang
nor Mr. Ghods appeared.  Baughman Decl. ¶¶ 63-68.

Bear Stearns did not receive further communication from Mr. Ghods prior to the filing of the instant motion. Baughman Decl. ¶ 60.

Bear Stearns believes that Mr. Wang was in Los Angeles at the time he was scheduled to be deposed because his daughter, a reality television celebrity, posted on her widely-followed social media site several photos of her with Mr. Wang at the Golden Globe Awards late in the evening of January 11, 2015. Baughman Decl. Exs. 46-48.

Bear Stearns has incurred attorneys' fees and costs of approximately $100,000.00 as a result of the Wangs' discovery abuses, including for time spent attempting to serve Mr. Wang, for seeking court approval for service by alternate means and an extension of time to depose Mr. Wang, for preparing for Mr. Wang's deposition, for traveling to Los Angeles, and for preparing this motion for sanctions.   Baughman Decl. ¶ 69.

**The Applicable Standard**

12

"Whether exercising its inherent power, or acting pursuant to Rule 37, a district court has wide discretion in sanctioning a party for discovery abuses." Reilly v. Natwest Mkts. Grp. Inc., 181 F.3d 253, 267 (2d Cir. 1999); see also S. New England Tel. Co. v. Global NAPs Inc., 624 F.3d 123, 143 (2d Cir. 2010) ("we review all aspects of a District Court's decision to impose sanctions for abuse of discretion") (quotations omitted).

Federal Rule of Civil Procedure 37(d) authorizes sanctions whenever "a party, or a party's officer, director or managing agent - or a person designated under Rule 30(b)(6) or 31(a)(4) - fails, after being served with proper notice, to appear for that person's deposition." See Agiwal v. Mid Island Mortgage Corp., 555 F.3d 298, 302 (2d Cir. 2009) ("[A] district court may dismiss an action if a party fails to attend a deposition of that party."). Rule 37(d)(3) provides that the sanctions available are those set forth in Rule 37(b)(2), including "dismissing the action in whole or in part." See Fed. R. Civ. P. 37(b)(2)(A)(v). The range of sanctions available includes those listed in Rule 37(b)(2)(A)(i) to (vi). Fed. R. Civ. P. 37(d)(3). Rule 37 expressly provides that dismissal of the action is appropriate, see Fed. R. Civ. P. 37(b)(2)(A)(v),

13

so long as "the district judge has considered lesser alternatives". SEC v. Razmilovic, 738 F.3d 14, 24 (2d Cir. 2013) (internal quotation marks omitted).  In evaluating lesser alternatives, the Second Circuit has advised that the district court should consider, among other things, the willfulness of the noncompliant party or the reason for noncompliance, and what the effectiveness of lesser alternative sanctions would be.  See S. New Engl. Tel. Co., 624 F.3d at 144; Agiwal, 555 F.3d at 302.

In addition to this Court's authority under Rule 37, courts have inherent power to regulate litigation and sanction parties for conduct that is undertaken "in bad faith, vexatiously, wantonly, or for oppressive reasons," including through the sanction of dismissal.  Chambers v. NASCO, Inc., 501 U.S. 32, 45-49 (1991); Link v. Wabash R.R., 370 U.S. 626, 629-631 (1962).  A court may sanction bad-faith conduct through its inherent authority even when that conduct could also be sanctioned by the Federal Rules or by statute.  Chambers, 501 U.S. at 50.  Sanctions pursuant to the Court's inherent power require a finding of bad faith, which can be shown by "clear evidence" that the challenged actions were undertaken for "harassment or delay or . . . other improper purposes."  DLC

14

Mgm't Corp. v. Town of Hyde Park, 163 F.3d 124, 136 (2d Cir. 1998).

Further, this Court has authority under 28 U.S.C. § 1927 to impose monetary sanctions on an attorney whose bad-faith conduct "multiplies the proceedings in any case unreasonably and vexatiously." 28 U.S.C. § 1927. An attorney sanctioned under § 1927 may be required to pay the "excess costs, expenses, and attorneys' fees reasonably incurred" by the opposing party. Id.

In order to select the appropriate sanction, the district court "is free to consider the full record in the case." S. New England Tel. Co., 624 F.3d at 144 (quotations omitted).

**Sanctions Are Appropriate**

Sanctions will be imposed because the Wangs and their counsel repeatedly and willfully obstructed Bear Stearns' efforts to depose Mr. Wang. Mr. Ghods refused to accept service of any subpoena. He also refused to acknowledge that he represented Mr. Wang, forcing Bear Stearns to make a motion for

15

alternate service.  After dropping the ruse that he did not represent Mr. Wang, Mr. Ghods served "Objections" to the deposition subpoena that manufactured additional unlitigated excuses.  Mr. Ghods refused to confirm any dates when Mr. Wang would be available, and, after having run out the clock on the close of fact discovery, opposed Bear Stearns' request to take Mr. Wang's deposition after the cut-off date.  When Bear Stearns noticed Mr. Wang's deposition for January 13, 2015 and told Mr. Ghods that counsel were flying from New York to Los Angeles for the deposition, Mr. Wang willfully refused to appear, or even warn Bear Stearns that he would not appear.  The Wangs' and Mr. Ghods' bad-faith tactics have prejudiced Bear Stearns' ability to defend itself, and have needlessly multiplied its legal fees and expenses.

The Wangs appear to be playing a game of hide-the-Plaintiff.  The fact that Mrs. Wang, not her husband, is the formal plaintiff in this action, is a technicality arising from the Wangs' pointless multiplicity of lawsuits.  What is clear is that they were working together in connection with the trades at issue in this case, that Mrs. Wang's claims are based entirely on Mr. Wang's actions, and that their conduct sough to impede and delay this action without good cause.

While Rule 37(d) applies on its face only to a "party, a party's officer, director, or managing agent[,] or a person designated under Rule 30(b)(6) or 31(a)(4)," the list is not exhaustive.  Courts have not hesitated to impose sanctions on a party when a person who is the "alter ego" of a party or under the party's "control" fails to appear for deposition.  For example, in Flaks v. Koegel, 504 F.2d 702 (2d Cir. 1974), the plaintiff scheduled the deposition of a nonparty corporation owned by the individual defendant (Koegel) and his wife.  No corporate representative appeared.  The district court imposed sanctions on Koegel under Rule 37(d), and Koegel appealed.  The Second Circuit held that "[i]n light of the virtual identity of interest between Koegel and [the corporation] and Koegel's position of complete control over the corporation, the failure of [the corporation] to appear at the deposition could properly be considered to be the failure of the party Koegel to appear at his deposition." Id. at 710 n.6 (citations omitted).

Similarly, in Magee v. Paul Revere Life Insurance Co., 178 F.R.D. 33 (E.D.N.Y. 1998), the court sanctioned the plaintiff for the failure of his treating physician and designated expert witness, Dr. Tassy, to appear for deposition.

17

Rejecting the plaintiffs argument that a party could not be sanctioned for a non-party's failure to appear, the court explained: "While Rule 45 may set forth the exclusive remedy for sanctioning Dr. Tassy for his failure to appear at the depositions, it does not follow that the plaintiff may not also be sanctioned [under Rule 37(d)] for his failure to produce this key witness." 178 F.R.D. at 38; see also PrecisionFlow Techs., Inc. v. CVD Equip. Corp., 198 F.R.D. 33, 38 (N.D.N.Y. 2000) ("[S]anctions may be imposed upon a party or its counsel under Rule 37(d) for the nonappearance of a witness who is not an officer, director or managing agent or had been designated as a representative of a party . . . if the party assumed responsibility for the appearance of the witness at the deposition."), aff'd 140 F. Supp.2d 195 (N.D.N.Y. 2001).

Here Mr. Wang's failure to appear for his deposition is tantamount to a party's failure to appear under Rule 37(d). From the beginning, he and his wife have acted as each other's alter egos or agents. As noted described above, Mr. Wang instructed Mrs. Wang to open a brokerage account, and she filled out the necessary paperwork. She opened the account in her name, but he was the one who actually placed the stock orders and allegedly relied on purported misstatements. Baughman Decl.

Ex. 4 ¶¶ 25-32.  They both allege that the shares were owned jointly.  See id. ¶ 32 ("the Wangs became beneficial owners of 150,000 shares of BSC stock. . . .  Plaintiff intended and understood that any stock orders that he was going to place with Bear Stearns were for him and his family.").

Moreover, Mr. Wang is on record in a separate securities act complaint (which has never been withdrawn), filed by the same law firm, alleging that he, and not his wife, is "the owner" of the securities in question.  Declaration of Brittany L. Sukiennik in Support of Defendant Deloitte & Touche LLP's Motion, dated January 29, 2015 (hereinafter "Sukiennik Decl.") Ex. 3, at ¶ 71.  The Defendants need to establish whether Mr. Wang in fact owned the securities at issue (in which case Mrs. Wang lacks standing to bring this claim), or whether the Wangs and their counsel filed a false and vexatious duplicative lawsuit in Mr. Wang's name in an effort to avoid the contractual jurisdiction of a FINRA arbitration panel (in which case Mrs. Wang is barred by in pari delicto and unclean hands).  In either case, the allegations in the two complaints are inconsistent, and the Defendants are entitled to learn the factual basis for Mr. Wang's allegations.

Under both California and New York law, a spouse's actions may bind the other spouse under an implied agency theory when the circumstances suggest that one either has the authority to bind the other or where one acquiesces to the other's actions.  See Nalaskowski v. Golowicz, 65 N.Y.S.2d 718, 720 (N.Y. Sup. Ct. 1946); Lovetro v. Steers, 234 Cal. App.2d 461, 475-77 (Ct. App. 1965) (finding that wife was bound by her husband's acts where the husband "took care of all their business affairs during the marriage" and the wife "knew of the nature of the [transactions]" and was on notice of deficient payments).  While "an agency cannot be implied from the marriage relation alone[,] . . . much less evidence is required to establish a principal and agent relationship between husband and wife than between nonspouses."  Lovetro, 234 Cal. App.2d at 475.

Given that the Wangs have been married for thirty-five years, live together, use joint bank accounts, worked in concert to make the trades at issue in the case, and are represented by the same attorney in litigation about those trades, they are each other's agents for purposes of this action. Indeed, it would be anomalous if Mrs. Wang could claim that Mr. Wang was her agent for purposes of his alleged reliance on Bear Stearns' purported misstatements or omissions, but not for purposes of

his failure to appear at a deposition related to the same transaction.

The record also demonstrates that lesser alternatives to dismissal of Plaintiff's claim would be insufficient as sanctions for the conduct here.  The FINRA arbitration panel previously sanctioned the Wangs, again represented by Mr. Ghods, for discovery violations in an arbitration relating to the very same stock purchases at issue in this action with no effect. Monetary sanctions in this case would likewise have little or no effect on the Wangs, given their wealth and prior course of conduct.

Another potential lesser alternative sanction, precluding Mr. Wang from testifying in this action, is not warranted given the conduct of the Wangs and their counsel, and would reward the Wangs and their counsel for their disregard of their discovery obligations, by allowing Mr. Wang to avoid having his conduct and actions explored through discovery and introduced as evidence. Indeed, such a sanction would have the perverse effect of benefiting Plaintiff at the expense of Deloitte, which has specifically pleaded defenses for which Deloitte requires Mr. Wang's testimony.

21

The first four defenses pleaded in Deloitte's Answer
directly implicate Mr. Wang and his involvement in the stock
transactions and the ensuing litigation.  For each of these four
defenses, Deloitte made factual allegations that identify Mr.
Wang by name. Specifically, Deloitte asserts that it has a
defense to Plaintiff's complaint: (1) for lack of standing
because Mr. Wang placed the orders for the shares in question;
(2) because Mr. Wang brought a separate action concerning the
shares in question and released all claims relating to those
shares, and Plaintiff is bound by Mr. Wang's release; (3) for
failure to join Mr. Wang as a necessary party; and (4) because
Plaintiff is barred by the doctrine of in pari delicto or
unclean hands given her and Mr. Wang's inconsistent statements
regarding ownership of the shares in question.  For three of
these defenses, Deloitte bears the burden of proof.  See Brofman
v. Cybersettle Holdings, Inc., No. 11-CV-3528, 2012 WL 4108115,
at *4 (S.D.N.Y. Sept. 18, 2012) (release); Cobalt Multifamily
Investors I, LLC v. Shapiro, 857 F. Supp. 2d 419, 429 n.5
(S.D.N.Y. 2012) (in pari delicto); King v. Pine Plains Cent.
Sch. Dist., 918 F. Supp. 772, 782 (S.D.N.Y. 1996) (failure to
join necessary party).

Without the ability to examine Mr. Wang, Deloitte's
ability to establish all of the facts relevant to those defenses
would be greatly and unfairly impaired by Mr. Wang's deliberate
failure to appear for deposition.  Indeed, when asked basic
questions about Mr. Wang's lawsuit concerning the identical
stock transactions and the reasons behind the Wangs' decision to
bring separate actions, Mrs. Wang professed to be unable to
answer.  Thus, should this case proceed without the ability for
Deloitte to examine Mr. Wang, Deloitte would be substantially
prejudiced in defending itself against Plaintiff's claim.

Mrs. Wang attempts to distinguish her situation from
Flaks by contending that the relationship between her and Mr.
Wang is a "mere spousal relationship," and that she did not have
"control over Mr. Wang" at the time of the deposition.  Pl.'s
Mem. in Opp'n 15.  However, as noted above, she and Mr. Wang
worked in concert to open a brokerage account, and he, not she,
placed orders for that account; both had an interest in the
purchases.  She and Mr. Wang live together, use joint bank
accounts, and are both represented by Mr. Ghods, whom she refers
to as "our attorney."  Declaration of Vivine Wang, dated
February 5, 2015 (hereinafter "Wang Decl.") ¶ 4.  She was
involved in scheduling his deposition: "When the issue of

23

deposition for me and my husband came upon, I suggested depositions in California with advanced planning which would have been the practical thing to do." Id.

Plaintiff also tries unsuccessfully to analogize this case to Foreign Credit Corp. v. Aetna Casualty & Surety Co., 276 F. Supp. 791 (S.D.N.Y. 1967), in which the court declined to impose sanctions for a non-party's failure to appear at a deposition. There, the court declined to impose sanctions against the third-party purchaser because the third party had "no control over Goldgoods or Goldstein." Id. at 794. Here, the relationship between Mr. and Mrs. Wang is not that of third-party purchaser.

No procedural requirement prohibits the sanction. Contrary to Plaintiff's assertion that a certification that Defendants met and conferred with opposing counsel is required, the plain language of Rule 37(d)(1)(B) indicates that certification is required only where a party fails to answer or respond to interrogatories or requests for inspection. See Fed. R. Civ. P. 37(d)(1)(B) ("A motion for sanctions for failing to answer or respond must include a certification. . . .")

24

Plaintiff has asserted that Deloitte "makes no unique arguments" in its motion and thus no separate response to Deloitte is warranted.  Yet Deloitte has demonstrated that it would be substantially prejudiced in defending itself at trial absent Mr. Wang's testimony given that the first four affirmative defenses pleaded in Deloitte's Answer each directly involve Mr. Wang.  Without the ability to examine Mr. Wang, Deloitte's ability to establish the facts relevant to those defenses would be unfairly impaired.  This contention, unopposed, is thereby conceded.

Rule 37(d) distinguishes between two kinds of evasive discovery conduct.  First, Rule 37(d)(l)(A)(i) authorizes sanctions when a party "fails . . . to appear for that person's deposition."  Second, Rule 37(d)(l)(A)(ii) authorizes sanctions when a party served with interrogatories or requests for inspection "fails to serve its answers, objections or written response."  On its face, the certification requirement applies only to the latter: "A motion for sanctions for failing to answer or respond must include a certification . . . ."  Fed. R. Civ. P. 37(d)(1)(B).  Thus, courts and commentators agree that a certification is not a prerequisite to a motion for sanctions for "fail[ure] to appear."  See Grand Oaks, Inc. v. A.W.

25

Anderson et al, 175 F.R.D. 247, 250 (N.D. Miss 1997); Blue Grass

Steel, Inc. v. Miller Bldg. Corp., 162 F.R.D. 493, 494 (E.D. Pa.

1995); 8B Charles Alan Wright & Arthur R. Miller, FED. PRAC. &

PROC. § 2291 (3d ed. 2010) ("This requirement does not apply,

however, when a party fails to appear for a deposition.").

Plaintiffs' citations are inapposite.  Both Pagan v.

Correctional Medical Services, No. 11 Civ. 1357 (ER), 2012 WL

2036041 (S.D.N.Y. June 6, 2012), and Hart v. PAE Government

Services, Inc., No. 10 Civ. 1672, 2011 WL 3816640 (E.D. Cal.

Aug. 25, 2011), cited by Plaintiff, concerned failure to respond

to interrogatories, not failure to appear for deposition.

Plaintiff's other cases concerned the production of documents

under Rule 37(a), which contains a separate meet-and-confer

requirement not applicable to motions pursuant to Rule 37(d).


To impose sanctions on an attorney pursuant either to

28 U.S.C. § 1927 or the Court's inherent authority, the Court

must make a finding of conduct that constitutes, or is akin to,

bad faith.  Gollomp v. Spitzer, 568 F.3d 355, 368 (2d Cir.

2009).  The attorney must be provided notice and an opportunity

to be heard, although no evidentiary hearing is required.  Id.

Courts have imposed sanctions where an attorney unreasonably

fails to produce a deponent for months, or otherwise delays

26

discovery and imposes excess costs on the other side.  For example, in Guifu Li v. A Perfect Day Franchise, Inc., 281 F.R.D. 373, 396 (N.D. Cal. 2012), the court ordered defense counsel to pay attorneys' fees "[a]fter failing to produce [a deponent], despite a court order, for over six months."  In Baker v. Urban Outfitters, 431 F. Supp.2d 351, 366 (S.D.N.Y. 2006), the court imposed § 1927 sanctions against an attorney who refused to produce documents on grounds that had no merit, and then, after the court ordered production, failed to produce the documents until the last day of discovery, requiring discovery to be re-opened.

Here, Mr. Ghods' litigation tactics are sanctionable. Mr. Ghods refused to accept a subpoena on behalf of his longstanding client.  He refused even to confirm that he represented Mr. Wang, when in fact Mr. Ghods has represented Mr. Wang in this case, and dozens of others, and now admits that he does represent him in this case.  Over the course of the last four months, Mr. Ghods has delayed in responding, or failed to respond to, calls, emails and letters, and never confirmed a date for Mr. Wang's deposition.

After Mr. Ghods succeeded in delaying until the end of the fact discovery period, he then opposed with no colorable basis Bear Stearns' request to take Mr. Wang's deposition after the close of fact discovery.  Finally, after Bear Stearns noticed Mr. Wang's deposition for January 13, 2015, and asked Mr. Ghods as a professional courtesy whether Mr. Wang would in fact appear, to save Bear Stearns' counsel the trip across the country, Mr. Ghods replied that he would "check" and let Bear Stearns know "as soon as possible."  Despite his representation, Mr. Ghods never contacted Bear Stearns follow.

Mr. Ghods' conduct is contrary to Local Civil Rule 26.4(a), which provides:

> Counsel are expected to cooperate with each other, consistent with the interests of their clients, in all phases of the discovery process and to be courteous in their dealings with each other, including in matters relating to scheduling and timing of various discovery procedures.

Mr. Ghods ignored this rule, and his conduct was improper and akin to bad faith.

**Dismissal Is An Appropriate Sanction**

Dismissal of an action is necessary and appropriate where a litigant has acted with "willfulness, bad faith, or any fault." Agiwal, 555 F.3d at 302-03 (affirming dismissal of action where plaintiff failed to appear for deposition); see also Cine Forty-Second St. Theatre v. Allied Artists Pictures, 602 F.2d 1062, 1068 (2d Cir. 1979) ("[C]ourts should not shrink from imposing harsh sanctions where, as in this case, they are clearly warranted."). A standard that "inhibit[ed] the imposition of the harsher sanctions authorized by Rule 37 [] would turn the rule into a 'paper tiger.'" Sieck v. Russo, 869 F.3d 131, 134 (2d Cir. 1989) (quotation omitted).

Courts around the country have dismissed actions where a party or someone under the party's control fails to appear for deposition. See, e.g., Al Barnett & Son, Inc. v. Outboard Marine Corp., 611 F.2d 32, 35 (3d Cir. 1979) (dismissing case for failure to attend deposition), abrogated on other grounds, Alexander v. Gino's Inc., 621 F.2d 71 (3d Cir. 1980); Pioche Mines Consol, Inc. v. Dolman, 333 F.2d 257, 269 (9th Cir. 1964) (entering default judgment as sanction for failure to attend deposition); Xstrata Canada Corp. v. Advanced Recycling Tech.,

29

Inc., No. 1:08-CV-1366, 2010 WL 1539722, at *2 (N.D.N.Y. Apr. 19, 2010) (same).

In National Hockey League v. Metropolitan Hockey Club, Inc., 427 U.S. 639, 643 (1976), the Supreme Court affirmed the dismissal of an action for a party's failure to respond to interrogatories.  The Supreme Court explained that the sanction of dismissal for discovery evasion serves "not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent." Id.; see also Agiwal, 555 F.3d at 303.

In considering the appropriateness of dismissal or other sanctions for discovery abuse, the Second Circuit has instructed district courts to consider four non-exclusive factors: "(1) the willfulness of the non-compliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance, and (4) whether the noncompliant party had been warned of the consequences of noncompliance." S. New England Tel. Co., 624 F.3d at 144 (citations omitted).  "[T]hese factors are not exclusive, and

they need not each be resolved against the [sanctioned] party."
SEC v. Razmilovic, 738 F.3d 14, 25 (2d Cir. 2013).

Here, the Wangs and Mr. Ghods have willfully evaded
and obstructed discovery after having been sanctioned in the
FINRA arbitration, and despite two orders from this Court making
allowance for Mr. Wang's deposition, first permitting service by
alternate means and second allowing his deposition to take place
after the close of fact discovery.  This course of conduct
establishes willfulness and bad faith.  See, e.g., Handwerker v.
AT&T Corp., 211 F.R.D. 203, 209 (S.D.N.Y. 2002) ("[P]ersistent
refusal to comply with a discovery order presents sufficient
evidence of willfulness, bad faith or fault.") (quotation
omitted).

No lesser sanction than dismissal is appropriate given
the Wangs' continued pattern of misconduct and the prejudice to
Defendants from being unable to depose the person who made the
investment decisions at issue in this case.  No one else,
certainly not Mrs. Wang, can testify as to why Mr. Wang decided
to purchase shares of Bear Stearns in March 2008, one of the
critical issues in this opt-out action.  To defend themselves,
particularly with respect to a fraud claim that requires proof

31

of actual reliance, the Defendants must know exactly what
alleged misstatements or omissions Mr. Wang purports to have
relied on.

        Scheduling extensions will not cure the problem
because the discovery period, which was already extended by
Court order, is now closed, and because there is no reason to
believe that a further extension would result in Mr. Wang
actually appearing for his deposition.  Lesser sanctions will
not be imposed because they have proven ineffective in this very
dispute.  The FINRA arbitration panel imposed sanctions on the
Wangs for failing to comply with their discovery obligations in
that proceeding.  Those sanctions did nothing to prevent similar
conduct here.  Those sanctions were ineffective in that Mrs.
Wang was not even aware that sanctions had been imposed.
Monetary sanctions would also be ineffective with respect to the
Wangs in light of their well-documented wealth.

        With respect to duration, the Wangs' obstructionism
has persisted for years.  FINRA imposed its discovery sanctions
in 2009.  The Wangs have taken inconsistent litigation positions
since 2008 and in two actions in this Court involving the same
transaction.  They have been on notice since at least October 3,

2014 that Bear Stearns was seeking to depose Mr. Wang, but have
continuously obstructed all of Bear Stearns' good-faith efforts
to take his deposition.  See Handwerker, 211 F.R.D. at 210-11
(noting that noncompliance that lasted months weighs in favor of
Rule 37 sanctions).

        While notice is not a prerequisite for Rule 37
sanctions, the Wangs have been on notice that non-compliance
with discovery would result in sanctions.  Not only had they
been sanctioned in the earlier FINRA arbitration, but Bear
Stearns also specifically warned the Wangs that it would seek
sanctions if Mr. Wang failed to appear for his deposition.  Mr.
Ghods received the warning, and he responded to Bear Stearns'
email that same day.  His response did not indicate whether Mr.
Wang would actually appear.

        This Court will not countenance Mr. Wang's evasive
efforts by improperly evading his deposition.  See A.V. by
Versace, Inc. v. Gianni Versace S.p.A., 2002 WL 54610, at *6-10
(S.D.N.Y. Jan. 15, 2002) (striking defendant's answer, resulting
in default, where lesser sanctions were found ineffective).

As for the appropriate sanction, Plaintiff offers no compelling reason not to dismiss this case.  As the Second Circuit has stated, courts "should not shrink from imposing harsh sanctions where, as here, they are clearly warranted." Cine Forty-Second St. Theatre v. Allied Artists Pictures, 602 F.2d 1062, 1068 (2d Cir. 1979) (imposing sanction of dismissal). All the factors considered above in determining an appropriate sanction weigh in favor of dismissal.

Plaintiff's opposition is unavailing.  First, this Court need not find that Plaintiff violated a court order before imposing the sanction of dismissal.  See, e.g., Szilvassy v. United States, 82 F.R.D. 752, 755 (S.D.N.Y. 1979) ("Rule 37(d) does not require noncompliance with a court order before [] sanctions . . . may be imposed.").  Second, this Court is not required "to exhaust possible [lesser] sanctions before imposing dismissal . . . if such a sanction is appropriate on the overall record." S. New England Tel. Co., 624 F.3d 123, 148 (2d Cir. 2010).  Third, Mr. Wang's failure to appear was the culmination of a long chain of vexatious conduct by the Wangs.  They refused to pay for all the Bear Stearns shares they bought; they refused to participate in an ensuing FINRA arbitration and were sanctioned accordingly, and they have filed duplicative lawsuits

34

against the Defendants in this Court thereby unjustifiably multiplied the proceedings in this case.

**Payment of Costs and Attorneys' Fees of the Defendants in Connection with the Notice of Deposition is an Appropriate Sanction**

The conduct of Mr. Ghods, as found above, does not comport with the standards required by this Court.  His proffered justification, the absence of necessary subpoena, the failure to meet and confer, and defective notices, see Pl.'s Mem. in Opp'n 9, 13, 15, was specious and contrary to accepted practice.

Most tellingly, these contentions were not the subject to any protective motions but rather an exercise of obstruction after the event and arrogant self help.

Where a party fails to appear for a deposition, Rule 37(d) requires cost-shifting: "the court must require the party failing to act, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by that failure."  Fed. R. Civ. P. 37(d)(3).  Cost-shifting is excused only where "the failure [to appear] was substantially justified or other circumstances make an award of expenses

35

unjust." Id.; John Wiley & Sons, Inc. v. Book Dog Books, LLC, 298 F.R.D. 145, 148 (S.D.N.Y. 2014).  The noncompliant party bears the burden of showing that his failure to comply was justified or that an award of expenses would be unjust.  John Wiley, 298 F.R.D. at 148.

Under Rule 37, a party's failure to comply with discovery is only substantially justified, and thus excused from cost-shifting, if "there was a genuine dispute or if reasonable people could differ as to the appropriateness of the contested action."  Underdog Trading L.L.C. v. Verizon Servs. Corp., 273 F.R.D. 372, 377 (S.D.N.Y. 2011) (quotation omitted); see also PrecisionFlow Techs., 140 F. Supp.2d at 200 (holding that counsel's refusal to tell opposing counsel that he had instructed deponents not to appear was "combative in nature" and not substantially justified).

Mr. Ghods has not provided any justification for Mr. Wang's failure to appear at his deposition, let alone a substantial justification.  Even after being informed that counsel were flying from New York to Los Angeles, Mr. Ghods refused to say whether or not Mr. Wang would appear.  Nor did Mr. Ghods seek a protective order or dispute that the deposition

had been properly noticed for January 13, 2015.  Instead, he represented that he would undertake to confirm whether Mr. Wang would appear, but completely failed to do so.

Attorneys' fees and costs should also be imposed on Mr. Ghods pursuant to 28 U.S.C. § 1927 for "multipl[ying] the proceedings . . . unreasonably and vexatiously."

Mr. Ghods asserts that the Defendants are not entitled to fees for their efforts to extend the deposition cut-off date or to serve a subpoena on Mr. Wang because those efforts were necessitated by Bear Stearns' "own delay."  Pl.'s Mem. in Opp'n 25.  No facts support this assertion.

Mr. Ghods also contends costs are not warranted because Bear Stearns "never . . . confirmed a date with the deponent."  However, Bear Stearns telephoned and emailed Mr. Ghods to do precisely that.  Mr. Ghods admitted that he never followed up, allegedly because he was too busy.  Thus, if there was a failure to "confirm[] a date with the deponent," that failure is squarely the fault of Mr. Ghods and the Wangs.

Given the established resources and past conduct of the Wangs as found above, costs and attorneys' fees would have no sanctioning effect on them.  As for Mr. Ghods, hopefully this sanction will have some meaning.  A continuation of similar conduct in these cases could give rise to a reference to our court's Grievance Committee.

The Defendants will submit on notice the appropriate materials to establish their costs and attorneys' fees in connection with the deposition of Mr. Wang notice for January 13, 2015.

**Conclusion**

The motions of the Defendants for sanctions is granted, the complaint is dismissed with prejudice and Defendants are awarded costs and attorneys' fees as set forth above.

It is so ordered.

**New York, NY**
~~May~~   , 2015
June 3

ROBERT W. SWEET
U.S.D.J.

38